**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**


FANATICS COLLECTIBLES TOPCO, INC.,

      Plaintiff,

v.

                                              **Case No. 1:23-cv-06895-JHR**
                                              **[rel: Case No. 1:23-cv-09714-JHR]**

PANINI S.P.A.,

      Defendant.

_____/


## DEFENDANT PANINI S.P.A.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF
## FANATICS COLLECTIBLES TOPCO, INC.'S COMPLAINT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

LEGAL STANDARD ................................................................................................................. 4

ARGUMENT ........................................................................................................................... 4

    I.     The Unfair Competition Claim Fails Because the Allegations Do Not Establish Misappropriation of a Commercial Advantage Belonging Exclusively to Fanatics. ................................................................................................................ 4

    II.    Fanatics's Claim for Breach of the Obligation to Negotiate in Good Faith Does Not Plausibly Allege a Binding Preliminary Agreement...................................... 10

    III.   Fanatics's Claim for Tortious Interference with Business Relations Fails for Multiple Independent Reasons............................................................................. 14

    IV.   If the Claims Are Not Dismissed, the Actions Should Be Consolidated with Panini America Designated as Plaintiff. ............................................................... 19

CONCLUSION....................................................................................................................... 22

**Page(s)**

**Cases**

*Adam v. Jacobs*,
   950 F.2d 89 (2d Cir. 1991)..................................................................................... 20

*Adjustrite Sys., Inc. v. GAB Bus. Services, Inc.*,
   145 F.3d 543 (2d Cir. 1998).............................................................................. 11, 12

*Agfa Corp. v. United Mktg. Grp., Inc.*,
   2003 WL 21555087 (S.D.N.Y. July 10, 2003) ...................................................... 16

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
   884 F.2d 69 (2d Cir. 1989)..................................................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... 4, 8

*Atla-Medine v. Crompton Corp.*,
   2001 WL 1382592 (S.D.N.Y. Nov. 7, 2001) .......................................................... 11

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*,
   229 F.3d 1135 (2d Cir. 2000)........................................................................... 16, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................. 4

*Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*,
   610 Fed. Appx. 69 (2d Cir. 2015) ........................................................................... 7

*Brook v. Peconic Bay Med. Ctr.*,
   152 A.D.3d 436 (N.Y. App. Div. 2017) ................................................................... 7

*Brown v. Bethlehem Terrace Assocs.*,
   525 N.Y.S.2d 978 (N.Y. App. Div. 1988) .............................................................. 17

*Candid Prods., Inc. v. Int'l Skating Union*,
   530 F. Supp. 1330 (S.D.N.Y. 1982)....................................................................... 13

*Catskill Dev., LLC v. Park Place Ent. Corp.*,
   547 F.3d 115 (2d Cir. 2008)...................................................................... 3, 14, 15

*Cohen v. Singer*,
   4 Fed. Appx. 38 (2d Cir. 2001)....................................................................... 12, 13

*Cotto v. Fed. Nat'l Mortg. Ass'n*,
   2022 WL 4133206 (S.D.N.Y. Sep. 12, 2022) .......................................................... 4

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*,
    233 F.3d 697 (2d Cir. 2000) ................................................................................... 19

*Enzo Biochem, Inc. v. Molecular Probes, Inc.*,
    2013 WL 6987615 (S.D.N.Y. Dec. 6, 2013) ............................................................ 10

*Four Finger Art Factory, Inc. v. Dinicola*,
    2000 WL 145466 (S.D.N.Y. Feb. 9, 2000) .............................................................. 18

*Friedman v. Coldwater Creek, Inc.*,
    551 F. Supp. 2d 164 (S.D.N.Y. 2008) ..................................................................... 15

*Garda USA, Inc. v. Sun Cap. Partners, Inc.*,
    194 A.D.3d 545 (N.Y. App. Div. 2021) .................................................................. 13

*Grewal v. Cuneo*,
    2015 WL 4103660 (S.D.N.Y. July 7, 2015) ......................................................... 6, 7

*Gucci Am., Inc. v. Exclusive Imports Int'l*,
    2007 WL 840128 (S.D.N.Y. Mar. 19, 2007) ....................................................... 3, 15

*In re 50 Pine Co.*,
    317 B.R. 276 (Bankr. S.D.N.Y 2004) ................................................................ 11, 13

*In re PCH Assocs.*,
    949 F.2d 585 (2d Cir. 1991) ................................................................................... 20

*In re Peaktop Techs. (USA), Inc. S'holder Derivative Litig. v. Peaktop Int'l Holdings Ltd.*,
    2007 WL 700826 (S.D.N.Y. Mar. 6, 2007) ............................................................ 21

*Internet Law Library, Inc. v. Southridge Cap. Mgmt., LLC*,
    208 F.R.D. 59 (S.D.N.Y. 2002) .................................................................... 3, 19, 22

*ITC Ltd. v. Punchgini, Inc.*,
    880 N.E.2d 852 (N.Y. 2007) ............................................................................ *passim*

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995) ......................................................................................... 6

*Jill Stuart (Asia) LLC v. Sanei Int'l Co.*,
    2013 WL 1769960 (S.D.N.Y. Apr. 25, 2013) ......................................................... 16

*Johnson v. NYU Langone Health*,
    2023 WL 6393466 (S.D.N.Y. Sept. 30, 2023) .......................................................... 4

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991) ................................................................................... 16

*Lewin v. Richard Avedon Found.*,
2015 WL 3948824 (S.D.N.Y. June 26, 2015) ............................................................. 3, 18, 19

*LoPresti v. Massachusetts Mut. Life Ins.*,
30 A.D.3d 474 (N.Y. App. Div. 2006) ...................................................................... 7

*LoPresti v. Massachusetts Mut. Life Ins.*,
820 N.Y.S.2d 275 (N.Y. App. Div.2006) ................................................................. 2

*MCM Products USA, Inc. v. Botton*,
2016 WL 5107044 (S.D.N.Y. Sept. 19, 2016)........................................................... 7

*Midwest Railcar Corp. v. Everest Railcar Services, Inc.*,
2017 WL 1383765 (S.D.N.Y. Apr. 13, 2017)........................................................... 8

*Miller v. Walters*,
997 N.Y.S.2d 237 (N.Y. Sup. Ct. 2014) ................................................................... 8, 9

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
701 F. Supp. 2d 568 (S.D.N.Y. 2010)....................................................................... 20

*Panini Am. Inc. v. Fanatics, Inc. et al.*,
No. 1:23-cv-09714-JHR (S.D.N.Y. Oct. 10, 2023) ........................................... 1, 5, 6

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
763 F.3d 198 (2d Cir. 2014)....................................................................................... 4

*Pizza Pub. Co., v. Tricon Glob. Restaurants, Inc.*,
2000 WL 1404716 (S.D.N.Y. Sept. 25, 2000)........................................................... 9

*Primetime 24 Joint Venture v. Nat'l Broad., Co.*,
219 F.3d 92 (2d Cir. 2000).......................................................................................... 18

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)....................................................................................................... 18

*Purgess v. Sharrock*,
33 F.3d 134 (2d Cir. 1994).......................................................................................... 17

*Richbell Info. Services, Inc. v. Jupiter Partners, L.P.*,
309 A.D.2d 288 (N.Y. App. Div. 2003) ............................................................ 2, 11, 13

*Riddell Sports Inc. v. Brooks*,
872 F. Supp. 73 (S.D.N.Y. 1995)............................................................................... 3, 17

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*,
672 F.2d 1095 (2d Cir. 1982)...................................................................................... 9, 10

iv

*Ruder & Finn v. Seaboard Sur. Co.*,
    422 N.E.2d 518 (N.Y. 1981)..................................................................... 10

*Semple v. Eyeblaster, Inc.*,
    2009 WL 2709281 (S.D.N.Y. Aug. 27, 2009)................................... 15, 17

*Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*,
    68 F. Supp. 2d 161 (E.D.N.Y 1999) ............................................... 20

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
    133 F. Supp. 3d 483 (E.D.N.Y. 2015) *aff'd in part,* 909 F.3d 519 (2d Cir. 2018)................ 6, 9

*Southern Constr. Co. v. Pickard*,
    371 U.S. 57 (1962)........................................................................... 20

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)............................................................ 16

*Susskind v. Ipco Hosp. Supply Corp.*,
    373 N.Y.S.2d 627 (N.Y. App. Div. 1975) ................................... 17, 18

*Tchrs. Ins. & Annuity Ass'n of Am. v. Trib. Co.*,
    670 F. Supp. 491 (S.D.N.Y. 1987)................................................. 12

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
    924 F.3d 32 (2d Cir. 2019)............................................................. 10

## **Rules**

Fed. R. Civ. P. 12(b)(6)................................................................... 1, 4, 9

Fed. R. Civ. P.  13(a) ................................................................... 19, 20

Defendant Panini S.p.A. ("Panini") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Fanatics Collectibles Topco, Inc. ("Fanatics Collectibles") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Panini America, a subsidiary of Panini, sued plaintiff's parent company and related corporate entities (collectively, "Fanatics") for violating federal antitrust and state laws in *Panini Am. Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-JHR (S.D.N.Y. Oct. 10, 2023) ("Antitrust Action"). The Antitrust Action addresses Fanatics's attempt to monopolize the markets for sports trading cards, as well as its tortious interference with Panini America's contracts and dissemination of false and defamatory statements about Panini America. Four days later Fanatics filed the Complaint here against Panini America's parent company ostensibly asserting claims for unfair competition, tortious interference with business relations, and breach of the obligation to negotiate in good faith. But the Complaint is a screed consisting mainly of inappropriate commentary, argument, and derogatory statements directly responsive to allegations in the Antitrust Action.[1] It is, in other words, a public relations ploy intended to blunt the impact of Panini's first-filed action. As would be expected in these circumstances, each of Fanatics's purported claims fails as a matter of law for multiple, independent reasons.

---

[1] For example, the Complaint includes the following assertions: (1) "Panini (through its American subsidiary) filed a baseless and incoherent antitrust lawsuit against Fanatics;" Compl. ¶ 11; (2) "It is hypocritical for Panini now to suggest that Fanatics Collectibles violated the antitrust laws," *id.*; (3) "Fanatics Collectibles will not be bullied," *id.* ¶ 12; (4) "Fanatics has nothing to fear," *id.* (5) "All Fanatics Collectibles wants is to fairly compete in the industry," *id.* Additionally, Fanatics devotes multiple pages to attacking Panini's business model and performance, *see id.* ¶¶ 28-50, and trumpeting its own alleged "innovations" and "success," *id.* ¶¶ 51-69. The Complaint also includes a misleading appendix of cherry-picked social media reactions to the Antitrust Action. *See id.* App. A.

1

Begin with Fanatics's claim for unfair competition, which is based on Fanatics's misleading and inaccurate description of the parties' failed negotiations over the potential early termination of Panini America's licenses to produce and sell certain sports trading cards. Compl. ¶¶ 106-115. To state a claim for unfair competition under New York law, a plaintiff must allege "bad faith misappropriation of a commercial advantage which belonged exclusively to him." *LoPresti v. Massachusetts Mut. Life Ins.*, 820 N.Y.S.2d 275 (N.Y. App. Div.2006). In an effort to shoehorn the alleged facts into the elements of this claim, Fanatics asserts that by allegedly "proposing early termination, and then stringing along Plaintiff through stall tactics," Compl. ¶ 112, Panini "misappropriated Plaintiff's ability to pursue deals" with certain athletes. It also asserts that Panini "misappropriated the time, effort, and attention of Plaintiff's leadership by tying them up in dead-end negotiations," *Id.* ¶ 114. But despite Fanatics's repeated use of the word "misappropriation," the allegations do not establish that Panini took anything at all from Fanatics. *See ITC Ltd. v. Punchgini, Inc*., 880 N.E.2d 852, 859 (N.Y. 2007) (An "unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property."). Nor do Fanatics's conclusory allegations establish that it had exclusive rights to the potential deals with athletes. Therefore, the claim fails.

Fanatics's claim for breach of the obligation to negotiate in good faith similarly fails. It asserts that the parties "reached an agreement in principle" that "was a preliminary agreement to negotiate in good faith," Compl. ¶¶ 124-128, but provides no allegations about the nature or language of the agreement to support this contention. Fanatics's conclusory allegation is simply not enough to show a binding preliminary agreement giving rise to a duty to negotiate in good faith. *See, e.g.*, *Richbell Info. Services, Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 303 (N.Y.

App. Div. 2003) (no binding preliminary agreement giving rise to duty to negotiate in good faith because agreement was "agreement in principle" and "materials terms . . . were not set forth").

Fanatics's claim for tortious interference with business relations—Count 2 of the Complaint—is based on Fanatics's claim that Panini allegedly prevented some unnamed group of Panini America employees from joining Fanatics by threatening them with legal action. Compl. ¶¶ 123-128. Like the other claims, Count 2 fails as a matter of law. First, the allegations do not establish that Panini "acted for a wrongful purpose or used dishonest, unfair, or improper means." *Catskill Dev., LLC v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). Threats of litigation may establish the wrongful means element of a claim for tortious interference with business relations only if the threats are wrongful or frivolous. *Gucci Am., Inc. v. Exclusive Imports Int'l*, 2007 WL 840128, at *7 (S.D.N.Y. Mar. 19, 2007). But, here, the only allegations relevant to this claim support the opposite conclusion: Plaintiff admits that Panini initiated a suit in Texas to prevent its former employees from exposing Panini's trade secrets to Plaintiff and recruiting other Panini employees, and that ***the Texas state court granted Panini's application for a temporary restraining order against Plaintiff***. Compl. ¶ 91. Second, Fanatics does not allege that it would have entered into contracts with Panini employees had Panini not allegedly interfered, as required to state a claim for tortious interference with business relations. *See Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 78–79 (S.D.N.Y. 1995). And, lastly, Plaintiff's alleged pre-litigation threats are immunized from Fanatics's tortious interference claim under the *Noerr-Pennington* doctrine. *Lewin v. Richard Avedon Found.*, 2015 WL 3948824, at *28 (S.D.N.Y. June 26, 2015).

If the Court declines to dismiss some or all of Fanatics's claims, the Court should consolidate them with Panini's Antitrust Action as compulsory counterclaims. *Internet Law Library, Inc. v. Southridge Cap. Mgmt., LLC*, 208 F.R.D. 59 (S.D.N.Y. 2002) (consolidating

compulsory counterclaims in second-filed action with first-filed action and designating plaintiff in first-filed action as "plaintiff" in consolidated action). To the extent these claims should have been raised at all, they should have been raised in the first-filed Antitrust Action.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a complaint must make factual allegations sufficient to "raise a reasonable expectation that discovery will reveal evidence," *Twombly*, 550 U.S. at 556, that would "allow[] the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678. While the Court "must accept as true all of the allegations contained in a complaint," *id.*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Johnson v. NYU Langone Health*, 2023 WL 6393466, at *2 (S.D.N.Y. Sept. 30, 2023) (quoting *Iqbal*, 556 U.S. at 678). "Dismissal is therefore 'appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Cotto v. Fed. Nat'l Mortg. Ass'n*, 2022 WL 4133206, at *2 (S.D.N.Y. Sep. 12, 2022) (quoting *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014)).

## ARGUMENT

I.  **The Unfair Competition Claim Fails Because the Allegations Do Not Establish Misappropriation of a Commercial Advantage Belonging Exclusively to Fanatics.**

Fanatics's allegations of unfair competition concern the parties' negotiations over the potential early termination of Panini America's licenses to produce and sell trading cards for players of the NFL and NBA. In Fanatics's telling, "Panini dragged out the early termination

negotiations in bad faith by slow-walking negotiations for several months and ultimately trying to pass off knowingly inflated earnings projections that translated to an unreasonably high early termination fee." Compl. ¶ 9. While immaterial to this Motion, Panini strongly denies Fanatics's version of events, which is riddled with inaccuracies and false statements. Panini negotiated in good faith, while taking an appropriate amount of time to assess the terms and risks of the potential deal. And Panini's earnings projections, which were updated quarterly in the normal course of its business, were adversely affected by the very tortious and anticompetitive conduct on which the Antitrust Action is based. ECF 69 (Am. Compl.), *Panini Am. Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-JHR (S.D.N.Y. Oct. 10, 2023).

According to Fanatics, the "parties finally reached an impasse" in early 2023. Compl. ¶ 82. While Fanatics does not allege that Panini walked away from the deal, it nonetheless claims that it was harmed by Panini's negotiation tactics because it lost the opportunity to pursue "deals with NBA players and pre-draft NFL rookies in the spring 2022." *Id*. ¶ 113. According to Fanatics, it decided not to pursue these deals during negotiations with Panini because it "reasonably believed it would no longer need to acquire the competing licenses, as it would obtain licenses covering the same subject matter through the proposed early termination." *Id*. ¶ 111. In other words, according to the Complaint, despite Panini's alleged stall tactics and Fanatics's knowledge that it had purportedly received inflated earnings from Panini, *id*. ¶ 81, Fanatics remained so confident the deal would close that it chose to put all its eggs in one basket and forgo pursuing any backup plans.

New York has "long recognized two theories of common-law unfair competition: palming off and misappropriation." *ITC Ltd*, 880 N.E.2d at 858 (N.Y. 2007) (answering the Second Circuit's certified question about the reach of a claim for unfair competition) (citations omitted). Here, Fanatics attempts to base its claim on a misappropriation theory, which relies on the

"principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor." *Id.*; *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (The "essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods."). To state a claim for unfair competition based on the theory of misappropriation, courts "require that the commercial advantage or property that is misappropriated belong exclusively to the plaintiff." *Grewal v. Cuneo*, 2015 WL 4103660, at *17 (S.D.N.Y. July 7, 2015). Fanatics's allegations do not satisfy these requirements. While the Complaint repeatedly uses the word "misappropriation," none of the conduct described by Fanatics amounts to misappropriation of a commercial advantage, let alone a commercial advantage belonging exclusively to Fanatics.

Fanatics's first problem is that it does not and cannot allege that it had exclusive rights to the potential deals with athletes. To the contrary, the Complaint makes clear that Fanatics competes for deals with players and rookies without any guarantee of securing them.[2] *See, e.g.*, Compl. ¶ 81 (referring to deals as "potential deals"); *id*. ¶ 108 (describing the lost "opportunity" to pursue deals). But "a claim for unfair competition will not lie absent the defendant's bad faith misappropriation of a commercial advantage ***belonging exclusively to the plaintiff***." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 133 F. Supp. 3d 483, 502 (E.D.N.Y. 2015), *aff'd in part, vacated in part on other grounds, remanded*, 909 F.3d 519 (2d Cir. 2018) (upholding dismissal of unfair competition claim). Contrary to Fanatics's assertion that New York law contains "no such requirement," ECF 28 at 3, it is well settled that an unfair competition claim will fail if the "plaintiff

---

[2] Of course, as Panini has detailed elsewhere, ECF 69 (Am. Compl.), *Panini Am. Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-JHR (S.D.N.Y. Oct. 10, 2023), Fanatics did not lawfully compete for these deals at all.

cannot demonstrate the bad faith misappropriation of a commercial advantage which belonged **_exclusively_** to him." *Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 Fed. Appx. 69, 70 (2d Cir. 2015) (emphasis added); *see also Grewal*, 2015 WL 4103660, at *17; *MCM Products USA, Inc. v. Botton*, 2016 WL 5107044, at *7–8 (S.D.N.Y. Sept. 19, 2016) ("The tort is not all-encompassing . . . the New York Court of Appeals, in rejecting the notion that unfair competition is equivalent to the amorphous term commercial unfairness, has stated that misappropriation of another's commercial advantage is a cornerstone of the tort. . . . Notably, to act in bad faith, one must exploit some commercial advantage which belonged exclusively to [another].") (internal citations omitted) (alteration in original); *LoPresti v. Massachusetts Mut. Life Ins.*, 30 A.D.3d 474, 476 (N.Y. App. Div. 2006) ("Finally, the plaintiff's cause of action alleging unfair competition was properly dismissed insofar as asserted against the respondents because the complaint failed to allege the bad faith misappropriation of a commercial advantage which belonged exclusively to him."); *Brook v. Peconic Bay Med. Ctr.*, 152 A.D.3d 436, 439 (N.Y. App. Div. 2017) ("A cause of action for unfair competition has not been stated as plaintiffs failed to 'allege the bad faith misappropriation of a commercial advantage which belonged exclusively to'" the plaintiff). Thus, Fanatics's assertion that Panini "misappropriated" its ability to pursue potential deals that did not belong exclusively to it cannot sustain a claim for unfair competition.

Fanatics's allegations also fail because they do not establish that Panini exploited Fanatics's property, labor, or resources to obtain a commercial advantage. "Misappropriation" requires taking of another's property for oneself. Black's Law Dictionary (11th ed. 2019) (defining "misappropriation" as "the application of another's property or money dishonestly to one's own use."). Accordingly, "[a]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same

property." *ITC Ltd.*, 880 N.E.2d at 859(N.Y. 2007). At a minimum, the plaintiff must allege that the defendant exploited its property "to gain commercial advantage." *Midwest Railcar Corp. v. Everest Railcar Services, Inc*., 2017 WL 1383765, at *7 (S.D.N.Y. Apr. 13, 2017).[3] But all that Fanatics musters on this point is the vague assertion that its alleged "losses benefited Panini by preventing competition on its NBA and NFL Players Association licenses for an entire season and tying up its competitor for almost a year with sham negotiations." Compl. ¶ 115. Even crediting these allegations as true, they indicate at most that Fanatics exercised its judgment to forgo opportunities to pursue deals with players and rookies while it pursued negotiations with Panini for early termination of the Panini licenses. They do not show that Panini managed to use Fanatics's resources and efforts to secure these deals for itself. Fanatics's mere conclusory labeling of conduct as "misappropriation" that is not, in fact, misappropriation, does not suffice. *Midwest Railcar Corp.*, 2017 WL 1383765, at *7 ("Nor does Everest allege *how* Midwest exploited this skill, labor or goodwill to gain commercial advantage. This allegation is conclusory, and therefore will not be credited." ) (citing *Iqbal*, 556 U.S.at 681).

In *Miller v. Walters*, 997 N.Y.S.2d 237 (N.Y. Sup. Ct. 2014), the court rejected an unfair competition claim based on similar allegations. There, a sports management firm alleged "that they expended time and effort for one-and-a-half years in order to secure a lucrative second contract for [an NBA player] and that, at the last minute, Defendants committed wrongful acts by which they misappropriated the fruits of Plaintiffs' efforts." *Id.* at 246. The court held that "[s]uch a claim is far afield from a proper misappropriation claim, since Plaintiffs of course do not contend [the

---

[3] In fact, throughout the course of the negotiations, Panini was the only party sharing confidential and proprietary information. Thus, Fanatics was the only party with the opportunity to misappropriate a commercial advantage.

NBA player] was their 'property' and they assert no factual basis from which to determine that Plaintiffs worked with [the player] so to gain a 'competitive advantage' in their industry." *Id.*

Fanatics's claim is even further afield from a proper misappropriation claim. As in *Miller*, Fanatics cannot assert that the NBA players and NFL rookies with whom it could have allegedly contracted are its "property." In *Miller*, plaintiffs were able at least to point to a client that left their agency to work with defendants, which they characterized as "theft." *Id.* at 240. Even that failed to state a claim for unfair competition. Here, Fanatics cannot point to a single thing that Panini stole from it. It does not allege that Panini secured the deals with NBA players and NFL rookies that it might have pursued and thus "stole" these deals from Fanatics.

Fanatics's claim that Panini "misappropriated the time, effort, and attention of Plaintiff's leadership by tying them up in dead-end negotiations," Compl. ¶ 115, fares even worse. Misappropriation requires the "taking and use" of another's property. *ITC Ltd.*, 880 N.E.2d at 859. "[T]ime, effort, and attention" are not property that can be taken and used by another. *See, e.g.*, *Pizza Pub. Co., v. Tricon Glob. Restaurants, Inc.*, 2000 WL 1404716, at *3 (S.D.N.Y. Sept. 25, 2000) ("Because there are no facts indicating that [defendant] misappropriated [plaintiff's] property, [plaintiff] cannot sustain a claim for unfair competition under New York law."). Indeed, despite its use of the label "misappropriation," Fanatics's real complaint is that Panini wasted its time, effort, and attention. But the "tort of unfair competition" "is limited to cases where one has ***misappropriated*** the skill, expenditures, and labor of another." *Sleepy's*, 133 F. Supp. 3d at 502 (emphasis added).

In its initial effort to defend its claim, Fanatics suggested its allegations are enough to withstand a Rule 12(b)(6) motion to dismiss because "unfair competition is [an] 'adaptable and capacious' tort." ECF 28 at 3 (quoting *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v.*

*Columbia Broad. Sys., Inc*., 672 F.2d 1095, 1105 (2d Cir. 1982)). But "it is now clear that the tort is not all-encompassing." *Enzo Biochem, Inc. v. Molecular Probes, Inc.*, 2013 WL 6987615, at *5 (S.D.N.Y. Dec. 6, 2013) (quotation marks and citations omitted) (discussing *ITC Ltd.*, 880 N.E.2d 852). "To the contrary, in rejecting the notion that unfair competition is equivalent to the amorphous term 'commercial unfairness,' the New York Court of Appeals has stated that misappropriation of another's commercial advantage is a cornerstone of the tort." *Id.* (quotation marks and citations omitted); *see also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50–51 (2d Cir. 2019) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith.") (internal citation and quotation marks omitted); *Ruder & Finn v. Seaboard Sur. Co*., 422 N.E.2d 518, 522 (N.Y. 1981) ("unfair competition" not to be equated with the far more amorphous term "commercial unfairness"). And even in *Roy*, the court held that the defendant "unquestionably appropriated the 'skill, expenditures and labor' of the plaintiffs to its own commercial advantage." 672 F.2d at 1105. Fanatics cannot marshal facts amounting to "misappropriation." Its attempt to expand the claim far beyond its recognized limits should be rejected.

## II. Fanatics's Claim for Breach of the Obligation to Negotiate in Good Faith Does Not Plausibly Allege a Binding Preliminary Agreement.

Count 3 is also based on the parties' failed negotiations. The Complaint acknowledges that the parties never reached a final agreement and negotiations were ongoing when the "early termination talks terminated." Compl. ¶ 82. At the same time, it asserts that Fanatics and Panini "reached an agreement in principle" that "was a preliminary agreement to negotiate in good faith" which Panini breached. *Id.* ¶¶ 124–125. Because Fanatics offers no specific factual allegations to support the existence of such an agreement (nor could it), the claim fails as a matter of law.

"There is a strong presumption against finding binding obligation in agreements which . . . call for future approvals," as is the case here. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989). Thus, "[u]nder New York law, where parties involved in negotiations have reached preliminary agreements contemplating future negotiations, subsequent approvals or a further contract, binding obligations are not typically created." *In re 50 Pine Co.*, 317 B.R. 276, 281 (Bankr. S.D.N.Y 2004); *see also Richbell Info. Servs., Inc.*, 309 A.D.2d at 297 (holding that term sheet was a "classic example of an unenforceable 'mere agreement to agree'"). "New York law disfavors agreements to negotiate in good faith, and enforces them only where the parties have agreed to the 'essential terms' of the contract." *Atla-Medine v. Crompton Corp.*, 2001 WL 1382592, at *5 (S.D.N.Y. Nov. 7, 2001).

In the unusual case where preliminary agreements create binding obligations, the binding preliminary agreements fall into one of two categories. *Adjustrite Sys., Inc. v. GAB Bus. Services, Inc.*, 145 F.3d 543, 548 (2d Cir. 1998). The first "is a fully binding preliminary agreement, which is created when the parties agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." *Id.* In other words, the agreement is preliminary only in form. This type of binding preliminary agreement is clearly not at issue here: the Complaint does not allege that Panini and Fanatics had reached an agreement on all terms that simply needed to be memorialized.

The second type of preliminary agreement "is created when the parties agree on certain major terms, but leave other terms open for further negotiation" while accepting "a mutual commitment to negotiate together in good faith in an effort to reach final agreement." *Id.* "In contrast to a fully binding preliminary agreement, a binding preliminary commitment does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate

the open issues in good faith in an attempt to reach the . . . objective within the agreed framework." *Id*. (internal quotations omitted) (quoting *Tchrs. Ins. & Annuity Ass'n of Am. v. Trib. Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)). In the Complaint, Fanatics seeks to characterize an alleged "agreement in principle" as this second type of "preliminary agreement" that Fanatics claims Panini breached by allegedly inflating its financial projections and delaying the negotiations. Compl. ¶¶ 124–125.

However, Fanatics's allegations fall far short of establishing a preliminary agreement giving rise to a duty to negotiate in good faith. The Second Circuit has identified several factors for analyzing whether a preliminary agreement is a binding commitment or an unenforceable agreement to agree, which include.

> (1) the language of the agreement; (2) the existence of open material terms; (3) whether there has been partial performance; and (4) the necessity of putting the agreement in final form as indicated by the customary form of such transactions.

*Cohen v. Singer*, 4 Fed. Appx. 38, 40 (2d Cir. 2001) (citing *Adjustre Sys., Inc.*, 145 F.3d at 549). The first factor, the language of the agreement, is "the most important." *Id*. Yet, here, Fanatics asserts only that the parties reached "an agreement in principle," while saying nothing about the language of this alleged agreement. Compl. ¶ 74. Indeed, Fanatics does not even describe the nature of this alleged "agreement in principle." Was it set forth in a signed letter of intent? An executed term sheet? Fanatics does not say. Nor does Fanatics describe the terms of the alleged agreement other than to assert that "with the approval of the licensors, Panini would terminate" its existing licenses early and "[i]n exchange, Fanatics Collectibles would pay Panini an early termination fee based upon Panini's projected earnings for the residual term of the licenses." *Id*.

Courts have not hesitated to dismiss claims for breach of the obligation to negotiate in good faith when confronted with similar allegations. In *Cohen*, for instance, the Second Circuit upheld

the district court's conclusion that an alleged contract "amounted to no more than an 'agreement to agree,'" that did "not bear the indicia of a binding preliminary agreement." 4 Fed. Appx. at 40. As here, the alleged contract at issue in *Cohen* was characterized as "an agreement in principle" and was subject to further approvals. *Id*. Similarly, in *Richbell*, the New York Court of Appeals characterized language conveying that issues were "agreed to in principle" as "non-binding" in upholding the dismissal of a claim for breach of the duty to negotiate in good faith. 309 A.D.2d at 303; *see also In re 50 Pine Co.*, 317 B.R. at 283 (dismissing claim that defendant breached binding obligation of good faith where term sheet disclaimed binding commitment); *Garda USA, Inc. v. Sun Cap. Partners, Inc*., 194 A.D.3d 545, 547 (N.Y. App. Div. 2021) (holding that allegations of term sheet and exclusivity agreement failed to establish the existence of an agreement that bound parties to negotiate in good faith).

The other factors that the Second Circuit has identified to determine whether a preliminary agreement is a binding contract reaffirm that Fanatics's allegations do not state a claim. *See Cohen*, 4 Fed. Appx. at 40 (listing four factors). The second factor is the existence of open material terms. But, here, the most significant term—price—remained open, and Fanatics admits that any agreement was subject to the approval of the licensors. Compl. ¶ 74. Even an express provision in a preliminary agreement obligating the parties to negotiate in good faith is too indefinite to be enforced where material terms are left open for negotiation. *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1336 (S.D.N.Y. 1982) (agreement "to negotiate in good faith" the renewal of a contract upon its expiration held unenforceable because material terms left open). Therefore, the second factor does not support the existence of a binding preliminary agreement. The third and fourth factors also weigh against finding a binding agreement. Fanatics does not allege partial performance and there can be no doubt that a deal of this magnitude between two

large, sophisticated corporations would need to be substantially fleshed out to be binding on the parties. Accordingly, Count 3 should be dismissed.

### III. Fanatics's Claim for Tortious Interference with Business Relations Fails for Multiple Independent Reasons.

Fanatics's claim for tortious interference with business relations—Count 2—concerns Panini's alleged interference with Fanatics's efforts to hire Panini America employees. *See* Compl. ¶¶ 91-94; 116-122. After Fanatics announced that it had secured the long-term exclusive licenses at issue in the Antitrust Action, Fanatics sought to raid Panini America's employee base in Texas using a combination of threats and improper inducements. Remarkably, while admitting that at least 37 Panini America employees left to work for Fanatics, *id.* ¶ 88, Fanatics now alleges that Panini (or Panini America)[4] somehow acted improperly because it took action to protect its employee base. Specifically, Fanatics claims Panini America prevented some unnamed group of "other" Panini America employees from joining Fanatics by threatening them with legal action if they gave into Fanatics. Fanatics then speculates, "upon information and belief," that "many more" unnamed "employees have been deterred from joining Fanatics Collectibles and forced to remain captive at Panini." *Id.* ¶ 94. In essence, Fanatics's claim is that Panini's defensive measures prevented it from poaching even more of Panini's employees. The claim fails for at least three reasons: (1) the Complaint fails to sufficiently allege wrongful means; (2) the Complaint fails to establish causation; and (3) the claim is barred by the *Noerr-Pennington* doctrine.

*First*, Fanatics fails to establish that Panini "acted for a wrongful purpose or used dishonest, unfair, or improper means." *Catskill Dev., LLC*, 547 F.3d at 132. "To state a claim for this tort under New York law, four conditions must be met: (1) the plaintiff had business relations with a

---

[4] While this section of the Complaint refers primarily to Panini S.p.A., Fanatics acknowledges that the employees at issue are employed by Panini America, not Panini S.p.A. Compl. ¶ 89.

third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Id*. "The tort of interfering with prospective contractual relations has more demanding requirements for establishing liability than those required for existing contractual relationships," *Italian & French Wine Co. of Buffalo v. Negociants USA, Inc.*, 842 F. Supp. 693, 701 (W.D.N.Y. 1993), and "[t]he wrongful means requirement makes alleging and proving a tortious interference claim with business relations 'more demanding'" because "a plaintiff's mere interest or expectation in establishing a contractual relationship must be balanced against the 'competing interest of the interferer' as well as the broader policy of fostering healthy competition." *Catskill Dev., LLC*, 547 F.3d at 132 (internal citations omitted). Thus, threats of litigation may only be used to establish the wrongful means element of a claim for tortious interference with business relations where the litigation is "wrongful" or "patently frivolous." *Gucci Am., Inc.*, 2007 WL 840128, at *7 (wrongful only "if the actor has no belief in the merit of the litigation"); *Semple v. Eyeblaster, Inc.*, 2009 WL 2709281, at *4 (S.D.N.Y. Aug. 27, 2009) (threats of civil litigation "cannot form the basis of a tortious interference with business relations claim unless the claim is patently frivolous"). In *Semple*, the court found no wrongful means were used when the defendant sent a cease-and-desist email to a private equity company Millenium demanding Millenium cease soliciting the defendant's employees to sell their stock, "and stated that [defendant] reserved all rights to take all appropriate legal action against Millennium if it did not cease and desist such solicitation." *Id*. at *1. There, the defendant's reservation of legal rights was not "patently frivolous" or "wrongful" because "[i]t is well-settled that where a party acts, at least in part, in accordance with its normal economic self-interest, it cannot be found to have acted *solely* out of malice for the purpose of a tortious interference claim." *Id.*at *4; *see also Friedman*

*v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 171 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009) (acting "in the interests of [the defendant company] and its employees" is not acting solely out of malice).

The same reasoning applies here. Indeed, the scant factual allegations support the *opposite* of a frivolous suit: Plaintiff admits that former Panini employees left with thumb drives holding Panini's information, that later Panini sued in Texas to prevent misappropriation of its trade secrets, and that the Texas state court *granted* Panini's application for a temporary restraining order against Fanatics. Compl. ¶¶ 91, 93.[5]

Fanatics remaining allegations are conclusory, *see, e.g.*, *id.* ¶ 121 ("Panini acted willfully and maliciously by making these threats"), or they show that Panini acted out of its normal economic self-interest, *see, e.g., id.* ¶ 93 ("former employees left with thumb drives"). Both are insufficient to allege frivolous litigation for purposes of a claim for tortious interference. *Agfa Corp. v. United Mktg. Grp., Inc.*, 2003 WL 21555087, at *3 (S.D.N.Y. July 10, 2003) (allegations of "sham" litigation insufficient to show litigation was "objectively baseless" because allegations were conclusory); *Jill Stuart (Asia) LLC v. Sanei Int'l Co.*, 2013 WL 1769960, at *6 (S.D.N.Y. Apr. 25, 2013) (tortious interference claim dismissed because defendant made only "conclusory

---

[5] The Court may take judicial notice of the Texas pleadings, as the Second Circuit "has consistently held that, in considering a motion to dismiss, a trial court may rely upon public documents of which the plaintiff had notice that are integral to the plaintiff's claim." *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 229 F.3d 1135, 1135 (2d Cir. 2000); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (district court did not impermissibly rely on evidence outside the record on motion to dismiss to determine whether litigation was objectively baseless); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (court may take judicial notice that "assertions were made in lawsuits"). The petition in the Texas case makes clear that Panini's claims were brought to enforce the former Panini employees' non-disclosure agreements with Panini, which prohibit misappropriation of Panini's trade secrets and solicitation of other Panini employees. Because of this, Fanatics's allegations that the former and current employees were not under any non-compete agreements, Compl. ¶¶ 91, 94, is a red herring. As Fanatics recognizes, the Texas litigation brings claims for misappropriation of trade secrets. *Id.* ¶ 93.

16

allegation—but alleges absolutely no facts to support" their claim); *Semple*, 2009 WL 2709281, at *4 (no wrongful interference where defendant acted out of "normal . . . self-interest" in making threats of civil litigation).

*Second*, Fanatics fails to allege that it would have contracted with former Panini America employees had Panini America not allegedly interfered, which is required to state a claim for tortious interference with business relations. *See Riddell Sports Inc.*, 872 F. Supp. at 78–79. To sufficiently state the claim, a "plaintiff must allege that, but for defendant's conduct, his prospective business relations would have coalesced into actual contracts." *Id.* ("allegations are too vague to support a finding that they would have executed specific contracts but for interference by counterdefendants."); *Susskind v. Ipco Hosp. Supply Corp.*, 373 N.Y.S.2d 627, 629 (N.Y. App. Div. 1975) (explaining that it is "fatal" that complaint does not allege "specific allegations that the negotiations would have culminated in a contract but for the interference of" defendant); *Brown v. Bethlehem Terrace Assocs.*, 525 N.Y.S.2d 978, 980 (N.Y. App. Div. 1988) ("defendants' vague references" insufficient to allege "that the complaining party would have consummated a contract *but for* the interference of a third party") (alteration in original). Here, Fanatics's allegations— which do not identify any specific employees who Fanatics would have hired or even any efforts to initiate the hiring process—are insufficient to allege "specific contracts" with specific individuals that would have been executed absent Panini's alleged interference. *Riddell Sports Inc.*, 872 F. Supp. at 79. *Compare* Compl. ¶ 94 ("many more Panini employees have been deterred from joining Fanatics Collectibles"), and ¶ 122 (Fanatics deprived "of the ability to hire qualified, sought-after employees"), *with Purgess v. Sharrock*, 33 F.3d 134, 142 (2d Cir. 1994) (allegations that plaintiff applied for specific job opportunity at NYU, NYU initiated the interview process by following up with plaintiff's previous employer, and previous employer falsely told NYU "that

[plaintiff] had been terminated for specific incidents of malpractice"). "This omission is fatal" to Plaintiff's claim, and it should be dismissed on this basis alone. *Susskind*, 373 N.Y.S.2d at 629; *Four Finger Art Factory, Inc. v. Dinicola*, 2000 WL 145466, at *7 (S.D.N.Y. Feb. 9, 2000) (dismissing claim because complaint failed to specify "any economic opportunities which were lost as a result of the defendants' conduct" where no "other specific parties" alleged).

*Finally*, Panini's alleged prelitigation threats are immunized from Fanatics's tortious interference claim under the *Noerr-Pennington* doctrine. *Noerr-Pennington* protects "efforts to influence governmental action through litigation, lobbying, and the like" under the First Amendment, "provided the activities are more than a mere 'sham.'" *Bath Petroleum Storage, Inc.*, 229 F.3d at 1135. The doctrine "is applicable to . . . state-law claims such as fraud and tortious interference," *id.*, and extends "to pre-litigation 'threat letters.'" *Lewin*, 2015 WL 3948824, at *27; *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 100 (2d Cir. 2000) ("Courts have extended *Noerr–Pennington* to encompass concerted efforts incident to litigation, such as prelitigation 'threat letters.'"). Litigation is only a "sham" where the behavior is "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." *Bath Petroleum Storage, Inc.*, 229 F.3d at 1135.. And "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 n.5 (1993). Accordingly, Panini's alleged litigation threats are immunized under *Noerr-Pennington* because Fanatics fails to allege the litigation would be "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." *Bath Petroleum Storage, Inc.*, 229 F.3d at 1135. Indeed, **Panini has already won on the merits** in similar litigation—litigation brought in Texas state court against former employees—in successfully seeking emergency relief. Compl. ¶ 91; *Pro. Real Est. Invs., Inc.*, 508

U.S. at 61 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). And Fanatics admits that employees left Panini with thumb drives, *id.* ¶ 93, giving rise to at least a genuine dispute of material fact over whether those drives contained proprietary information and foreclosing any allegation that a trade secret misappropriation claim would be a "sham." *Lewin*, 2015 WL 3948824, at *28 (failure to show "sham" litigation where outcome "depend[s] on the resolution of genuine disputes as to material facts"). Thus, Fanatics fails to allege any facts that show Panini threatened "sham" litigation, and its tortious interference claim also should be dismissed under the *Noerr-Pennington* doctrine.

## IV.   If the Claims Are Not Dismissed, the Actions Should Be Consolidated with Panini America Designated as Plaintiff.

All Fanatics's claims should be dismissed for the reasons set forth above. But if any of its claims survive, they should be consolidated with the first-filed Antitrust Action as counterclaims with Panini America designated as plaintiff.

Under Federal Rule of Civil Procedure 13(a), a pleading must state as a counterclaim any claim that arises out of the "transaction or occurrence that is the subject matter of the opposing party's claim . . . and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." A claim and counterclaim arise out of the same "transaction or occurrence," if "a logical relationship exists between the claim and the counterclaim and if the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000) (internal quotation marks omitted). "Where a party institutes a second action based upon a compulsory counterclaim in a still pending action, courts can use the procedural devices of transfer, stay and consolidation to avoid multiple litigation and to effectuate the Rule." *Internet Law Library*, 208 F.R.D. at 63 (internal citation

omitted). "The purpose of [Rule] 13(a) is to permit a court to decide all related claims in one action, thereby avoiding a wasteful multiplicity of litigation." *In re PCH Assocs.*, 949 F.2d 585, 594 (2d Cir. 1991) (internal quotation marks and citation omitted). Rule 13(a) "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991) *(*quoting *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962)).

The Antitrust Action—the first-filed action—arises from the unlawful conduct of Fanatics in monopolizing and attempting to monopolize the market for the production and sale of new professional sports trading cards, including by controlling and restricting access to key inputs that Panini America and any other competitors require to compete successfully. Fanatics's Complaint is a direct response to the Antitrust Action, in which Fanatics claims that Panini—not Fanatics— is the party that competed unfairly. The Complaint not only repeatedly references the Antitrust Action, it expounds on Fanatics's purported defenses at length. Given these allegations, Fanatics cannot credibly deny that its claims are "logically connected" to Panini's Antitrust Action. Indeed, its claims derive mainly from the Antitrust Action itself and should have been pled, if at all, as counterclaims. *Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161, 165 (E.D.N.Y 1999) (holding that claims were compulsory counterclaims because they "derive either from transactions underlying the Southern District claims …or indeed, from the Southern District action itself"); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 589–90 (S.D.N.Y. 2010) ("[T]he question of whether the [earlier action] is a mere pretext for illegal action is one that is logically intertwined with the validity of the [current] legal claims.").

Fanatics's attempt to evade Rule 13(a) by intentionally avoiding naming the same parties as those in Antitrust Action does not change the analysis. Fanatics brought this suit against Panini

S.p.A. instead of Panini America, the plaintiff in the Texas and Antitrust suits, even though Panini America holds the licenses at issue and is the party that allegedly threatened the employees with litigation. However, when parties in two suits "represent the same interests," the actions may be considered duplicative even if the parties are not identical. *See In re Peaktop Techs. (USA), Inc. S'holder Derivative Litig. v. Peaktop Int'l Holdings Ltd.*, 2007 WL 700826, at *2–3 (S.D.N.Y. Mar. 6, 2007) (holding that claims against defendants who were not parties to the previous lawsuit were barred as compulsory counterclaims when, as a wholly-owned subsidiary, the defendant represented the "same interests" as the entity that was a party to the previous lawsuit). Here, Fanatics alleges that Panini S.p.A. and Panini America are essentially one in the same when it asserts that "executives of Panini America and Panini S.p.A. operate in tandem and make decisions together, and Panini America is 100% owned and controlled by Panini S.p.A. Accordingly, Fanatics treats Panini America as an arm of Panini for purposes of personal jurisdiction." Compl. n. 5. Thus, Fanatics clearly believes that Panini S.p.A. and Panini America represent the same interests. And the Fanatics entity serving as plaintiff in this case—Fanatics Collectibles Topco, Inc.— represents the same interests as Fanatics SPV, LLC, a defendant in the Antitrust Action and Texas state court litigation. In the Antitrust Action, Fanatics's Chief Legal Officer submitted a declaration in which he testified that "Fanatics' trading card operations are part of its Fanatics Collectibles business, which includes Defendants Fanatics Collectibles Intermediate Holdco, Inc. and Fanatics SPV, LLC." Case No. 1:23-cv-09714-JHR, ECF 24-1, ¶ 2. Moreover, Fanatics SPV, LLC is the Fanatics entity that is a party to the agreements on which Fanatics relies to claim that venue is proper in this District, which includes the "term sheet between Fanatics and Panini for the early termination." Compl. ¶¶ 19-20.

When Fanatics filed this lawsuit, it unnecessarily and improperly multiplied the proceedings. However, rather than granting leave to Fanatics to re-file its claims as counterclaims in the Antitrust Action, the "court can just as easily achieve the same result by consolidating the two actions and designating [Panini America] as 'plaintiff.'" *Internet Law Library*, 208 F.R.D. at 64 (internal citation omitted).

## **CONCLUSION**

For the reasons set forth above, Panini requests an order dismissing the Complaint in its entirety with prejudice for failure to state a claim upon which relief can be granted.

December 8, 2023

Respectfully submitted,

*/s/ David Boies*
David Boies
Eric Brenner
**Boies Schiller Flexner LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Jason Hilborn*
**Boies Schiller Flexner LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
jhilborn@bsfllp.com

Ursula Ungaro*
**Boies Schiller Flexner LLP**
100 SE 2nd Street Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
uungaro@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**Boies Schiller Flexner LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini S.p.A.*

*\*Pro hac vice*