UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FANATICS COLLECTIBLES TOPCO, INC.,

    Plaintiff,

v.                                                **Case No. 1:23-cv-06895-JHR**
                                              **[rel: Case No. 1:23-cv-09714-JHR]**

PANINI S.P.A.,

    Defendant.
_____/

**DEFENDANT PANINI S.P.A.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF
<u>FANATICS COLLECTIBLES TOPCO, INC.'S AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................II

ARGUMENT ................................................................................................................................. 1

I.   The Court should reject Fanatics' attempt to evade the unequivocal, non-binding language in the term sheets, which are integral to its claim for breach of the duty to negotiate in good faith. ............................................................................................... 1

II.  Fanatics' unfair-competition claim fails because it has not alleged a bad-faith misappropriation of a commercial advantage belonging exclusively to Fanatics. ............. 5

III. Fanatics' claim for tortious interference with business relations fails because Fanatics identifies no specific or actual contracts it would have executed, Fanatics has not plausibly alleged wrongful means, and the First Amendment bars it. ................... 7

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
  131 F. Supp. 3d 196 (S.D.N.Y. 2015) ............................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 8

*Atari, Inc. v. Games, Inc.*,
  2005 WL 447503 (S.D.N.Y. Feb. 24, 2005), *aff'd*, 164 F. App'x 183 (2d Cir. 2006) ............... 6

*Barker v. Bancorp, Inc.*,
  2022 WL 595954 (S.D.N.Y. Feb. 25, 2022) ..................................................................... 2

*Bear Stearns Inv. Prod., Inc. v. Hitachi Auto. Prod. (USA), Inc.*,
  401 B.R. 598 (S.D.N.Y. 2009) ..................................................................................... 1, 4

*Beekman Inv. Partners, L.P. v. Alene Candles, Inc.*,
  2006 WL 330323 (S.D.N.Y. Feb. 14, 2006) ................................................................. 1, 3

*Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*,
  610 F. App'x 69 (2d Cir. 2015) ....................................................................................... 5

*Booth Oil Site Admin. Grp. v. Booth*,
  2010 WL 11549710 (W.D.N.Y. Apr. 16, 2010) ................................................................ 4

*Bunch v. Artec Int'l Corp.*,
  559 F. Supp. 961 (S.D.N.Y. 1983) .................................................................................. 6

*Cohen v. Singer*,
  4 F. App'x 38 (2d Cir. 2001) ........................................................................................... 4

*Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*,
  166 F. Supp. 2d 891 (S.D.N.Y. 2001) ............................................................................. 7

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) .............................................................................................. 2

*CT Espresso LLC v. Lavazza Premium Coffees Corp.*,
  2022 WL 17156759 (S.D.N.Y. Nov. 22, 2022) .............................................................. 10

*Data Broad. Corp. v. Tele-Commc'ns, Inc.*,
  1992 WL 350624 n.4 (S.D.N.Y. Nov. 19, 1992) .............................................................. 6

*Garda USA, Inc. v. Sun Cap. Partners, Inc.*,
  149 N.Y.S.3d 37 (N.Y. App. Div. 2021) ......................................................................... 4

*Gleason Works v. Oerlikon Geartec, AG*,
    141 F. Supp. 2d 334 (W.D.N.Y. 2001) .................................................................................. 5

*Grgurev v. Licul*,
    229 F. Supp. 3d 267 (S.D.N.Y. 2017) .................................................................................... 9

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991) .................................................................................................. 2

*In re Maxwell Commc'n Corp.*,
    198 B.R. 63 (S.D.N.Y. 1996) ............................................................................................ 3, 4

*In re Westinghouse Elec. Co.*,
    588 B.R. 347 (Bankr. S.D.N.Y. 2018) ................................................................................... 3

*ITC Ltd. v. Punchgini, Inc.*,
    880 N.E.2d 852 (N.Y. 2007) .................................................................................................. 5

*Kaczmarcysk v. Dutton*,
    414 F. App'x 354 (2d Cir. 2011) ........................................................................................... 3

*Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*,
    964 F. Supp. 90 (W.D.N.Y. 1997) ......................................................................................... 5

*Leadsinger, Inc. v. Cole*,
    2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006) ....................................................................... 7

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*,
    6 N.Y.S.3d 7 (2015) ........................................................................................................... 5, 6

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992) ........................................................................................... 10

*Midwest Railcar Corp. v. Everest Railcar Servs., Inc.*,
    2017 WL 1383765 (S.D.N.Y. Apr. 13, 2017) ........................................................................ 5

*Miller v. Brightstar Asia, Ltd.*,
    2023 WL 5839164 (S.D.N.Y. Sept. 11, 2023) ....................................................................... 2

*Miller v. Walters*,
    997 N.Y.S.2d 237 (N.Y. Sup. Ct. 2014) ................................................................................ 6

*Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*,
    701 F. Supp. 2d 568 (S.D.N.Y. 2010) .................................................................................... 8

*Network Enters. v. APBA Offshore Prods., Inc.*,
    427 F. Supp. 2d 463 (S.D.N.Y. 2006) .................................................................................... 3


*Oneida Grp. Inc. v. Steelite Int'l USA Inc.*,
  2017 WL 6459464 (E.D.N.Y. Dec. 15, 2017) .................................................................. 7

*Panini Am., Inc. v. Matijevich et al.*,
  No. DC-23-04798 (Tex. Dist. Ct., Dallas Co., Jan. 12, 2024) ....................................... 9

*Plasticware, LLC v. Flint Hills Res., LP*,
  852 F. Supp. 2d 398 (S.D.N.Y. 2012) ............................................................................ 7

*Primetime 24 Joint Venture v. Nat'l Broad., Co.*,
  219 F.3d 92 (2d Cir. 2000) ........................................................................................... 10

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
  751 F.2d 69 (2d Cir. 1984) ............................................................................................. 3

*Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC*,
  317 F. Supp. 2d 301 (S.D.N.Y. 2003) ............................................................................ 7

*Red Mt. Med. Holdings, Inc. v. Brill*,
  563 F. Supp. 3d 159 (S.D.N.Y. 2021) ............................................................................ 5

*Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*,
  2006 WL 1304699 (N.D.N.Y. May 9, 2006) ................................................................. 6

*Singh v. NYCTL 2009-A Tr.*,
  683 F. App'x 76 (2d Cir. 2017) .................................................................................... 10

# ARGUMENT[1]

I. **The Court should reject Fanatics' attempt to evade the unequivocal, non-binding language in the term sheets, which are integral to its claim for breach of the duty to negotiate in good faith.**

The term sheets Fanatics quotes in the Amended Complaint to allege the parties reached a binding Type II preliminary agreement to negotiate in good faith *expressly and repeatedly* disclaim any binding commitment. Mem. 3 (attaching term sheets). This language bars Fanatics' claim. *Beekman Inv. Partners, L.P. v. Alene Candles, Inc.*, 2006 WL 330323, at *7 (S.D.N.Y. Feb. 14, 2006). Indeed, even the case that Fanatics mainly relies on recognizes that "if either party communicates an intention not to be bound absent a fully executed document, then 'no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract.'" *Bear Stearns Inv. Prod., Inc. v. Hitachi Auto. Prod. (USA), Inc.*, 401 B.R. 598, 617 (S.D.N.Y. 2009). Panini did what it was supposed to do to protect itself from the claim Fanatics is now bringing by ensuring that the term sheets expressly disclaimed a binding commitment.

Now, confronted with the non-binding language in the term sheets it hid, Fanatics urges the Court to ignore them, claiming that it is not relying on them. The Amended Complaint refutes that argument. To begin with, the Amended Complaint relies in part on the term sheets for venue. Fanatics asserts that "this action arises from the negotiations and business relationship reflected in the NDA *and term sheet*" and that "*the term sheet* between Fanatics and Panini" provides for venue in New York. ¶¶ 22-23 (emphases added). And paragraph 82 of the Amended Complaint further relies on the term sheets in five ways. There, Fanatics asserts that:

> (1) A "preliminary agreement" was "reached" "after Fanatics sent Panini *a draft term sheet* outlining the terms of the contemplated transaction";

---

[1] Citations to "¶ _," "Mem.," and "Opp." are to the Amended Complaint, ECF No. 39, Panini's Memorandum of Law in Support of its Motion to Dismiss, ECF No. 47, and Fanatics' Memorandum of Law in Opposition to Panini's Motion to Dismiss, ECF No. 53, respectively.

(2) After "receiving *the draft term sheet* in May 2022, Panini executives orally informed Fanatics executives that Panini accepted the core structure";

(3) "Panini's counsel added a provision to *the draft term sheet* stating that the parties 'will continue to negotiate in good faith'";

(4) "the parties exchanged *various draft term sheets*" with "similar language";

(5) "*These documents*"—the term sheets—"reflect the core terms that the parties had agreed upon."

¶ 82 (emphases added).

Against these allegations, Fanatics cannot deny that the term sheets are integral to its claim. Not only does Fanatics refer to the term sheets as support for the parties allegedly reaching a preliminary agreement, but it also quotes language from the term sheets verbatim.[2] The term sheets can and should be considered at this stage. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). Indeed, Fanatics' "failure to include matters of which [it] had notice and which were integral to [its] claim—and that [it] apparently most wanted to avoid—may not serve as a means of forestalling" this Court's "decision." *Id.* at 44.[3] And "the Second Circuit has cautioned district judges to be mindful of litigants who cherry-pick among relevant documents and has clarified that district courts may consider relevant documents that are fairly implicated by a plaintiff's claims, irrespective of whether they are part of the pleadings." *Barker v. Bancorp, Inc.*, 2022 WL 595954, at *6 (S.D.N.Y. Feb. 25, 2022) (collecting Second Circuit cases).

---

[2] Fanatics' characterization of the quotations as "limited" does not mean they are not integral since they are a primary basis for Fanatics' claim. *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) ("despite [plaintiff's] failure to submit the prospectus as an exhibit to the complaint, and despite the fact that the complaint contains only 'limited quotation' from that document. … The prospectus is integral to the complaint.").

[3] *See also Miller v. Brightstar Asia, Ltd.*, 2023 WL 5839164, at *4 (S.D.N.Y. Sept. 11, 2023) (considering contracts "'executed' in 'connection with the transaction' at the center of [the] dispute" in deciding motion to dismiss). Fanatics cites several cases in which courts refused to consider documents outside the complaint—such as emails, pleadings from other actions, deposition testimony, and corporate reports—because they injected facts outside the complaint or were not specifically referenced at all by the complaint. None of these cases involved documents exchanged by the parties that form the basis for the plaintiff's claim, like here.

Fanatics' suggestion (at 13) that the Court should ignore the term sheets because it cannot verify their authenticity is just as disingenuous. If Fanatics had any good-faith basis to dispute the term sheets' authenticity, it could have done so. It did not because there is none.

And Fanatics offers no authority for its assertion (at 9) that the term sheets' disclaiming a binding commitment does not negate the obligation to negotiate in good faith. When "a party gives forthright, reasonable signals that it means to be bound only by a written agreement, courts should not frustrate that intent." *Beekman*, 2006 WL 330323, at *7; *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 356 (2d Cir. 2011); *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984).[4] The only cases Fanatics cites are those in which courts **refused** to find a binding preliminary agreement because—as here—the agreements contained language disclaiming a binding commitment. *See* Opp. 9-10. And this Court in *Beekman* considered it "clear" that "an explicit statement of the parties' intent not to be bound"—as here—creates "no agreement of any kind"—including a Type II preliminary agreement—even if parties said they would negotiate "in good faith." 2006 WL 330323, at *7.[5]

Even if the Court accepts Fanatics' characterization of its allegations describing the course of the parties' negotiations, its claim fails. Beyond the term sheets, the only support Fanatics offers for a binding preliminary agreement is a single sentence that Panini "orally" "accepted the core structure proposed for the early termination deal." ¶ 82. Fanatics' suggestion that this adequately alleges a binding preliminary agreement ignores that the Second Circuit only recognizes binding preliminary agreements in "certain rare circumstances." *In re Maxwell Commc'n Corp.*, 198 B.R.

---

[4] *See also Network Enters. v. APBA Offshore Prods., Inc.*, 427 F. Supp. 2d 463, 483 (S.D.N.Y. 2006) (the "obligation to negotiate in good faith that a Type II preliminary agreement would otherwise impose upon a party may, of course, be negated by a sufficiently clear expression that the parties are not bound to each other in any way until a formal written contract is executed"); Mem. 13-14.

[5] *See also In re Westinghouse Elec. Co.*, 588 B.R. 347, 370 (Bankr. S.D.N.Y. 2018).

3

63, 68 (S.D.N.Y. 1996). Those circumstances do *not* include preliminary manifestations of assent that require further negotiation unless "a preliminary agreement **clearly manifests** such an intention." *Id*. (emphasis added). This is a high bar because "no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract" when a party "communicates an intention not to be bound absent a fully executed document." *Bear Stearns*, 401 B.R. at 617; *see also Garda USA, Inc. v. Sun Cap. Partners, Inc.*, 149 N.Y.S.3d 37, 40 (N.Y. App. Div. 2021).

And Fanatics' claim of an oral agreement says nothing about the language of the alleged preliminary agreement—the first and most important factor courts consider when evaluating whether parties to a preliminary agreement intended to be bound. Absent sufficient factual allegations establishing that Panini clearly manifested this intention, there can be no binding agreement. *Cohen v. Singer*, 4 F. App'x 38, 40 (2d Cir. 2001).[6] Fanatics does not cite a single case holding that a plaintiff adequately established a Type II agreement based on a conclusory assertion of an oral agreement, unsupported by factual allegations that the parties intended to be bound. In *Bear Stearns*, the Court's finding of a Type II preliminary was not based solely on an oral statement, as Fanatics says. It also rested on documents—including emails—memorializing the transaction price and clearly confirming the parties' intention to close the deal. 401 B.R. at 606. The other case that Fanatics cites—*Booth Oil Site Admin. Grp. v. Booth*, 2010 WL 11549710 (W.D.N.Y. Apr. 16, 2010)—is even farther afield. It was "of particular significance" in that case that the defendant's oral statement "was made to a Court-appointed mediator"—not the opposing party. *Id.* at *6.

---

[6] While glossing over the language of the alleged preliminary agreement, Fanatics contends (at 10-11) that other lesser important factors establish a binding preliminary agreement. Ironically, Fanatics' arguments on these factors rely on the term sheets which disclaim a binding commitment.

4

**II.     Fanatics' unfair-competition claim fails because it has not alleged a bad-faith misappropriation of a commercial advantage belonging exclusively to Fanatics.**

An unfair-competition claim based on misappropriation requires (1) a bad-faith misappropriation of (2) a commercial advantage or property right ***belonging exclusively to the plaintiff***. *Big Vision Priv. Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69, 70 (2d Cir. 2015); *see also ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 859 (N.Y. 2007). Fanatics' contention that its allegations meet these requirements distorts the law.

*First*, Fanatics argues (at 21-22) that the misappropriation requirement does not actually require a misappropriation—or defendant's taking and use of what belongs to the plaintiff. Thus, says Fanatics, it is enough that Panini allegedly caused Fanatics to stop pursuing potential athlete deals or wasted its "time, effort and attention," even though—as Fanatics concedes—Panini did not take these things for its own use. Fanatics' argument conflicts with the plain meaning of "misappropriation" and the many cases involving unfair-competition claims based on a misappropriation theory, all of which involve defendant's taking and using something belonging to the plaintiff to compete against the plaintiff.[7] *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 6 N.Y.S.3d 7, 13 (2015), is not to the contrary. *Macy's* involved the defendant's stealing designs and products to which the plaintiff had exclusive rights and using them to compete with the plaintiff.[8]

---

[7] *See, e.g.*, *Red Mt. Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 182 (S.D.N.Y. 2021) (allegations did not "suggest that defendants 'reap[ed] where [they] ha[ve] not sown' by taking [plaintiff's] information or property and then employing it to compete with [plaintiff] in the marketplace"); *Midwest Railcar Corp. v. Everest Railcar Servs.*, Inc., 2017 WL 1383765, at *7 (S.D.N.Y. Apr. 13, 2017) ("Nor does Everest allege how Midwest exploited this skill, labor or goodwill to gain commercial advantage."); *ITC Ltd.*, 880 N.E.2d at 859 (An "unfair competition claim involving misappropriation usually concerns the ***taking and use*** of the plaintiff's property to compete against the plaintiff's own use of the same property." (emphasis added)).

[8] The only other case cited by Fanatics as support for this argument is a patent case in which the unfair-competition claim was not based on a misappropriation theory. *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*, 964 F. Supp. 90, 95 (W.D.N.Y. 1997). "In the patent context, while it is not clearly established, there is at least some authority to support a claim of unfair competition against a patentee who commences a patent infringement action in bad faith." *Gleason Works v. Oerlikon Geartec, AG*, 141 F. Supp. 2d 334, 338 (W.D.N.Y. 2001).

*Second*, Fanatics asserts that it has stated an unfair-competition claim even though it acknowledges that the alleged commercial advantages at issue—a potential licensing agreement with NBPA and "opportunities with NFL prospects"—never belonged to it, let alone exclusively. *See* Opp. 21. But New York law does not recognize unfair-competition claims based on *potential* commercial advantages.[9] *See, e.g.*, *Atari, Inc. v. Games, Inc.*, 2005 WL 447503, at *3 (S.D.N.Y. Feb. 24, 2005), *aff'd*, 164 F. App'x 183 (2d Cir. 2006) (plaintiff "never had exclusive ownership of the assets in question"); *Data Broad. Corp. v. Tele-Commc'ns, Inc.*, 1992 WL 350624, at *3 n.4 (S.D.N.Y. Nov. 19, 1992) (plaintiffs alleged no "misappropriation of a property right" besides "its 'profit expectancy'"); *Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*, 2006 WL 1304699, at *3 (N.D.N.Y. May 9, 2006) (that defendant "disingenuously engag[ed] in continuing negotiations ... with no intention of entering into such an arrangement" is not "misappropriation").

Again, Fanatics does not offer a case for such an expansive, unprecedented application of this tort. In *Macy's*, the exclusive rights to the product designs that were misappropriated belonged to the plaintiff. *Macy's*, 6 N.Y.S.3d at 13. And *Bunch v. Artec Int'l Corp.*, 559 F. Supp. 961, 972 (S.D.N.Y. 1983), was decided under Oregon law. Even there, the court did not address the parameters of an unfair-competition claim. It merely acknowledged that the plaintiff might be able to state such a claim in an amended complaint that claimed the defendants terminated the plaintiff's exclusive dealership to "reap the benefits" of the plaintiff's relationship with a hotel. *Id*. at 969.

---

[9] As explained in Panini's initial brief (at 7–8), *Miller v. Walters*, 997 N.Y.S.2d 237, 240 (N.Y. Sup. Ct. 2014), is on all fours. Fanatics suggests (at 21) that *Miller* turned *only* on the court "in the first instance" holding that the plaintiff there failed to allege a "competitive advantage." This assertion gets *Miller* backwards. *Miller* explains that an "unfair competition claim involving misappropriation usually concerns" the "plaintiff's property"—such as "information" the plaintiff "had compiled" to use "in its business that provided an opportunity to obtain a competitive advantage"—and the defendant's "taking and use of" that "same property." *Id.* at 426–427. The plaintiff must "in the first instance" allege property that the defendant took and used. But not just any property—property that conferred a "competitive advantage." *Id.* at 427. Like the plaintiffs in *Miller*, Fanatics does "not contend" that the NBA players and NFL rookies it references were its "property"—let alone that such "property" "was taken by" Panini for its "own use." *Id.*

6

**III.    Fanatics' claim for tortious interference with business relations fails because Fanatics identifies no specific or actual contracts it would have executed, Fanatics has not plausibly alleged wrongful means, and the First Amendment bars it.**

Fanatics' opposition confirms that its egregious claim for tortious interference with business relations—an extraordinary claim that Panini is liable because it chose to protect its employees from further raids by Fanatics—is legally insufficient for three reasons.

**1.** Fanatics concedes (at 17) that it has identified no specific or actual contracts it would have entered into had Panini not allegedly interfered. The Amended Complaint refers only to unidentified employees Fanatics claims it would have hired. *See* ¶¶ 105, 141. These allegations fail to state a claim for tortious interference with business relations. A plaintiff must allege specific or actual business relationships that it would have obtained but for the alleged interference. For example, a "'general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship' does not state a claim." *Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 166 F. Supp. 2d 891, 898 (S.D.N.Y. 2001). Neither do references to plaintiff's "'existing customers' ... and 'major companies' with which it has 'strong business relationship[s].'" *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012). In all the cases cited by Fanatics (at 17-18), the complaint identifies at least some specific parties with which the plaintiff had a prospective business relationship.[10] Fanatics' failure to allege specific business relationships is thus "fatal" to its claim. *Oneida Grp.*

---

[10] *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 217 (S.D.N.Y. 2015) (plaintiff must "identify interference with a ***specific*** business relationship") (emphasis added); *Leadsinger, Inc. v. Cole*, 2006 WL 2320544, at *13 (S.D.N.Y. Aug. 10, 2006) (interference with business relationship with "customers, such as Toys 'R' Us"); *Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC*, 317 F. Supp. 2d 301, 335, 309 n.1 (S.D.N.Y. 2003) (interference to prospective contracts with named defendants). Fanatics claims (at 17-18) that *Leadsinger* and *Reading International* excuse it from the need to identify any specific contractual relationships underlying its claim. But those cases stand only for the proposition that a plaintiff, at this stage, need not allege that a contract ***definitely*** would have resulted but for the alleged interference, *Reading Int'l*, 317 F. Supp. 2d at 335, and that a plaintiff need not allege specific ***terms*** of the putative relationship, *Leadsinger*, 2006 WL 2320544, at *13. Fanatics still must identify a specific or actual relationship.

*Inc. v. Steelite Int'l USA Inc.*, 2017 WL 6459464, at *10 (E.D.N.Y. Dec. 15, 2017) (collecting cases).

**2.** Fanatics has not plausibly alleged wrongful means. It admits Panini sued it in Texas to prevent misappropriation of its trade secrets and further unlawful solicitation of its employees. Opp. 5. It also admits that the Texas court granted Panini's application for a temporary restraining order against Fanatics. Opp. 15; ¶ 102. Yet Fanatics contends that it has pleaded wrongful means by pointing to its allegations that Panini's litigation threats were meritless and made solely to prevent Fanatics from hiring its employees. Opp. 14. To survive dismissal, though, Fanatics must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—a standard that requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The only reasonable inference that can be drawn from Fanatics' allegations is that Panini acted appropriately to protect its business interests against Fanatics' raiding its employees. *See, e.g.*, *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 602 (S.D.N.Y. 2010) (grant of injunctive relief precludes finding claims objectively baseless).

Fanatics has no answer. Instead, it tries to dismiss the Texas litigation as irrelevant, claiming that its cause of action solely concerns threats to employees who stayed at Panini. Opp. 14-15. But that litigation is central to Fanatics' allegations. Fanatics claims that Panini used threats of further litigation "compounded by its actual suit against certain former employees" to prevent employees leaving for Fanatics. ¶ 105. The Court also should not ignore the Texas litigation because Fanatics consented to the temporary injunction. Fanatics' doing so underscores the strength of Panini's position because rational parties do not consent to preliminary injunctions for no reason. In any event, the Texas court did rule on the merits against Fanatics' anti-SLAPP motion

8

after an evidentiary hearing and substantive briefing. *Panini Am., Inc. v. Matijevich et al.*, No. DC-23-04798 (Tex. Dist. Ct., Dallas Co., Jan. 12, 2024). And Fanatics fails to cite a case where threatened litigation constituted wrongful means in the face of ongoing, successful litigation brought for the same reasons as the alleged litigation threats underpinning a claim for tortious interference.

The other conclusory allegations by Fanatics do not save its claim. *First*, its allegation that Panini's employee agreements do not contain non-competes does not affect the merits of Panini's position. Panini did not sue its former employees for violating noncompete agreements. It sued for misappropriation of trade secrets and unlawful solicitation of employees, ¶¶ 102, 104—both plainly legitimate bases for litigation—and, to date, has been successful.[11]

*Second*, Fanatics' allegation that Panini "has no business need for many of the threatened employees" as its "licenses have expired or are expiring," ¶ 137, also falls short. Fanatics acknowledges that Panini will hold major sports licenses for several more years, ¶¶ 28–29, 78, while "Fanatics Collectibles' key licenses will not kick in until late 2025 or early 2026," ¶ 75. The only plausible inference from these allegations is that Panini has a ***more legitimate*** business need for its employees than Fanatics to carry out Panini's obligations under these key licenses.

*Third*, Fanatics incorrectly argues (at 16) that "Panini leadership telling employees that Fanatics' licenses could be voided" satisfies the wrongful-means element. Even the case Fanatics cites—*Grgurev v. Licul*—shows this "element is satisfied only where the defendant's conduct 'amount[s] to a crime or an independent tort.'" 229 F. Supp. 3d 267, 294 (S.D.N.Y. 2017). Fanatics' allegations do not meet these criteria.

---

[11] While Panini's claims are evident from the complaint, ¶¶ 102, 104, Fanatics also does not dispute that the Court may judicially notice the Texas pleadings. Opp. 5 n.2. The pleadings show the litigation is based on former Panini employees' non-disclosure agreements, which contain trade secret and non-solicitation provisions. *See Panini Am., Inc. v. Matijevich et al.*, No. DC-23-04798 (Tex. Dist. Ct., Dallas Co., Apr. 14, 2023).

**3.** Fanatics' claim is barred by the First Amendment under the *Noerr-Pennington* doctrine. Fanatics agrees (at 18-19) the *Noerr-Pennington* doctrine applies to pre-litigation threats generally but argues it does not apply to Panini's alleged "litigation threats" because they never "materialized" into letters. But whether a "litigation threat"—or any other speech—is captured orally or in writing makes no difference to its protections under the First Amendment. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1555, 1560 (11th Cir. 1992) ("plaintiffs' concerted and repeated threats of litigation" by telephone are protected).

And it is clear on the face of the Amended Complaint that the alleged threats here were "incident to litigation" and thus protected by *Noerr-Pennington*. *See Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 100 (2d Cir. 2000). Particularly where—as here—there is already other litigation ongoing over the same subject matter, ¶ 102, Fanatics cannot credibly claim that the alleged "threats" were not incidental to resorting to further litigation over other employees if necessary. *See, e.g.*, *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) ("litigation-related communications ... are 'a preliminary step to resort to litigation if necessary'").[12] And for the reasons stated above, it also is clear from the face of the Amended Complaint that Panini's alleged "litigation threats" are not meritless and thus the sham exception does not apply.

## CONCLUSION

For the above reasons, Panini requests an order dismissing the entire Amended Complaint with prejudice. If any claims are not dismissed, they should be consolidated with Panini America's first-filed Antitrust Action as compulsory counterclaims. *See* Mem. 23-25.

---

[12] The case cited by Fanatics on this point is readily distinguishable because it involved complaints made to Amazon about counterfeit products, not litigation threats. *CT Espresso LLC v. Lavazza Premium Coffees Corp.*, 2022 WL 17156759, at *4 (S.D.N.Y. Nov. 22, 2022).

Dated:  April 5, 2024

Respectfully submitted,

<u>/s/ David Boies</u>
David Boies
Eric Brenner
**Boies Schiller Flexner LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Jason Hilborn*
**Boies Schiller Flexner LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
jhilborn@bsfllp.com

Ursula Ungaro*
**Boies Schiller Flexner LLP**
100 SE 2nd Street Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
uungaro@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**Boies Schiller Flexner LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini S.p.A.*

\**Pro hac vice*