March 7, 2025

**Via ECF**

The Honorable Valerie Figueredo
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

> Re:  *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023); *Fanatics Collectibles TopCo, Inc. v. Panini S.p.A.*, Case No. 1:23-cv-06895-LTS-VF (S.D.N.Y 2023)

Dear Judge Figueredo:

The parties make this submission to update the Court regarding the status of discovery efforts in advance of the conference on March 10, 2025, in the above-referenced matters. As set forth below, there are three issues that Panini wishes to discuss with the Court on Monday.

### 1. **Fanatics' Responses to Panini's First Requests for Production:**

On January 8, 2025, Panini served written discovery requesting production of four categories of documents that Panini had previously proposed over email. *See* Panini's First Request for Production, attached as Exhibit A. On February 7, 2025, Fanatics served written responses raising numerous objections to Panini's requests, including that the requests were each overbroad, unduly burdensome, vague, and sought information that is neither relevant nor proportional to the needs of these proceedings. *See* Fanatics' Responses, attached as Exhibit B.

#### a. Panini's Position

On October 4, 2024, Panini sent a letter to Fanatics requesting that the Parties exchange a discrete set of documents that are clearly relevant to the litigation and require minimal burden to produce in order to begin moving the cases forward. Panini also confirmed it was prepared to make a reciprocal production. The discovery proposed by Panini included the six license agreements at issue in the case as well as certain other limited materials.

Fanatics resisted making such a production, and Panini raised this issue with the Court at the November 7, 2024, discovery conference. At this conference, Fanatics stated it was "committed to meeting and conferring about other types of discovery that we can . . . talk about and provide in the interim." ECF No. 126 (Nov. 7, 2024 Hr'g Tr.) 35:21-25. In reliance on this assertion, in December, Panini proposed the following four categories of documents for

production, which it believes are clearly relevant and which can be produced by Fanatics without burden:

1. Any contracts with the NBA, NFL, MLB, or their players associations related to trading cards beyond the six license agreements already requested, including but not limited to the Fanatics-NBPA License regarding a "Player's Only," non-exclusive license for "Off Court" products,
2. Fanatics' agreements with OneTeam related to trading cards,
3. Fanatics' agreements with GC Packaging, LLC ("GCP"), and
4. Fanatics' agreements with hobby stores, distributors, big-box retailers, and case breakers related to the selling of trading cards.

In subsequent meet and confer discussions, Fanatics rejected all of Panini's requests, contending that they were premature while Fanatics' motion to dismiss was pending. At the discovery conference on December 12, the Court and Panini were prepared to discuss the merits of the proposed discovery and Fanatics' objections. ECF No. 136 (Dec. 12, 2024 Hr'g Tr.) 12:21-13:12. Fanatics' counsel, however, deflected this discussion by insisting that Fanatics have the opportunity "to put in formal objections to [the] discovery requests and make a record." *Id.* at 13:25-14:2. Panini thereafter went through the process of serving formal requests. Fanatics responded weeks later to each of the four requests by categorically refusing to produce the discovery proposed by Panini without making any effort to identify other discovery that it is willing to produce while its motion to dismiss is pending—a position that is precisely the same as when these issues had first been teed up for the Court months earlier.

Fanatics' Responses to Panini's Requests show that Fanatics has no intention of engaging in a meaningful discussion about discovery that can be provided at this stage. This issue was ripe for discussion back in December, if not earlier. Fanatics' insistence on formal requests has simply delayed the Court's consideration of whether Fanatics should produce discovery before the motion to dismiss ruling. There is no justification to permit Fanatics to further delay based on the empty offers to "meet and confer" included in each of the responses to the Requests. The parties have already discussed these requests, which Fanatics initially received in early December, and Fanatics has made its position clear. It is not going to produce anything while its motion to dismiss is pending unless ordered to do so by the Court.

This Court has endorsed an incremental approach to discovery while the motions to dismiss are pending, and the requested documents are precisely the type of discovery that should be produced under that approach. All of these documents can be readily collected and provided by Fanatics without burden. And, as set forth below, they are plainly relevant to Panini's claims:

- Request No. 1:  As Panini has previously explained, the interlocking, long-term nature of Fanatics' licenses agreements between the NFL, NBA, MLB, and each of their respective players associations is key to the anticompetitive conduct alleged in the Panini's Complaint.  *See* ECF No. 130 at 2-3.  So, too, are Fanatics' other contracts with the NBA, NFL, MLB, and their players associations related to trading cards.  As with the license agreements, these contracts are probative of the means through which Fanatics secured the unprecedented, long-term monopoly of the Major U.S. Professional Sports League trading cards market, which is at the center of Panini's Complaint.

- Request No. 2: Fanatics' agreements with OneTeam related to trading cards are also directly relevant to the anticompetitive conduct alleged in the Complaint because "OneTeam was central to the NFLPA and MLBPA exclusive deals with Fanatics by their own admissions." ECF No. 69 ("Compl.") ¶ 112.  Panini has also alleged that "OneTeam … reveals that the decision of at least the NFL Players Association and MLB Players Association to go with Fanatics was not one made independently."  *Id*. ¶ 113.

- Request No. 3:  Fanatics' agreements with GCP are a key component of the conduct underlying Panini's antitrust claims for attempted monopolization, monopolization, and violation of Section 7 of the Clayton Act, as well as its state law tortious interference claims.  As set forth in the Amended Complaint, "Fanatics acquired through two transactions a controlling stake in GCP, … the critical, high-tech, custom manufacturer of trading cards for Panini and a key input for competition in and for the Relevant Markets."  Compl. ¶ 121.  Fanatics then used its control over GCP to disrupt Panini's production and sale of trading cards, thereby decreasing output for consumers, lessening competition in the relevant market, and inducing GCP to breach the change-of-control provision in its contract with Panini S.p.A.  *See id.* ¶¶ 121-149.

- Request No. 4:  Fanatics' agreements with hobby stores, distributors, big-box retailers, and case breakers related to the selling of trading cards are also an important component of the conduct underlying Panini's attempted monopolization, monopolization, and tortious interference claims.  The Amended Complaint alleges that Fanatics has used its economic power to impose agreements on hobby stores, distributors, retailers, and case breakers that reduce consumer choice and increase prices.  *See* Compl. ¶ 11, 194-206.

Fanatics' purported concerns about the "commercially sensitive" nature of these indisputably relevant documents, ECF No. 135 at 2-3, do not justify its refusal to produce them at

3

this stage.  This Court has already entered a protective order, ECF No. 160, pursuant to which the requested documents may be designated Highly Confidential ("HC").  Since Panini does not have in-house counsel, the HC designation precludes disclosure to anyone employed by Panini, thus affording Fanatics the same level of protection as the Outside Counsel Eye's Only ("OCEO") designation.  Fanatics cannot seriously contend that these confidentiality restrictions will be sufficient to protect its commercially sensitive information later in the case but are somehow insufficient now.

### b. Fanatics' Position

In connection with this current dispute, Panini has flouted this Court's Individual Practices in Civil Cases ("Individual Rules").  Section II.C.1 of Your Honor's Individual Rules states explicitly that "[t]he Court will not hear any discovery dispute unless the moving party (including a non-party seeking relief) has first conferred in good faith with any adverse party to resolve the dispute. An exchange of letters or emails alone does not satisfy this requirement. Counsel must respond promptly and in good faith to any request from another party to confer in accordance with this paragraph." When Fanatics formally objected on February 7 to Panini's most-recent document requests, it specifically stated that for each and every request, it was willing to meet and confer with Panini.  But, Panini never responded to Fanatics' request or otherwise met and conferred with Fanatics on the Responses.  Indeed, the very first time Fanatics learned that there was a dispute between the parties that Panini believed was "ripe" for bringing to the Court was when Fanatics received Panini's draft of this letter.  Panini's failure to comply with Your Honor's Rules means that its current request to argue this dispute at the upcoming conference is premature.

Nonetheless, Fanatics does believe it is necessary to correct the record and address the misstatements and misimpressions contained in Panini's position above.  At the Court's direction, throughout this matter Fanatics consistently has engaged with Panini on efforts to move this case forward in the event these cases are not resolved by the pending motions to dismiss.  Fanatics has made numerous productions of organizational charts, proposed custodians for document production, participated in a Rule 26(f) conference, agreed on a timetable for serving Rule 26 disclosures, and negotiated a protective order and ESI Protocol, both of which have now been entered.  Fanatics has met and conferred with Panini numerous times on discovery issues to narrow disputes, and also given notice to affected third parties that it might be required to turn over confidential license agreements.  As a result, in the event the pending motions are denied, the parties are well-positioned to move forward expeditiously with discovery.  That is more than happens in the vast majority of antitrust cases while motions to dismiss are pending—especially when the motions implicate threshold issues like Article 3 and antitrust standing.

Panini, for its part, consistently has sought to take unfair advantage of this Court's incremental approach to discovery in order to obtain Fanatics' most highly-sensitive commercial

4

documents. Panini has repeatedly failed to articulate any reason why it should be entitled to those materials now, or how it would be prejudiced in any way if this Court did what most courts in antitrust cases tend to do, which is defer substantive discovery until after Rule 12 motions are decided. Panini has also bristled at the notion that it should be required to comply with standard discovery procedures. Specifically, Panini takes issue with the fact that Fanatics demanded that Panini serve it with formal discovery requests and, *in contravention of required practice in this (and virtually every court in the country) moved to compel without even seeking to meet and confer*. Panini's strategy is transparent. It is seeking Fanatics' most commercially-sensitive materials because it does not want to compete with Fanatics fairly, and is desperate to have this Court order production of those materials quickly before a decision by Judge Swain negates Panini's ability to use federal litigation for such improper purposes.

Currently pending before Judge Swain are both the motions to dismiss, as well as Fanatics' Objection to Your Honor's December 12, 2024 Nondispositive Order ("Fanatics' Objection"). Judge Swain's rulings on those filings will, in large part, determine whether, to what extent, and when Fanatics will have to turn over the materials Panini is now demanding. Accordingly, Fanatics respectfully submits it is inefficient and unproductive for the parties to be arguing these issues before Your Honor at this time. Fanatics will repeat what it has said on many occasions to Panini and this Court: Fanatics is willing to consider reasonable requests for production of materials that do not seek highly-sensitive commercial materials, production of which could harm Fanatics, its commercial partners and the competitive process. The fact that Panini has never bothered to request and such materials, or articulated any reason why it needs to have immediately the sensitive materials it has demanded is telling that these discovery requests, and the current dispute, have nothing to do with advancing litigation, but only with Panini's strategy of using litigation to advance its commercial interests.

To the extent this Court is not inclined to deny Panini's current requests or defer consideration until after the pending motions are decided, Fanatics respectfully requests that Panini be required to comply with its meet and confer obligations under Section II.C.1 of Your Honor's Individual Rules, and explain in that session why it believes it needs production of its requested materials at this early juncture, and the harm it would suffer if production is not ordered at this time. After that, Fanatics requests that the Court order a briefing schedule so that there can be a full record upon which this Court and, if needed Judge Swain, can rule.

**2.** **Rule 26(f) Report and Schedule:** The parties participated in a Rule 26(f) conference on January 15, 2025. During the conference, Panini suggested that the parties agree to exchange initial disclosures and work together on an agreed schedule and Rule 502(d) order. To accommodate Fanatics' position that formal discovery should not begin until the motions to dismiss are decided, Panini offered to propose a schedule in time periods running from a decision on the motion to dismiss (*i.e.*, fact discovery to end 12 months after a decision on the motion to

5

dismiss). The parties subsequently agreed to exchange initial disclosures on March 13, 2025. On February 25, Panini sent Fanatics a proposed 502(d) order and a draft Rule 26(f) report with a proposed schedule for Case No. 1:23-cv-09714, in which Panini America is the plaintiff, with dates tied to the ruling on the motion to dismiss in that case. Panini is currently awaiting Fanatics' comments on the proposed schedule and Rule 502(d) order.

### a. Panini's position

Panini believes that a scheduling order should be entered now so that formal discovery can begin without delay no later than when the Court rules on the parties' motions to dismiss. Accordingly, Panini requests that the Court direct the parties to submit the 26(f) report with an agreed proposed schedule to the Court by March 17. The time intervals in the schedule that Panini proposed to Fanatics are generally consistent with the schedule that the parties agreed to before this case was transferred from the Middle District of Florida to the Southern District of New York. While the current version of the proposed schedule is tied to the ruling on Fanatics' motion to dismiss, Panini is also prepared to have a schedule entered with permanent dates and to continue measured discovery under the proposed deadlines before a ruling on the motion to dismiss.

### b. Fanatics' position

Once again, Panini believes it need not comply with this Court's Individual Rules. In essence, it is seeking to argue for the adoption of its proposed schedule before the parties have engaged in discussions on that schedule. That is improper and should not be countenanced. While Fanatics does believe that entering a full discovery and trial schedule at this time is imprudent given that the scope of the case moving forward is undetermined, Fanatics is nonetheless willing to negotiate such a schedule if that is the Court's instruction. However, placing an artificial deadline of one week from now to finalize that schedule is unnecessary and unproductive, and will only lead to a schedule that will likely need to be revised at a later date. Fanatics respectfully requests that the Court direct the parties to submit a 26(f) report with an agreed (if possible) proposed schedule by two weeks after the Court issues a ruling on the pending motions to dismiss or by April 16, 2025—whichever is sooner.

**3.** <u>Document Preservation Subpoenas</u>: In the parties' January 31, 2025 submission, Panini requested the Court's permission to issue subpoenas conservo to eleven third parties to ensure preservation of documents relevant to these matters. ECF No. 154 at 2-3. Fanatics took no position on Panini's request. Panini asks that the Court grant this request. It is prepared to discuss the proposed subpoenas at the March 10 conference if needed.

Respectfully submitted,

| | |
|---|---|
| */s/* David Boies | */s/* Lawrence E. Buterman |
| David Boies | Lawrence E. Buterman |
| | |
| *Counsel for Panini* | *Counsel for Fanatics* |