**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FANATICS COLLECTIBLES TOPCO, INC.,

Plaintiff,

v.

PANINI S.P.A.,

Defendant.

---

Case No. 1:23-cv-06895-LTS-VF
[Related to Case No. 1:23-cv-09714-LTS-VF]

**ORAL ARGUMENT REQUESTED**

<br>

**MEMORANDUM OF LAW IN SUPPORT OF**
**FANATICS' MOTION FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARD............................................................................................................4

ARGUMENT .......................................................................................................................5

I.    THE PROPOSED AMENDMENTS HAVE MERIT.............................................5

    A.    The SAC Plausibly Alleges An Additional Tortious Interference With
        Prospective Business Relations Claim (Count 2) .......................................5

    B.    The SAC Plausibly Alleges Tortious Interference With Contract (Count 3) ..........7

II.    NO OTHER FACTORS SUPPORT DENIAL OF LEAVE TO AMEND.........................8

    A.    Fanatics' Amendment Will Not Unduly Prejudice Panini.......................................9

    B.    There Was No Undue Delay ..................................................................................11

    C.    Fanatics Has Not Acted In Bad Faith Or With Any Dilatory Motive ...................12

CONCLUSION....................................................................................................................13

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
  87 F. Supp. 2d 281 (S.D.N.Y. 2000)..................................................................................9

*Amaranth LLC v. J.P. Morgan Chase & Co.*,
  71 A.D.3d 40 (1st Dep't 2009) ........................................................................................5

*APP Grp. (Can.) Inc. v. Rudsak USA Inc.*,
  2024 WL 89120 (2d Cir. Jan. 9, 2024) ............................................................................4

*Arkwright Mut. Ins. Co. v. Natl. Union Fire Ins. Co. of Pittsburgh*,
  1995 WL 3006 (S.D.N.Y. Jan. 4, 1995) .........................................................................11

*Artists Rts. Enf't Corp. v. Est. of Robinson*,
  2018 WL 1617890 (S.D.N.Y. Mar. 29, 2018) ..................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................4

*In re Best Payphones, Inc.*,
  450 F. App'x 8 (2d Cir. 2011) ..........................................................................................7

*Blagman v. Apple, Inc.*,
  2014 WL 2106489 (S.D.N.Y. May 19, 2014) ................................................................12

*Bridgeport Music Inc. v. UMG Recordings, Inc.*,
  2008 WL 113672 (S.D.N.Y. Jan. 10, 2008) ...................................................................10

*Cesari S.r.L. v. Peju Province Winery L.P.*,
  2020 WL 1126833 (S.D.N.Y. Feb. 24, 2020)....................................................................4

*Circle Line Sightseeing Yachts, Inc. v. Circle Line-Statute of Liberty Ferry, Inc.*,
  2003 WL 253094 (S.D.N.Y. Feb. 4, 2003)........................................................................8

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings plc*,
  2022 WL 4377898 (S.D.N.Y. Sept. 22, 2022)................................................................12

*Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*,
  2020 WL 5089444 (S.D.N.Y. Aug. 28, 2020)...................................................................9

*Davis v. Sedgwick Claims Mgmt. Servs. Inc.*,
  2023 WL 6150009 (S.D.N.Y. Aug. 30, 2023)................................................................12

*Doe v. Olive Leaves, Inc.*,
　2022 WL 22833628 (E.D.N.Y. Apr. 1, 2022) ...........................................................................11

*Dominguez v. Walsh*,
　2023 WL 6199861 (S.D.N.Y. Sept. 22, 2023)..........................................................................12

*Duling v. Gristede's Operating Corp.*,
　265 F.R.D. 91 (S.D.N.Y. 2010) ...............................................................................................11

*Exch. Listing, LLC v. Inspira Techs., Ltd.*,
　661 F. Supp. 3d 134 (S.D.N.Y. 2023).......................................................................................8

*Fezzani v. Bear, Stearns & Co., Inc.*,
　2022 WL 782751 (S.D.N.Y. Mar. 15, 2022), *aff'd,* 2023 WL 2612454
　(S.D.N.Y. Mar. 23, 2023) .......................................................................................................13

*Foman v. Davis*,
　371 U.S. 178 (1962)...................................................................................................................9

*Gallegos v. Brandeis Sch.*,
　189 F.R.D. 256 (E.D.N.Y. 1999)...............................................................................................8

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
　248 F. Supp. 3d 487 (S.D.N.Y. 2017)....................................................................................5, 6

*Hanlin v. Mitchelson*,
　794 F.2d 834 (2d Cir. 1986).....................................................................................................10

*Hannex Corp. v. GMI, Inc.*,
　140 F.3d 194 (2d Cir. 1998).......................................................................................................6

*IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*,
　92 N.Y.2d 989 (1998) ................................................................................................................8

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
　818 F.3d 85 (2d Cir. 2016).........................................................................................................4

*Ivy Mar Co. v. C.R. Seasons Ltd.*,
　1998 WL 704112 (E.D.N.Y. Oct. 7, 1998).................................................................................6

*Kirch v. Liberty Media Corp.*,
　449 F.3d 388 (2d Cir. 2006).......................................................................................................7

*Lama Holding Co. v. Smith Barney Inc.*,
　88 N.Y.2d 413 (1996) ................................................................................................................7

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
　797 F.3d 160 (2d Cir. 2015)........................................................................................................4

iii

*Marino Indus. Corp. v. Kahn Lumber Co.*,
    61 A.D.2d 978 (2d Dep't 1978) ...............................................................................6

*Mazuma Holding Corp. v. Bethke*,
    1 F. Supp. 3d 6 (E.D.N.Y. 2014) ...........................................................................10

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017)..........................................................................9, 10, 11

*Ramirez v. County of Nassau*,
    345 F.R.D. 397 (E.D.N.Y. 2024) .............................................................................8

*Randolph Found. v. Duncan*,
    2002 WL 32862 (S.D.N.Y. Jan. 11, 2002) .............................................................12

*Red Black Tree, D.O.O. v. Hotel Credits, Inc.*,
    2023 WL 8039360 (S.D.N.Y. Nov. 20, 2023) .......................................................4, 9

*Ricciuti v. N.Y.C. Transit Auth.*,
    941 F.2d 119 (2d Cir. 1991)......................................................................................4

*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987)....................................................................................11

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008)......................................................................................9

*Sacerdote v. N.Y. Univ.*,
    9 F.4th 95 (2d Cir. 2021) ......................................................................................4, 8

*Schvimmer v. Off. of Ct. Admin.*,
    857 F. App'x 668 (2d Cir. 2021) .............................................................................11

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
    246 F.R.D. 143 (E.D.N.Y. 2007) ............................................................................10

*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981)....................................................................................11

## Statutes / Rules

Federal Rule of Civil Procedure 15(a)(2) ...............................................................1, 3, 4, 9

## Other Authorities

*Bad Faith*, Black's Law Dictionary (11th ed. 2019) ....................................................12

Restatement (Second) of Torts § 766B cmt. c (1979) ...................................................6

iv

Pursuant to the Court's March 10, 2025 order (ECF No. 107) ("Order") and Federal Rule of Civil Procedure 15(a)(2), Plaintiff Fanatics Collectibles Topco, Inc. ("Fanatics") respectfully submits this memorandum of law in support of its motion for leave to file its Second Amended Complaint ("SAC") attached hereto.  *See* Exhibit 1.[1]

## INTRODUCTION

Courts should "freely give" leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), and Fanatics' proposed SAC easily meets Rule 15's lenient standard.  As a threshold matter, Fanatics' claims have merit.  Fanatics' amended allegations plausibly allege that Defendant Panini, S.p.A. ("Panini") tortiously interfered with Fanatics' business opportunities with NFL prospects, NBA prospects, and the NBA Players Association.  While these claims offer distinct bases for relief, each is predicated on Panini's bad faith business practices and, for the most part, the same core facts described in Fanatics' prior pleadings.  That misconduct, along with Panini's history of consumer dissatisfaction, non-investment, and siphoning cash to its overseas owners, stands in stark contrast to Fanatics' revitalization of the collectibles industry that has benefitted not only athletes and leagues, but hobby shops and individual collectors.  Indeed, unlike Panini, Fanatics' mission is to serve collectors and constantly improve their experience, including by selling directly to consumers and hobby shops and partnering with hobby shop owners, card breakers, and athletes to create unique marketing events and experiences for collectors.  Fanatics' amended claims at bottom are far from futile, and on this basis alone justice requires that leave to amend be freely given here.

---

[1] A redline showing the SAC's changes to Fanatics' operative complaint (ECF No. 39) is attached as Exhibit 2.

Panini cannot meet its burden to establish otherwise or that it will suffer any prejudice if amendment is permitted. This motion is timely and made in good faith because it follows the Court's Order granting in part Panini's motion to dismiss that expressly permitted Fanatics to move for leave to amend. *See* Order at 21. And as the Court acknowledged, "[t]here is a particularly strong preference for allowing amendment when 'the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading.'" *Id*. (citation omitted). Discovery furthermore is in its infancy, the SAC's allegations do not materially expand the issues at play, and there will be no delay particularly because this case and the related antitrust action filed by Panini America, Inc. are set to proceed on the same coordinated discovery track.

Fanatics' motion should be granted.

## BACKGROUND

Fanatics filed this action on August 7, 2023 (ECF No. 1) and amended its complaint as of right on January 26, 2024 (ECF No. 39, "AC"), asserting claims for unfair competition, breach of the duty to negotiate in good faith, and tortious interference with business relations.

Fanatics alleged that, starting in 2021, multiple leagues and players' associations independently decided to license their intellectual property to Fanatics instead of to Panini—the stagnant and long-time incumbent in the collectibles space. AC ¶¶ 52–58. Given, however, that those license terms had not yet ended and Panini continued to hold the existing rights to certain of those licenses, Fanatics and Panini entered negotiations for a potential early termination deal (in what Fanatics alleged culminated in a preliminary agreement obligating the parties to negotiate in good faith). *Id*. ¶¶ 77–83. What Fanatics did not know, however, was that Panini never intended to negotiate in good faith and engaged in sham tactics that caused Fanatics to lose valuable player association and athlete prospects deals. *Id*. ¶¶ 84–92. At the same time, Fanatics needed employees to build its growing collectibles business and prepare for incoming licenses, while

Panini stagnated and employee morale there plummeted. *See id*. ¶¶ 93–106. As a result, a number of employees departed Panini to join Fanatics. *Id*. ¶ 96. Panini in response engaged in an intimidation campaign and levied threats of baseless litigation to scare and prevent its current and former employees from joining Fanatics and securing for themselves long-term and rewarding careers. *Id*. ¶ 97.

On March 10, 2025, the Court granted in part and denied in part Panini's motion to dismiss the AC, dismissing Count I for unfair competition and Count III alleging Panini breached its duty to negotiate in good faith. ECF No. 107. The Court, however, declined to dismiss Count II (tortious interference with prospective business relations), finding that Fanatics "identified the targeted group of individuals with whom Fanatics had the opportunity and sought to form business relationships (the remaining Panini employees), an allegedly wrongful act committed by Panini targeting that group (the threats of litigation), and a resulting change in Fanatics' ability to recruit those employees, as evidenced by the 'stark drop-off' in new hires." *Id*. at 18 (citation omitted).

Although the Court dismissed Counts I and III based on the AC allegations, it acknowledged that "Rule 15(a) provides that a court 'should freely give leave [to amend] when justice so requires" and permitted Fanatics to file a motion for leave to amend. *Id*. at 21 (alteration in original) (quoting Fed. R. Civ. P. 15(a)(2)). "There is a particularly strong preference," the Court wrote, "for allowing amendment when 'the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading.'" *Id*. (citation omitted).

Fanatics accordingly moves for leave to file its SAC to assert additional tortious interference claims, in addition to the tortious interference claim that survived dismissal, all predicated on many of the same underlying facts.

**LEGAL STANDARD**

Leave to amend is "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (cleaned up); *see also, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (applying the "permissive standard of Rule 15" (quotation marks omitted)). Amendment is proper when "the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Consistent with "Rule 15(a)(2)'s liberal standard" and the "strong preference for resolving disputes on the merits," *APP Grp. (Can.) Inc. v. Rudsak USA Inc.*, 2024 WL 89120, at *4 (2d Cir. Jan. 9, 2024) (citation omitted), "it is rare that such leave should be denied," *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Particularly so in the wake of a motion to dismiss, because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190; *see also* Order at 21 (same).

"The party opposing the motion to amend bears the burden of demonstrating the existence of circumstances justifying its denial." *Cesari S.r.L. v. Peju Province Winery L.P.*, 2020 WL 1126833, at *2 (S.D.N.Y. Feb. 24, 2020); *see also, e.g.*, *Red Black Tree, D.O.O. v. Hotel Credits, Inc.*, 2023 WL 8039360, at *3 (S.D.N.Y. Nov. 20, 2023) ("Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." (citation omitted)).

**ARGUMENT**

### I.    THE PROPOSED AMENDMENTS HAVE MERIT

Fanatics' SAC preserves the tortious interference claim that previously survived dismissal, and sets forth two additional claims predicated on many of the same facts underlying Fanatics' operative complaint.  Because these proposed claims have merit, justice requires that leave to amend be granted.

> **A.    The SAC Plausibly Alleges An Additional Tortious Interference With Prospective Business Relations Claim (Count 2)**

Panini's bad-faith conduct during the parties' early termination negotiations supports a tortious interference claim here.  *See* Order at 7 (acknowledging that "Panini's alleged bad faith tactics" may "perhaps [be] potentially actionable under other theories" beyond unfair competition).

"To establish a <u>prima</u> <u>facie</u> claim for tortious interference with prospective business relations, Fanatics must allege facts supporting a plausible inference that: (1) it had a business opportunity, (2) Panini knew about the opportunity, (3) Panini intentionally interfered with that opportunity using 'dishonest, unfair, or improper means,' and (4) Fanatics lost the opportunity due to that interference."  Order at 14 (original emphasis); *see also, e.g.*, *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47 (1st Dep't 2009) (describing elements); *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017).

Fanatics meets all these elements.  "Specifically, prior to and during the negotiations with Panini, Fanatics Collectibles had agreed to a present-day licensing arrangement with the NBPA, and was pursuing specific exclusive licenses with NBA and NFL prospects that included autograph rights alongside the prospects' [name, image, and likeness] for trading cards."  SAC ¶ 129.  "Once the parties reached a preliminary agreement to an early termination of certain of Panini's licenses," Fanatics "paused pursuing these other deals because it reasonably believed it would no longer need

5

to acquire the licenses that it was exploring, as it would obtain substantively similar licenses through the early termination." *Id*. ¶ 130.  Panini, meanwhile, relying on the fact that Fanatics would halt its relationship-building efforts with rookies during the parties' negotiations, "swooped in to sign the top three 2022 NFL and NBA draft picks"—athletes that offer some of "the most valuable cards for collectors." *Id*.

Fanatics in all likelihood would have signed these prospects—and earned significant revenue—absent Panini's misconduct.  *See id*. ¶ 131.  Panini's false promises, use of inflated financial projections, and purposeful delay during negotiations further demonstrate that it was not motivated by legitimate economic interest, but intended to harm Fanatics by thwarting its ability to obtain key license agreements.  *See id.* ¶¶ 115–34; *Glob. Packaging Servs.*, 248 F. Supp. 3d at 496 (conduct undertaken "for the sole purpose of inflicting intentional harm on plaintiffs" supports tortious interference claim).  These allegations support a tortious interference claim here.  *See, e.g.*, *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998) ("[I]t is not necessary for Hannex to prove that it would have been a party to any future contract with S & S Japan.  Rather, it is well-settled that a plaintiff can recover if that plaintiff can prove that the defendant tortiously interfered with 'a continuing business or other customary relationship not amounting to a formal contract.'" (quoting Restatement (Second) of Torts § 766B cmt. c (1979))).[2]

---

[2]    *See also, e.g.*, *Ivy Mar Co. v. C.R. Seasons Ltd.*, 1998 WL 704112, at *16 (E.D.N.Y. Oct. 7, 1998) ("[T]he tort encompasses interference with the opportunity of selling or buying chattels or services, and any other relations leading to potentially profitable contracts." (cleaned up)); *Marino Indus. Corp. v. Kahn Lumber Co.*, 61 A.D.2d 978, 978 (2d Dep't 1978) (where defendant disclosed information about a construction project bid to plaintiff "in reliance upon the latter's knowing misrepresentation that a particular third party was no longer bidding for a contract on that facility," but plaintiff then disclosed the bid to the third party that obtained the contract, "[s]uch allegations spell out tortious conduct").

B.    **The SAC Plausibly Alleges Tortious Interference With Contract (Count 3)**

Fanatics' SAC also plausibly alleges that Panini interfered with Fanatics' contractual relationships with NFL draft prospects. A tortious interference with contract claim requires: 1) the existence of a valid contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional and unjustified procurement of the third-party's breach of the contract; 4) breach of the contract at issue; and 5) damages. *See, e.g.*, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006); *see also Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996) (describing elements).

Beginning with the first two elements, in early 2023 Fanatics "negotiated and signed exclusive license agreements with several top NFL draft prospects," SAC ¶ 137, and similarly in fall 2023 "negotiated and signed individual licensing deals, which similarly included autograph and personal services rights, with numerous top 2024 NFL draft prospects," *id*. ¶ 139. "Panini knew of Fanatics' relationships and exclusive licensing deals with these" athletes. *Id*. ¶ 209. Regarding the third, fourth, and fifth elements, Fanatics learned that Panini brazenly attempted to induce those NFL athletes to breach their exclusive deals with Fanatics and instead sign with Panini. *Id.* ¶¶ 135–43. Panini went so far as to offer draft athletes assistance to get them out of their binding contracts, and to increase the compensation Fanatics offered, in exchange for the breach. *Id.* ¶ 140. And Panini's scheme worked: following Panini's outreach, certain athletes sought increased compensation from Fanatics and Fanatics paid additional amounts to retain its contract rights. *See id.* ¶¶ 141–43; *see, e.g.*, *In re Best Payphones, Inc.*, 450 F. App'x 8, 11 (2d Cir. 2011) ("[R]epudiation occurs when a 'party has attempted to avoid its obligations by advancing an "untenable" interpretation of the contract, or has communicated its intent to perform

7

only upon the satisfaction of extra-contractual conditions.'" (citation omitted)).[3]  Panini's bad-faith conduct supports a tortious interference with contract claim.  *See, e.g.*, *Artists Rts. Enf't Corp. v. Est. of Robinson*, 2018 WL 1617890, at *6 n.9 (S.D.N.Y. Mar. 29, 2018) ("[T]he Court sees no reason why an anticipatory repudiation claim cannot form the basis of a tortious interference claim.").

*    *    *

Because Fanatics' claims plausibly set forth a basis for relief, they by definition are not futile.  *See, e.g.*, *Circle Line Sightseeing Yachts, Inc. v. Circle Line-Statute of Liberty Ferry, Inc.*, 2003 WL 253094, at *1 (S.D.N.Y. Feb. 4, 2003) (proposed claim futile only where it is "clearly frivolous or legally insufficient on its face" (quotation marks omitted)); *Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999) ("If the proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny the amendment.").  Justice accordingly requires that Fanatics' motion be granted.  *See, e.g.*, *Ramirez v. County of Nassau*, 345 F.R.D. 397, 403 (E.D.N.Y. 2024) ("If the movant has at least colorable grounds for relief, justice requires that the court grant leave to amend a complaint." (cleaned up)).

## II.    NO OTHER FACTORS SUPPORT DENIAL OF LEAVE TO AMEND

Fanatics' amendment not only is far from futile, it would cause Panini no undue prejudice, there has been no undue delay, and Fanatics has not acted with any bad faith or dilatory motive.  *See Sacerdote*, 9 F.4th at 115 ("the only grounds on which denial of leave to amend has long been

---

[3]  *See, e.g.*, *IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*, 92 N.Y.2d 989, 993 (1998) ("[I]nsistence on an untenable interpretation of a key contractual provision, and refusal to perform otherwise, constituted an anticipatory breach of the contract."); *Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 146 (S.D.N.Y. 2023) ("Case law recognizes that demanding an extracontractual term as a not-previously-agreed-upon condition precedent to performing under a contract may constitute an anticipatory repudiation[.]").

8

held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility" (cleaned up)).  Panini cannot meet its burden to establish otherwise.  *See, e.g.*, *Red Black Tree, D.O.O.*, 2023 WL 8039360, at *3 ("Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." (citation omitted)).

### A.      Fanatics' Amendment Will Not Unduly Prejudice Panini

Fanatics' proposed amendment will cause no undue prejudice to Panini.  Undue prejudice may arise if the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "(ii) significantly delay the resolution of the dispute."  *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation omitted).  However, "complaints of the time, effort and money expended in litigating the matter, without more," do not "constitute prejudice sufficient to warrant denial of leave to amend."  *Id*. (cleaned up).  Indeed, "prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is '*undue* prejudice to the opposing party.'"  *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (original emphasis) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also, e.g.*, *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, 2020 WL 5089444, at *3 (S.D.N.Y. Aug. 28, 2020) (same).  "Undue prejudice," in turn, "arises when an amendment comes on the eve of trial and would result in new problems of proof."  *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (cleaned up).

None of these circumstances is present here.  Fanatics' amendment will not cause Panini to expend significant additional resources to conduct discovery and prepare for trial, nor will it significantly delay resolution of this case.  For starters, Fanatics' SAC does not dramatically expand the allegations in its operative complaint.  The tortious interference claims are all predicated on Panini's refusal to negotiate with Fanatics in good faith and its efforts to interfere

9

with Fanatics' commercial relationships—the same allegations at issue in Fanatics' operative complaint, which therefore will require much of the same discovery. *See, e.g.*, *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) (reversing denial of leave to amend where amendments were "merely variations on the original theme . . . arising from the same set of operative facts as the original complaint"); *Bridgeport Music Inc. v. UMG Recordings, Inc*., 2008 WL 113672, at *5 (S.D.N.Y. Jan. 10, 2008) (stating courts "consistently grant[] motions to amend where, as here, it appears that new facts and allegations were . . . foreshadowed in earlier pleadings" (quotation marks omitted)); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (granting leave to amend where "all claims at issue share a common theme").

This case furthermore is in its early stages. *See, e.g.*, *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 19 (E.D.N.Y. 2014) (granting leave to amend where "[t]he parties have not yet conducted a Rule 26(f) conference; no scheduling order has been entered in this case; and no discovery has yet occurred"). Moreover, this action along with the parallel antitrust action filed by Panini America against Fanatics' affiliates have been designated as related and are subject to coordinated discovery. *See* Order at 20. The antitrust action involves many of the same facts and allegations at issue here, including Panini's anticompetitive negotiation and litigation tactics and efforts to undermine Fanatics' licensing arrangements. There accordingly are no problems of proof that will arise from this early amendment because the parties are free to explore any claims and defenses related to the SAC as discovery unfolds. *See, e.g.*, *Pasternack*, 863 F.3d at 174 (reversing denial of leave to amend where "essentially no discovery has been undertaken in this case; [the] proposed amended complaint would be the first complaint to be considered after the district court decided a motion to dismiss; and it does not appear that there is any allegation of

10

untimeliness based on a scheduling order"); *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing denial of leave to amend where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery").

Panini's inability to show any prejudice—let alone undue prejudice—weighs in favor of granting leave to amend.

### B.      There Was No Undue Delay

Fanatics has not unduly delayed in seeking leave to amend. This motion, rather, follows the Court's Order that expressly permitted Fanatics leave to amend given the "particularly strong preference for allowing amendment when 'the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading.'" Order at 21 (citation omitted). The mere passage of time between the filing of this case and the present furthermore is not a basis to deny leave: "delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice." *Pasternack*, 863 F.3d at 174. In any case, Fanatics seeks leave to amend less than two years since it initiated this action, *see* ECF No. 1—a timeline far shorter than what courts in this Circuit have regularly permitted—and less than two months after the Court's motion to dismiss decision. *See, e.g.*, *Schvimmer v. Off. of Ct. Admin.*, 857 F. App'x 668, 673 (2d Cir. 2021) ("We have not set out a specific definition for undue delay, but most delays warranting denial of

11

leave to amend are several years in length and are discussed in conjunction with prejudice or bad faith.").[4]  There was no undue delay here, and this too favors the amendment.

### C.     Fanatics Has Not Acted In Bad Faith Or With Any Dilatory Motive

Finally, Fanatics has not acted in bad faith or with any dilatory motive.  "Regarding bad faith, 'when the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow amendment.'"  *Dominguez v. Walsh*, 2023 WL 6199861, at *3 (S.D.N.Y. Sept. 22, 2023) (citation omitted); *see also, e.g.*, *Blagman v. Apple, Inc.*, 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) ("To the extent that the defendants claim that [the plaintiff's] delay was strategic, they provide no showing of bad faith apart from the delay itself." (citation omitted)).  Bad faith instead "exists where counsel conveyed a misleading impression that claims were fixed," but, in reality, intended to shift its case theory.  *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings plc*, 2022 WL 4377898, at *2 (S.D.N.Y. Sept. 22, 2022) (cleaned up); *see also, e.g.*, *Davis v. Sedgwick Claims Mgmt. Servs. Inc.*, 2023 WL 6150009, at *19 (S.D.N.Y. Aug. 30, 2023) ("Bad faith" is "defined as '[d]ishonesty of belief, purpose, or motive'" (original alteration) (quoting *Bad Faith*, Black's Law Dictionary (11th ed. 2019)), *R. & R. adopted*, 2023 WL 6141170 (S.D.N.Y. Sept. 20, 2023).  "[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."  *Randolph Found. v. Duncan*, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002).

---

[4] *See, e.g.*, *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where leave to amend granted after delays ranging from two to five years); *Doe v. Olive Leaves, Inc.*, 2022 WL 22833628, at *4 (E.D.N.Y. Apr. 1, 2022) (granting leave "more than three years after the initiation of this action"); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010) (granting leave after two and a half years); *Arkwright Mut. Ins. Co. v. Natl. Union Fire Ins. Co. of Pittsburgh*, 1995 WL 3006, at *1 (S.D.N.Y. Jan. 4, 1995) (granting leave after five years).

Fanatics has not acted in bad faith, or with any dilatory motive. This is the first time Fanatics seeks leave to amend and makes this motion with the benefit of the Court's Order. *See* Order at 7 (acknowledging "Panini's alleged bad faith tactics" may "perhaps [be] potentially actionable under other theories" beyond unfair competition).[5] Thus, because Fanatics' amendment is not "'clearly a dilatory tactic'" and Fanatics has not "moved to amend . . . in order to 'annoy, harass, and delay,'" leave to amend should be granted. *Fezzani v. Bear, Stearns & Co., Inc.*, 2022 WL 782751, at *2 (S.D.N.Y. Mar. 15, 2022) (citation omitted) ("denying Defendants' motions to amend on the ground of bad faith is unwarranted"), *aff'd,* 2023 WL 2612454 (S.D.N.Y. Mar. 23, 2023).

## CONCLUSION

For the foregoing reasons, Fanatics respectfully requests that the Court grant this motion and accept the proposed Second Amended Complaint for filing.

---

[5]  While this Court previously granted Fanatics' request for an extension to amend its original Complaint (ECF No. 37), the extension was for Fanatics' time to amend its Complaint as a matter of right.

Dated:  April 30, 2025

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN LLP

*/s/ Michael B. Carlinsky*
Michael B. Carlinsky
Kathryn D. Bonacorsi
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
kathrynbonacorsi@quinnemanuel.com
(212) 849-7000

Derek L. Shaffer
1300 I Street NW, 9th Floor
Washington, DC 20005
derekshaffer@quinnemanuel.com
(202) 538-8000

*Attorneys for Plaintiff Fanatics Collectibles*

14

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum of law complies with Rule (A)(2)(h) of the Court's Individual Practices because it contains 4,070 words, excluding the caption, table of contents, table of authorities, and signature block. In making this certification, I have relied on the word count of the word processing system used to prepare this affirmation.

DATED:    April 30, 2025

/s/ Michael B. Carlinsky
Michael B. Carlinsky