```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    FANATICS COLLECTIBLES TOPCO,
      INC.,
 4
                      Plaintiff,              New York, N.Y.
 5
                 v.                           23 Civ. 6895 (LTS)(VF)
 6
      PANINI S.P.A.,
 7
                      Defendant.
 8
      ------------------------------x
 9
      PANINI AMERICA, INC.,
10
                      Plaintiff,
11
                 v.                           23 Civ. 9714 (LTS)(VF)
12
      FANATICS, INC., et al.,
13
                      Defendants.
14
      ------------------------------x        Remote Conference
15
                                             May 1, 2025
16

17

18    Before:

19                    HON. VALERIE FIGUEREDO,

20                                           U.S. Magistrate Judge

21

22

23

24

25
```

1                          APPEARANCES

2


3    LATHAM & WATKINS, LLP
          Attorneys for Fanatics
4    BY:  LAWRENCE E. BUTERMAN
          AMANDA P. REEVES
5


6    QUINN EMANUEL URQUHART & SULLIVAN, LLP
          Attorneys for Fanatics
7    BY:  KATHRYN DELVEAUX BONACORSI

8


9    BOIES, SCHILLER & FLEXNER, LLP
          Attorneys for Panini
     BY:  DAVID BOIES
10        STUART H. SINGER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE DEPUTY CLERK:  Good morning.  This is the matter

2     of Fanatics Collectibles Topco, Inc. v. Panini, Case No. 23

3     Civ. 6895; and Panini America, Inc. v. Fanatics, Inc., *et.*

4     *Al.*, Case No. 23 Civ. 9714.

5          The Honorable Valerie Figueredo presiding.

6          Counsels that will be speaking, please make your

7     appearances for the record, starting with counsels for

8     Fanatics.

9          MR. BUTERMAN:  Good morning.  This is Lawrence

10    Buterman, from Latham & Watkins, on behalf of the Fanatics

11    entities.  I will be doing the speaking primarily but,

12    depending on the issue, my partner, Amanda Reeves, from

13    Latham & Watkins may also address your Honor, as well as

14    Kathryn Bonacorsi, from Quinn Emanuel.

15         THE DEPUTY CLERK:  And For defendants, Panini?

16         MR. BOIES:  Good morning, your Honor.  This is David

17    Boies of Boies Schiller.  I will be speaking and Stuart Singer

18    will also be speaking, my partner from Boies Schiller.

19         THE COURT:  Good morning, everyone.  This is

20    Judge Figueredo.  Can everyone hear me okay?

21         MR. BOIES:  Yes, we can.

22         MR. BUTERMAN:  Your Honor, it is a little faint, but

23    I think we can hear you.

24         THE COURT:  I will try to speak up.  If at any point

25    you can't hear me, just chime in, but I will try to speak

1    louder.

2             So I have the letters that came in.  ECF 169 was the

3    letter from plaintiff Panini dated April 2.  It concerns the

4    production of the six license agreements we have been talking

5    about.  And then there was a response by Fanatics, at ECF 170,

6    on April 7th.  And then I have a response from Panini at

7    ECF 171 dated April 10.

8             I wanted to -- there was a few -- I am happy to hear

9    from anyone, but I had a few questions.  I figured I would

10   just start there, and then we can discuss whatever you would

11   like.

12            I am just trying to understand—and this question

13   really is directed at Fanatics—what information would be in

14   the license agreement or if you could give me examples of

15   information that would be in the license agreement that would

16   be, you know, nonresponsive, not relevant, the type of

17   information that would get redacted.

18            MR. BUTERMAN:  Absolutely, your Honor.  This is Larry

19   Buterman, and Ms. Bonacorsi may address this, as well.

20            Within the license agreement, there are certain

21   financial terms that we believe are not pertinent to the

22   issues at dispute in this matter.  Those are some of the terms

23   that we are looking at.

24            But just more generally, your Honor, what we have

25   been doing since the order on the motion to dismiss came

1    down—but really going back to when your Honor issued the

2    order back in January that these licenses should be

3    produced—is we have been working and communicating with the

4    various leagues and players' associations to advise them that

5    the documents may be produced and to work with them on the

6    redactions.  Those are the efforts that we have been

7    undertaking.

8          As your Honor will recall, we specifically put a

9    provision in our protective orders to allow for a redaction of

10   irrelevant information.  And so right now, we are in

11   negotiations with the leagues and players' associations to get

12   their views on what needs to be redacted.  We are approaching

13   this with the viewpoint that there should be only the most

14   minimal of redactions, but we are working with them.  That

15   process is ongoing on a daily basis and rapidly concluding.

16         We suspect that, in the next week or two, that will

17   all be done.  The license agreements, in redacted form, will

18   be provided to Panini's counsel; and, after that, consistent

19   with the process that we laid out, we will meet and confer

20   with them if they have objections to the information that is

21   redacted.  And then once we have that meet-and-confer process,

22   we can approach your Honor and have your Honor decide whether

23   the redactions are appropriate or not.

24         But at this juncture, we haven't even settled with

25   the leagues and players' associations on what it is that will

1    be redacted in those agreements.

2              THE COURT:  And Mr. Buterman, I thought I heard you

3    say you think that you can have this all produced in a week or

4    two?

5              MR. BUTERMAN:  So to -- yes, your Honor.  I would say

6    that -- and, your Honor, to be blunt, this is not completely

7    within our control because we are dealing with leagues and

8    players' associations who have their own both external and

9    internal counsel, so there are steps that don't involve us.

10             But based on the cadence of the negotiations, we

11   fully anticipate, barring some unforeseen circumstances, that

12   in the next couple of -- week or two, we will be producing

13   these agreements in the redacted form to Panini, which will

14   then start -- trigger the meet-and-confer process if there is

15   any objection to those redactions.

16             We also do plan, your Honor, to do this on a rolling

17   basis so that as we conclude a negotiation or we reach an

18   understanding with a specific entity on a specific agreement,

19   we will produce that and not wait until we have to have them

20   all before we produce them all.  And we think by doing that,

21   frankly, that will speed up the process as well, because once

22   we have an understanding of whether Panini has a particular

23   concern with respect to a specific redaction, that could

24   inform and guide us as we move forward in completing our

25   discussions with the other leagues and players' associations.

1          THE COURT:  Mr. Boies, I guess I had sort of

2     anticipated that the production of these agreements might

3     take, you know, far more time.  It seems like you might get

4     them by May 16, which is just, like, two weeks from today and,

5     particularly, if you get them on a rolling basis, maybe you

6     get some earlier, is that something Panini can live with?

7          MR. BOIES:  Your Honor, I am always reluctant to say

8     somebody has to do something when all they are asking for is

9     two weeks, but I would ask the Court to consider the

10    following:

11         We asked for this over six months ago.  The Court

12    ordered it over four months ago.  The appeal that they brought

13    was over almost two months ago.  There can't be anything

14    nonresponsive in these license agreements.  As this Court has

15    ruled, this is at the heart of our case.

16         The financial terms are certainly relevant to our

17    claims.  These are going to be produced, we have agreed

18    initially, on an attorney's-eyes-only basis.

19         The leagues and the players' associations have known

20    about this at least since January 3.  They have known that

21    they had to be produced at least since March 10.  They don't

22    have control over something that is relevant to discovery.

23    They do have a right to come in and ask this Court for a

24    protective order, but there is already an attorney's-eyes-only

25    order on this.

1          I am just at a loss, your Honor, as to why these

2    haven't been produced already.  We even asked, in order to try

3    to get these before we could -- we had to have this hearing,

4    we said, just give it to us now, based on your redactions, and

5    we will fight about the redactions.  They wouldn't even do

6    that.

7          I really do think, your Honor, that they ought to

8    produce these documents now.  I think they ought to produce

9    the entire document.  If there is something that they believe

10   they can, in reasonable good faith, redact, we can fight about

11   that.  But this is not up to the players' association.  They

12   have had this for months.  They could have come in and tried

13   to intervene.  I haven't seen the license agreements,

14   obviously, but I assume they probably have some provision that

15   allows them to object if they want to object.  We haven't

16   heard word one from them, from the players' associations or

17   the leagues, in terms of trying to resolve this.

18         So I just would ask the Court to finally give us

19   these license agreements.

20         MR. BUTERMAN:  Your Honor, if I just may briefly.

21         To clear up the record, Mr. Boies said that your

22   Honor's order was from four months ago.  As your Honor knows,

23   we appealed that order, and I don't know why Mr. Boies thinks

24   that we don't have the right to do so.

25         The decision on the motion to dismiss came down on

March 10.  On March 14, we reached out to the licensors,
telling them, consistent with our obligations, that those
agreements would be produced.

        We have obligations to these third parties.  I
understand that Mr. Boies wants this Court to just say it
doesn't matter, the same way that Mr. Boies wants this Court
to say that the agreements that the third parties, these
licensors, entered into with Fanatics for trading cards don't
matter.  But they do.  And he doesn't get to decide what
contractual obligations we have to follow and we don't.

        We have been moving very, very quickly here.  It is a
long process.  And your Honor, frankly, this goes to a very
important point that I think we will be discussing at a later
date, which is, the reality that dealing with all of these
third parties, who Panini has brought into this case, adds a
level of complexity that necessarily adds time.  And so it is
not a situation where Panini gets to prejudge the redactions
and say that they are inappropriate.

        And frankly, this is what we are dealing with
throughout, which is, Panini keeps shortchanging the processes
that they agreed to, that this Court set up.  And so the
process that we all agreed to here is that we would work out
the redactions, we would then send those——the redacted
documents——over to Panini, Panini would look at the redacted
versions of these agreements, and if they had concerns, then

1    we have a process to eventually bring that before your Honor,

2    after there is a meet-and-confer.  But time and time again,

3    they just seem to want to skip through all of that, not even

4    brief it, and just come before your Honor and say, order,

5    order that it be produced, order that it be produced in whole

6    right now.

7            As I indicated, we are finalizing our negotiations,

8    our discussions with these third parties.  We anticipate that

9    they will be produced within the next coming weeks.  And, as

10   your Honor said, on a rolling basis, some may come earlier.

11   There may be some that linger a little bit.  But these are

12   being produced.

13           And the other point that I would make, your Honor, is

14   we are now in discovery.  We have a discovery process.

15   Parties have served document requests on each other, and we

16   will discuss the document requests that Panini recently served

17   on Fanatics, because I think they are quite telling about a

18   lot of what is going on here.  But we will be producing these.

19   And, with respect, Panini does not get to tell us, in a

20   situation where we have a discovery process that is

21   proceeding, that they need to and they are entitled to get

22   this document at this time.  We can't have a situation where

23   we are going to be back in front of your Honor every single

24   month with them complaining that they haven't gotten this

25   document two weeks before they want to get it.  It is just not

1    a feasible way for us to be proceeding here.

2              MR. BOIES:  Your Honor, if I could respond to that.

3              There has never been any effort on Panini's part to

4    tell them what they have to produce.  But they don't get to

5    choose, either.  This Court gets to choose.  And this Court

6    ordered these documents to be produced.  No one is telling

7    them they didn't have the right to appeal.  But that appeal

8    has taken time.  And so once that appeal was over with, we

9    think they had an obligation, under the order, to produce

10    those documents.

11              Now it is true, the order provides that if there is

12    nonresponsive material, they can redact that and then we can

13    talk about it.  I do not believe there is any good-faith basis

14    to redact as nonresponsive part of these license agreements.

15    But if they take that position, then we can argue that before

16    the Court.

17              But there is absolutely no basis whatsoever for them

18    to have held back these license agreements.  They could have

19    given it to us with redactions and then we could have fought

20    about it.  But it is not up to them.  It is not up to us

21    either.  It is not up to the third parties.  It is up to the

22    Court.  The Court has ordered this, and we think the Court's

23    order ought to be complied with.  And we don't think that they

24    can simply say, we want more time.

25              MR. BUTERMAN:  And your Honor, I will just say that,

1    with respect, I have the utmost respect for Mr. Boies——I hope

2    he shares that with me——but his assertion that we are not

3    operating in good faith when -- in redacting the documents,

4    when he acknowledged that he hasn't seen them, I think is a

5    little bit beyond the pale, and I would appreciate it if we

6    don't go there.

7              The reality is that --

8              MR. BOIES:  I would --

9              MR. BUTERMAN:  If you want to correct the record on

10   that, Mr. Boies, that's fine.

11             MR. BOIES:  Well, I would certainly like to correct

12   the record on that.

13             MR. BUTERMAN:  Yes, well, then --

14             MR. BOIES:  I think you were the one that started off

15   saying we were the ones trying to tell you what to do.  We are

16   not trying to tell you what to do.  All we are asking you to

17   do is do what the Court has ordered you to do.

18             MR. BUTERMAN:  And that is exactly, your Honor, what

19   we are doing.  And as I said, these -- I don't even know why

20   we have spent 20 minutes on this, given what we said, that

21   these license agreements will be -- start being produced in

22   the coming weeks and, barring the unforeseen, we expect that

23   Mr. Boies will have them in two weeks.

24             I don't think --

25             MR. BOIES:  Your Honor --

1          MR. BUTERMAN:  -- that there is anything more that

2     needs to be discussed in that regard, your Honor.

3          MR. BOIES:  Your Honor, the reason that we have spent

4     20 minutes on this is because there is a pattern here.  We ask

5     for something.  We meet-and-confer.  They don't give it to us.

6     We then have to wait for the hearing.  We then get to the

7     hearing, and they say, "We need more time."  There is

8     absolutely no reason for us not to get the documents now if

9     they have redactions and they are going to make a good-faith

10    basis.

11         And the Court asked, Mr. Buterman, asked you what

12    types of things you are going to redact.  The only thing you

13    could come up with was financial terms.  I do not see how the

14    financial terms of the license agreements could not be

15    responsive to something in this case.  But if that is your

16    position, you can redact that and then we can bring it to the

17    Court.  But we ought to get the documents now with whatever

18    redactions you are going to assert.

19         That is my position, your Honor.

20         MR. BUTERMAN:  And the only thing I will correct

21    about what Mr. Boies just said, since I don't think he is

22    aware of this because he hasn't been on any of the calls, is

23    that there actually haven't been meet-and-confers, your Honor.

24         What happens here -- and it is a really unfortunate

25    situation, but what happens here is, every month, in the

1    lead-up to the conference, your Honor, before we have to make

2    our joint submission, we get something from Panini's counsel.

3    Most recently, in this instance, a day or two before we had to

4    submit the joint letter, we got an e-mail from them saying

5    that they had an objection to four of -- our responses to four

6    requests from their most recent requests for production.  And

7    without a meet-and-confer, they declare impasse and raise it

8    with your Honor.  It is a pattern -- if there is a pattern

9    here, it is a pattern of manufacturing disputes, and it is

10   unproductive.  We are trying our best to move things along

11   here.

12          But, with respect, this constant manufacturing of

13   disputes, premature raising of issues, as Mr. Boies just said,

14   you know, before we have even -- he has even seen the

15   redactions, he is objecting to the redactions, and he is

16   getting them in two weeks.  I just think that we can let this

17   process move forward.  He will get the documents.  If he has

18   objections at that time, there is a process in place to

19   address them.  But there is no reason to seek preemptive

20   rulings before he has even seen the license agreements.

21          MR. BOIES:  Your Honor, I am not seeking preemptive

22   rulings and I am not manufacturing disputes.  This is

23   something that we have had a court order on.  This is

24   something that not only has your Honor dealt with it, the

25   district court has dealt with it.  There is nothing

1    manufactured.  There is nothing new here.  There is nothing

2    that is a surprise to them in what they call the lead-up to

3    this conference.  We are talking about stuff that they have

4    been ordered to produce.

5         If they have got redactions, he is absolutely right,

6    I do not believe that there can be any nonresponsive parts of

7    these license agreements.  But if they are going to take that

8    position, they can redact it, and then we can fight about it.

9    But we ought to -- and this is attorney's eyes only, your

10   Honor.

11        In terms of meet-and-confers, I don't know how many

12   meet-and-confers we had about this, but we had a lot before

13   the -- before we had the court orders.  Once we have court

14   orders, we don't think there is any room for meet-and-confers

15   at that point.  We think the court order ought to be complied

16   with.

17        MR. BUTERMAN:  Your Honor, there is nothing in the

18   court orders that precludes us from complying with our

19   obligations to notify these third parties and to work through

20   this process, and that is all we have been doing.

21        And, with respect, I will say it again, Mr. Boies

22   does not know about the meet-and-confers because he hasn't

23   been on any of those calls.  And so there haven't been --

24        MR. BOIES:  That is -- just to correct the record,

25   there were a number of meet-and-confers that took place prior

1     to the Court's order.  Counsel is right, there have not been

2     meet-and-confers after the court order, because our position

3     is that once the court order has been issued, once it has been

4     appealed, the appeal has been denied, then it is time not for

5     more meet-and-confers to elongate the process, but for those

6     court orders to be complied with.  And if he thinks there are

7     good-faith redactions that he can make, he can make those

8     redactions and then we can come back to the Court.  But we are

9     entitled to these things, with whatever redactions he can, in

10    good faith, make.  We are, at a minimum, entitled to that now.

11    We were entitled to that not now, we were entitled to that on

12    March 10.

13          And in terms of their obligations, their obligations

14    are first to this Court.  Every court that has considered the

15    issue has held that an agreement between parties to withhold

16    documents cannot trump a document order from this Court.

17    Redaction, they -- if the individuals -- if the players'

18    associations or the leagues wanted to intervene, if they

19    wanted to be heard, they had a right to be heard.  They have

20    not.  They haven't even contacted us.  This is not something

21    that they can negotiate with Fanatics.  This is something that

22    there is a court order that needs to be complied with.

23          MR. BUTERMAN:  Your Honor, the last thing I will say

24    on this is just I don't know why any of the third parties

25    would be contacting Panini on this, but the point is, we are

```
1    wrapping up those negotiations, as I said at the beginning,

2    and these will be produced within the coming weeks.

3              I don't know what else there is to say about this,

4    and we are moving expeditiously as I -- to wrap this up and

5    get these agreements over to Panini.

6              THE COURT:  So why don't we do this.  In the interest

7    of just moving this along, perhaps, somewhat quicker, I can

8    enter an order setting the deadline for Fanatics to produce

9    the complete set, all six -- obviously, if you get them

10   earlier, you had indicated you would do so on a rolling basis,

11   but the six licensing agreements no later than May 13, which,

12   as I said, is roughly two weeks from today, perhaps with a

13   court order setting a deadline that could prompt the leagues,

14   players' associations, whoever it may be, to act slightly

15   faster.

16             And then, since I anticipate there being potential

17   issues with -- or parties raising potential issues with the

18   redactions, we have a conference on June 5.  So if everything

19   gets produced by May 13, there is ample time for the parties

20   to meet and confer about the redactions, and then the issue of

21   the redactions can be produced -- or, I am sorry, the issue of

22   the redactions——if there is any issue, I am not trying to make

23   up an issue——but if that is still a fight, it can be addressed

24   at the June 5 conference.

25             MR. BUTERMAN:  Thank you, your Honor.  That works for
```

```
 1    Fanatics.
 2              MR. BOIES:  We understand the Court's order, your
 3    Honor.
 4              THE COURT:  Are there other issues the parties want
 5    to discuss?
 6              MR. BOIES:  I think another key issue, your Honor, is
 7    setting a discovery schedule and a trial date.
 8              The parties have met and conferred significantly on
 9    this issue and, as I think the Court is aware from the parties'
10    submissions, we are substantially far apart in terms of how
11    fast we think this case needs to get prepared.
12              Our proposal is for a trial date in May of 2027, I
13    believe, which would be, obviously, three years from now and
14    almost five years from the time we brought this case.  We
15    think that is far more time.  We came to this not because we
16    thought that was the right date——we think it should go much
17    faster——but because we were trying to reach a compromise with
18    Fanatics.
19              The Court has our -- I think the Court has our
20    parties' views on this.  I don't know whether the Court wants
21    to address that at this conference or at the June conference,
22    but we do think there needs to be a discovery deadline set.
23    We do think there needs to be an at least tentative trial date
24    set.
25              I think when the Court does that, whether it tries to
```

1    address that now or tries to address that in June, you know,

2    it is obviously up to the Court, but we do think that this

3    needs to be addressed at some reasonably prompt time.

4        MR. BUTERMAN:  And, your Honor, this is Larry

5    Buterman.

6        Just to hit on a couple of things, we are

7    certainly -- if the Court would prefer additional briefing or

8    to take this up at a future conference, that is completely

9    fine with Fanatics in part because the key point is that

10   discovery is proceeding and both sides have served discovery

11   on them.

12       Just to correct something, it is -- May '27 is two

13   years from now.  And I think that that is actually a very,

14   very important point—it is not three years—because what we

15   received shortly after this submission went in to your Honor

16   was a document request from Panini that included 154 separate

17   document requests that I know my colleague Mr. Boies will tell

18   this Court are all, in his view, narrowly tailored and

19   nonduplicative.  And it is actually not 154 requests, your

20   Honor, because embedded within them are requests for every

21   document produced in multiple other matters.  So all total,

22   Panini at the same time saying that this case can go to trial

23   in May of '27 with, by their words and in their view, a

24   discovery cutoff in approximately ten months, they have

25   requested that we produce to them 154 separate categories of

1  documents, your Honor, going back to when President Obama was

2  still in office, years before the COVID pandemic even hit.  And

3  it is completely unrealistic, in an antitrust case, that we can

4  get through discovery in that kind of time frame.

5        I do not know why Panini strategically waited until

6  after submitting this proposed schedule to your Honor to raise

7  that issue, but I have to say, had we been aware at the time

8  of what they were going to be seeking -- and to be clear, we

9  are going to be pushing back on a significant portion of it,

10  but had we been aware that this is what they would be seeking,

11  we wouldn't have even suggested the timetable that we did.

12  But that is part one of this.

13        There are a couple of other things that we just need

14  to put out there and why we think that, perhaps, it does make

15  sense to defer this discussion to a later date.

16        As your Honor is aware, recently there was a class

17  action that was filed that relates to the same -- has the same

18  underlying facts.  Now, it is different in the sense that that

19  class action names not only Fanatics, but the various leagues

20  and players' associations.  Now, we believe that case is

21  completely without merit for a host of reasons.  We plan to

22  move to dismiss it, and we hope that that case does get

23  dismissed, as we believe it should.

24        But to the extent that it doesn't, we do need to be

25  aware of it.  It has been noted as related to this matter.

1    And so we will need to potentially take that into account,

2    given that the leagues and players' associations that are

3    third parties in this matter are parties in that matter; and

4    Panini, who is the obvious party in this matter, is a third

5    party in that matter.  And so there may be things that we want

6    to ensure we do efficiently, such as with respect to

7    depositions.  But that is further down the road, and we don't

8    need to deal with that now.

9         But when you add in the fact of that case, as your

10    Honor is aware, last night, Fanatics amended its affirmative

11    claims against Panini, as well.  There is a lot going on here,

12    the obvious interplay with these third parties, that makes a

13    deadline for discovery, completion of fact discovery in ten

14    months to be wholly unrealistic.

15         And the last thing I will say on the schedule, your

16    Honor, I understand why Mr. Boies and Panini are pushing for a

17    trial date of May '27 when they are also pushing for filing

18    beginning of summary judgment at the end of 2026.  It is

19    because they don't want this Court to have any time to deal

20    with summary judgment and the summary judgment motions that

21    they know will be coming.

22         But their schedule, to just show you how preposterous

23    it is, it starts, it starts summary judgment on November 9,

24    2026.  The summary judgment process itself will probably take

25    until about March or April, at a minimum, of 2027.  And they

1    want us to set a trial in May of '27, in essence, taking away

2    from this Court, from Judge Swain, the ability to fully

3    address summary judgment.

4          And that is why what we proposed, your Honor, is a

5    schedule that takes us up to summary judgment with specific

6    dates, but then keys trial and the pretrial activities off of

7    the time when the Court decides that motion, so that

8    Judge Swain has sufficient time to address what will be, in

9    all likelihood, pretty extensive *Daubert* and summary judgment

10   papers.

11         So with all of that, your Honor, I would say that

12   what Panini has proposed, in light of what they say they need

13   to litigate this case, is wholly unrealistic, and we should --

14   we respectfully submit that the Court should either accept our

15   schedule or if, as Mr. Boies said, the Court wishes to defer

16   that discussion to a later date, we are happy to do that.  And

17   perhaps with now knowing what they are seeking in discovery,

18   we can have a more realistic conversation about what an

19   appropriate trial schedule looks like.

20         THE COURT:  So, I think --

21         MR. SINGER:  Your Honor, this is Stuart Singer on

22   Panini's behalf.  If I might, since I was involved in a couple

23   of things that counsel --

24         THE COURT:  So I will definitely --

25         MR. SINGER:  -- was raising --

```
 1              THE COURT:  I am so sorry.

 2              I will definitely let anyone speak, but I just wanted

 3    to just jump in a minute, and I sort of apologize for not

 4    jumping in sooner.  It is hard to do on these calls.  I don't

 5    want to talk over anyone.

 6              But Judge Swain has a very specific model when she

 7    refers cases for general pretrial discovery to magistrate

 8    judges, and I would not give -- I cannot give you deadlines

 9    for dispositive summary judgment motions, for trial.

10              I basically will give you deadlines through the close

11    of fact discovery.  Once fact discovery closes, she has a very

12    specific order she wants entered.  She will then set the dates

13    for, you know, a conference for dispositive motions, so

14    dispositive motion briefing and then trial.

15              So I don't know that we need to -- I don't know that

16    we need to continue with this aspect of when the case, you

17    know, would potentially be scheduled for trial, because that

18    would be something only Judge Swain can give you, unless you

19    consent to my jurisdiction.

20              MR. SINGER:  Thank you, your Honor.

21              MR. BUTERMAN:  I --

22              MR. SINGER:  This is Stuart Singer.

23              If I might say on Panini's behalf just a few things

24    in relationship to what Mr. Buterman said, and then Mr. Boies

25    would respond further.
```

1          First, the schedule, which we submitted is, in fact,

2     taken from a schedule that the parties had agreed to when this

3     case was in Tampa.  And so the length of time for fact

4     discovery, as well as other deadlines, followed from what had

5     been agreed to by the parties at that time a couple years ago.

6          Secondly, with respect to the number of requests,

7     Panini received a request from Fanatics that had 67 subparts.

8     The issue isn't how many subparts.  Obviously, this is a

9     complex case, and a lot of document production will be

10    required.  That is not unusual in an antitrust case, and that

11    is why we have a full ten months of time to deal with that.

12    They will, I am sure, respond to our document request in due

13    course, and we can deal with that either by agreement or

14    coming before your Honor if there are issues.

15         But they have sought an enormous breadth of material.

16    It is expected in an antitrust case that that is going to

17    happen, and that is not a reason to have such an elongated

18    schedule before fact discovery even closes.

19         MR. BUTERMAN:  Your Honor, this is Larry Buterman.

20         So just on those parts, yes, Fanatics served a

21    document request on Panini, and we are not the ones arguing

22    that they shouldn't have sufficient time to comply with it.

23    They are the ones who served a document request that, when you

24    actually add it up, is several times——several times——as big as

25    the one that they served on us.  And they are suggesting that

1    we should have less time for discovery than in the typical

2    antitrust case.

3            We have provided your Honor with examples of other

4    cases with the schedule in complex antitrust cases.  And

5    Mr. Singer is right, antitrust cases are complex.  And that is

6    why, typically, you see discovery document production periods

7    of somewhere between 12 to 24 months.

8            Now, Mr. Singer said, well, we had agreed to a

9    schedule back when they had filed the case in Florida, and

10   that is true, your Honor.  But a lot has changed since then,

11   including the class action, including the fact that we now see

12   that they are seeking 154 separate document requests from us

13   that they believe are needed in order to prosecute this case.

14   How extensive and time-consuming the interactions are going to

15   be with the third parties, and the implication of the new

16   cases, the amended complaints adding new allegations, all of

17   this leads to a situation where suggesting that we are going

18   to complete discovery in ten months is completely unrealistic.

19           And just to show you how unrealistic it is, your

20   Honor, if you anticipate that all discovery needs to be

21   completed under their schedule—all fact discovery needs to be

22   completed by March of 2026—well, that includes depositions,

23   your Honor, which means that they are going to be pushing in

24   these depositions in the beginning of the year, which means

25   that document production is going to need to be completed

towards the end of the year, which means we are going to be

negotiating with third parties over the holidays.  And is it

realistic to assume that we are going to be able to get third

parties to move and produce documents at the end of the year?

It is not.

The schedule that they have proposed through the end

of discovery is wholly unrealistic.  It is not consistent with

what they are seeking in this case and it is just not

feasible.  And if it really were, and if there was no problem

with what they are suggesting they need and what they are

suggesting should take place, then I think we would have seen

these 154 requests sent to us before we had to put in this

document.

MR. BOIES:  Your Honor, I think the Court is aware

that there are lots of antitrust cases which go a lot faster

than counsel suggests.  And in the *United States v. Microsoft*

case that I was counsel in, fact discovery -- all fact

discovery was done -- and that was a far more complicated case

than this, all fact discovery was done in five months.  Both

of the parties here are very, very well represented by counsel

and, as the Court can tell, very aggressive counsel.  So I

think people can get the work done.

The Court knows, we are the plaintiffs, and we want

to go fast; they are the defendants, so they want to go slow.

And we are both arguing.  It is up to the Court to decide.  I

```
 1    would just urge the Court not to let this case drag on and not

 2    let the close of fact discovery get too elongated.

 3           The Court has heard all this before in cases as to

 4    how fast cases ought to go, and I am not sure either of us can

 5    add too much to that store of knowledge.  But if we both work

 6    at it, and if the Court keeps us going, I mean -- you know,

 7    and I would urge that the Court, you know, needs to do that.

 8           THE COURT:  Can I just ask, can the parties just

 9    point me to the docket entry where the two proposals for the

10    case management plan are?

11           MR. SINGER:  I believe that the two proposals are

12    summarized on──this is Stuart Singer, your Honor──on Document

13    Entry No. 172, which is the letter of April 24 to your Honor.

14           THE COURT:  Other than the scheduling issue, is there

15    anything else parties want to discuss?

16           MR. SINGER:  Yes, your Honor.

17           There are two document requests that relate back to

18    December, when the parties were urged to exchange other

19    document requests while the motion to dismiss was pending.

20    And if I might address that, that is also pending before your

21    Honor.

22           THE COURT:  Yes.  Go ahead, Mr. Singer.

23           MR. SINGER:  Thank you, your Honor.

24           We had made those requests when Fanatics, at the

25    November 7 hearing, said they would be willing to meet and
```

1    confer about additional discovery.  And so going back as early

2    as December 2 of 2024, we proposed four categories of

3    documents to consider and the parties had a meet-and-confer

4    discussion in advance of the hearing we had with your Honor on

5    December 12.

6          Fanatics rejected those requests and insisted at that

7    time that we serve formal requests, because they were letter

8    requests.

9          MR. BUTERMAN:  Your Honor?

10         MR. SINGER:  So we then served, first, requests for

11   production --

12         MR. BUTERMAN:  Your Honor?

13         MR. SINGER:  -- formally --

14         MR. BUTERMAN:  Sorry.  I am sorry to interrupt.  I

15   apologize.  I got kicked off the conference.

16         THE COURT:  Oh, no worries.  So we were just -- I

17   don't think you have missed much.  We just started to discuss

18   the issue raised at ECF 172 with regards to the document

19   productions, that request made back in December.  And

20   Mr. Singer had just started.

21         So I don't know if, Mr. Singer, you just want to

22   backtrack a few minutes?

23         MR. SINGER:  Yes, your Honor.  I would be happy to

24   backtrack so that Mr. Buterman --

25         MR. BUTERMAN:  Wait.  Just --

1          MR. SINGER:  -- has heard everything.

2          MR. BUTERMAN:  Yes.  Just -- I am sorry, your Honor,

3     because I got cut off while Mr. Boies was speaking about the

4     schedule, and so I don't know where that ended up.

5          THE COURT:  Oh, yes.  No problem.

6          So I have the two proposals.  I will enter an order

7     at the end of this conference with dates so we could move

8     forward with a plan.  And that order will also include, as I

9     had indicated, the deadline for the production of the six

10    licensing agreements.

11         MR. BUTERMAN:  Okay.  Thank you, your Honor.

12         MR. SINGER:  Continuing, your Honor, I will go back

13    to the start.

14         This concerns specifically requests that were

15    initiated after, on November 7, Fanatics said they would be

16    willing to talk about additional discovery while we were

17    waiting for the motions to dismiss to be decided.

18         On December 2, we proposed four categories of

19    documents by letter.

20         At the December -- in advance of the December 12

21    hearing, there was a meet-and-confer, which Fanatics rejected

22    those requests.

23         When we raised those issues at the December 12

24    hearing before your Honor, Fanatics insisted that Panini serve

25    formal requests rather than letter requests.  So we did so.

1    That occurred on January 8 of 2025.

2          A number of weeks later, on February 7, they didn't

3    serve formal objections refusing to produce any documents on

4    the basis that the requests were premature until Chief

5    Judge Swain issued her order on the parties' motions to

6    dismiss.

7          So we then brought that before the Court prior to the

8    March 10 conference, which, as your Honor recalled that during

9    that very conference, the order came down essentially, in all

10   material parts to this, denying that motion to dismiss.  And

11   Panini then asked Fanatics whether it still objected to the

12   first request for production of four requests, and Fanatics

13   indicated on March 17 that they would supplement their

14   objections and responses to the request.

15         Finally, on April 10, they served a supplemental

16   response and objection.  The parties then had a meet-and-

17   confer on April 15.  Fanatics requested that Panini set out

18   its positions on Fanatics' refusal to produce documents in

19   writing again.  We did so on April 21.

20         There was a further meet-and-confer on April 23 where

21   Fanatics indicated it did not yet have a response on the

22   dispute over the third and fourth requests, and they have

23   taken a position that even though this request goes all the

24   way back to December of 2024, it is not ripe for this

25   conference.  We do not agree with that.  We think these two

1    requests at issue are very straightforward, clearly calling

2    for relevant information which the Court should rule upon at

3    this time.

4         Request No. 3 is a request for all agreements with

5    GCP.  That is the company which Fanatics acquired which

6    manufactures cards that Panini distributed.  Fanatics states

7    that it will produce its contracts with GCP for the production

8    of sports trading cards but refused to produce the documents

9    relating to Fanatics' acquisition of a stake in GCP.  Such

10   acquisition documents are clearly relevant to this case.

11   Aside from the fact that they relate to our Section 2

12   monopolization claim as part of the anticompetitive activity

13   that Fanatics engaged in, there is a separate count of the

14   complaint, and that is Count Four, which asserted a violation

15   of Section 7 of the Clayton Act, specifically arising from

16   Fanatics' March 22 acquisition of a controlling stake in GCP.

17   And the Court specifically ruled that the allegations, which

18   include the allegation that Fanatics acquired GCP to control

19   and cut off Panini's trading card production capabilities,

20   sufficiently plead a violation of Section 7.

21        So it is incomprehensible, in a case involving a

22   claim about the acquisition of GCP by Fanatics, that Fanatics

23   can now take the position that those very acquisition

24   documents are not relevant and do not need to be produced.  I

25   think just to state the position indicates that they clearly

1  are relevant and need to be produced here.

2          Request No. 4 deals with Fanatics' agreements with

3  hobby stores, distributors, big-box retailers, and case

4  breakers related to the selling of NFL, NBA, and Major League

5  Baseball trading cards.  And, again, these are each involving

6  aspects of the complaint which -- none of which have been

7  dismissed by the district court.

8          The hobby store agreements are relevant to our claims

9  for attempted monopolization, monopolization, tortious

10  interference, saying that they sent minimum price requirement

11  contracts to these hobby shops.  That is in paragraphs 200 and

12  201 of the complaint, of the amended complaint.

13          There are distributor agreements that are relevant to

14  those same claims, saying that Fanatics has threatened

15  distributors to cut them off if they do not provide Fanatics

16  with higher margins and pressuring retailers to feature their

17  cards over others.  That is in the amended complaint at 194 to

18  197, 207, and 231, and the fact that they did eliminate one

19  distributor, which is pled in paragraph 197.

20          And the big-box retail agreements for companies like

21  Walmart are relevant because we pled that they are requiring

22  retailers to carry a more limited line of trading card

23  products.  And that is pled at paragraphs 195 and 198.

24          And the case breaker agreements are pled specifically

25  at paragraphs 205 and 206.

1          None of these claims of monopolization, attempted

2     monopolization, have been dismissed by the Court.  These

3     documents are directly relevant because they are Fanatics'

4     agreements with these parties, and they should be produced.

5     They were requested in December of 2024, and the time has come

6     for them to make this discovery.

7          Thank you, your Honor.

8          MR. BUTERMAN:  Your Honor, this is Larry Buterman.

9     Again, apologies for getting bounced off earlier.

10          But, on this issue, I do think that what we just

11    heard from Mr. Singer really highlights what has been going on

12    here and the real problem of Panini bringing to the Court

13    these disputes that are not ripe.

14          We received an e-mail from them about these issues

15    and about their problems with these requests on April 21 and

16    then we had a brief Zoom on April 23.  And what we said to

17    them——and I had a separate conversation with counsel for

18    Panini about this, too——is that we will work through these

19    issues, but they are not ripe at this point.

20          They had raised an objection about the fact that we

21    had put in general objections.  And they wanted to go to your

22    Honor over our general objections and other parts of this that

23    we were just -- we were dumbfounded as to why they would be

24    manufacturing disputes when it was so clear that we would work

25    through them and that they were not ripe.  But, again, it

1    seemed like they were so intent on having something to raise

2    to your Honor.

3            Getting to the substance, and it highlights why this

4    is all so premature and unfortunate, with respect to Request

5    No. 3, we are going to be producing the agreements that

6    Mr. Singer just mentioned regarding the agreements that led to

7    the ownership interest in GCP.  We don't have a problem with

8    that.  If we had had meet-and-confers about this, we would

9    have been able to tell him that.  But they didn't want to meet

10   and confer.  They wanted something to come to your Honor in

11   front of.

12           Now, with respect to Request No. 4 -- so Request

13   No. 3 is done.

14           With respect to Request No. 4, Request No. 4 is

15   wildly overbroad, your Honor.  But I am not sitting here today

16   saying that there isn't something within Request No. 4 that

17   the parties could meet and confer about and reach an agreement

18   hopefully if we are all operating in an effort to try to reach

19   agreement.

20           But to come to your Honor and say that their request

21   for all of our agreements with hobby stores, distributors,

22   big-box retailers, and case breakers related to the selling of

23   NFL, NBA, and MLB trading cards, that that is all relevant to

24   this case and it all needs to be produced at this juncture,   I

25   am sorry, that is a wildly broad request.  There needs to be a

```
1   meet-and-confer process aimed at narrowing that to a reasonable
2   level.
3            And to show you, your Honor, how premature this all
4   is, what they ask for in that Request No. 4 is also embedded
5   in their requests that they just served on us days ago, the
6   154.  They are asking for those same materials.  We have a
7   right to go through a process where we lodge objections, they
8   come back to us, they raise their concerns with our
9   objections, and we meet and confer to try to resolve the
10  matter.  This shouldn't be an effort to try to manufacture
11  disputes so that we have something to talk about at these
12  conferences.
13           So, with respect, as I said, there is no issue on
14  No. 3.
15           On No. 4, the parties should be ordered to meet and
16  confer on that to see if we can resolve it; and, if not, then
17  at the next conference, we can take that issue up with
18  whatever other issues Panini is going to bring up in the days
19  before we have to submit something to the Court in advance of
20  that conference.
21           MR. SINGER:  Your Honor, briefly, if I might.  This
22  is Stuart Singer.
23           First, these are not premature.  These are the
24  specific requests that go back to December of 2024.  There is
25  not a requirement to have multiple meet-and-confers.  We had a
```

1   meet-and-confer before the December hearing.  We then had a

2   further meet-and-confer on April 23 where they said they

3   weren't prepared to address these issues, even though these

4   issues are ones that go back to a request that they had since

5   December.  These are specific agreements we have asked for at

6   the front end of discovery because they will help define the

7   scope of discovery and where we need to go with that process

8   as we move forward.  And whatever number of agreements they

9   may have with retailers and hobby store owners, they are

10  clearly relevant to the case because of the allegations that I

11  went through with the Court a few moments ago.  And we should

12  not have to go through yet another meet-and-confer in order to

13  get those agreements which we were seeking in December, in

14  which we have already had two meet-and-confers concerning that

15  request, the latter of which they simply said they weren't

16  prepared to discuss, even though they have had those requests

17  for months.

18          So I --

19          MR. BUTERMAN:  Your Honor, we had the request --

20          MR. SINGER:  -- would respectfully ask --

21          MR. BUTERMAN:  I'm sorry.

22          MR. SINGER:  I would respectfully ask the Court to

23  direct him to produce those documents by a date certain.

24          MR. BUTERMAN:  Your Honor, we had the request for

25  months, but they actually gave us their position on April 21

1     and then wanted -- and then met with us on April 23 on it.

2              And no, we weren't -- at that point, you know, having

3     just gotten their positions on these issues on April 21, on

4     April 23rd, we hadn't had sufficient time to have a

5     meet-and-confer process.  They put this in front of us

6     strategically, right before this -- right before we had to put

7     in our submission.

8              And the fact that they had served these document

9     requests way back when is irrelevant.  What is relevant is

10    when they teed the issue up for a meet-and-confer process, and

11    that occurred on April 21 when we got their e-mail for the

12    first time.  And all we are asking for is that we be permitted

13    to meet and confer with them and have a process laid out by

14    which we try to narrow this dispute.  And then if we do not,

15    if we are not able to narrow this dispute sufficiently and a

16    dispute still remains, then both sides should be permitted to

17    provide their views on it.  Because the problem now, as it

18    stands, your Honor, is that Mr. Singer and Panini have

19    provided their views on this to the Court, but we haven't had

20    an opportunity to provide our -- in writing, our views on this

21    request and why it is so wildly overbroad.

22             And again, it can't -- it is an unfortunate pattern

23    that they are seeking to get these rulings sort of on the fly

24    from your Honor before the issues -- before we have joined

25    issue on these matters.

```
1                THE COURT:  Mr. Buterman (unintelligible) --

2                MR. SINGER:  Your Honor, this is Stuart Singer.  They

3   have had --

4                MR. BUTERMAN:  No, your Honor.

5                MR. SINGER:  Your Honor, they have had that

6   opportunity.  They had that opportunity when this was raised

7   in December of 2024 by letter.  It is exactly the same

8   request.  But instead of engaging with the substance of that,

9   they said, we want to see that in a formal written request,

10  and so they got that on January 8.  And they could have, at

11  that time, engaged with the merits of those document requests

12  instead of, after asking these to be put in a formal form, they

13  took the position that it is all premature until the motion to

14  dismiss was ruled upon.

15               Then after that, they have had this opportunity and

16  they have known about our position.  This is a very clear and

17  specific request for documents -- agreements in these areas.

18  And, you know, to say that they haven't had enough time, I

19  think it is just reflecting their intent to delay discovery.

20  And so they need a firm deadline to produce these because they

21  are clearly relevant, there has been no argument they aren't

22  relevant, so that we can move forward with the case.

23               MR. BUTERMAN:  There is no argument that they are not

24  relevant because we haven't had an opportunity to put in our

25  arguments on this.  And the fact of the matter is that we put
```

1    in our amended responses and objections on April 11.  They

2    then took ten days to get back to us, reasons, again, unknown

3    to us.  If this was so clear to Mr. Singer that this was a

4    dispute, then I don't understand why it took him ten days,

5    until we were on the cusp of having to put in the submission

6    to your Honor, before he raised their positions on April 21.

7         We then got on a meet-and-confer with them in about

8    30 -- or, excuse me, a call with them in 36 hours afterwards,

9    where we said, these are issues that we need to go back, we

10   need to look at, we need to discuss.  And all we are asking

11   for, your Honor, is the opportunity to try to narrow this and,

12   if we can't narrow it, then to be able to submit for your Honor

13   our positions on this so that at the next conference your Honor

14   can have the benefit of both of our positions on these issues

15   before issuing a ruling.

16        THE COURT:  Mr. Buterman, I just want to make sure I

17   caught it right.  It sounded like, with respect to Document

18   Request No. 3, that Fanatics intends to produce not just any

19   agreements related to sports trading, but also any acquisition

20   agreement?  Is that right?

21        MR. BUTERMAN:  Yes, your Honor.

22        THE COURT:  Okay.  So it sounds like with regards to

23   Request No. 3 perhaps maybe all we need is to set a deadline

24   for that production?

25        MR. SINGER:  I would appreciate that, your Honor.

1          MR. BUTERMAN:  I don't see any -- I'm sorry.  I don't

2     see any dispute, your Honor, between the parties on that.  So

3     I believe -- frankly, again, I really hope we are not getting

4     into a world where, for the next -- for the rest of this

5     discovery period we are just going to continuously have Panini

6     coming to the Court saying, we want you -- we want Fanatics to

7     produce this document now and this document now at this point.

8          But we are producing these materials.  Again, we

9     have -- unfortunately, right now, your Honor, we have to deal

10    with also responding to 154 individual requests for production

11    that they have given and then start doing review and

12    collection and negotiations surrounding all of that.  So we

13    are certainly, you know, fine with and plan to be doing

14    rolling productions in this case.

15         I do have a bit of an objection to Panini's efforts

16    to require us to produce certain documents on certain

17    timetables that they have decided they need.

18         MR. SINGER:  Your Honor, until today they didn't --

19    they were objecting to producing the acquisition documents.

20    Now we appreciate the fact they have dropped that.  And so

21    there should be a deadline by which they comply.  That should

22    not be an open-ended issue.

23         MR. BUTERMAN:  We did -- we weren't objecting,

24    Mr. Singer.  You didn't give us the opportunity to tell you

25    what our position was because you didn't want to hear it and

1    instead preferred to have a dispute in front of this Court.

2    And that is unfortunate.  Had we just been given the

3    opportunity to work through a meet-and-confer process, like we

4    asked, and not raise these issues prematurely, we could have

5    avoided burdening the Court with an unnecessary dispute over

6    Request No. 3.

7              THE COURT:  Can I --

8              MR. SINGER:  Your Honor --

9              THE COURT:  Mr. Buterman, may I just ask, for Request

10   No. 3, this is really just limited to what I will characterize

11   as, like, go-get documents.  This doesn't require, you know,

12   extensive searches and meeting and conferring over search

13   terms or anything like that, right?  I just want to make sure

14   that we are talking about discrete agreements that shouldn't

15   be particularly time-consuming or burdensome to get?

16             MR. SINGER:  Your Honor, this is Stuart Singer.

17             That is absolutely correct.  We are talking about

18   agreements by which they acquired interest in GCP.  Maybe

19   there is one, two, or three of them, but whatever they are, we

20   are not talking about having to do a search of search terms,

21   search of electronic information.  That is why this and the

22   other requests were singled out as things which would be

23   easily identifiable at the front end of discovery for them to

24   produce.

25             MR. BUTERMAN:  And your Honor, we have no problem

```
1   producing these.  We are happy to produce these on the same
2   timeline as we are producing the license agreements by May 13,
3   if that works for the Court.
4              THE COURT:  Yes.  So did you say May 30 or May 13?
5              MR. BUTERMAN:  May 13.  I said May 13, your Honor,
6   the same date that I understood your Honor had indicated for
7   the third-party license agreements, to send those over to
8   Panini.
9              MR. SINGER:  And May 13 is acceptable to us, your
10  Honor.
11             THE COURT:  Okay.  Yes.  That's perfect.
12             I just have, I guess, a broader question for the
13  parties.  I am not trying to make this more burdensome or
14  inefficient.
15             Do you -- for these monthly conference calls, do you
16  want interim deadlines by when someone has to raise a dispute
17  to allow ample time to have a meet-and-confer?  Is that going
18  to be too problematic?
19             I just, you know, going -- it sounds like some of
20  these requests go back to December.  I understand why there
21  wasn't movement in that period of time.  You know, you were
22  waiting on a decision on the motion to dismiss.  I had,
23  myself, indicated we were going to try to do this on a
24  piecemeal basis.  So I am not attributing fault at all.  I am
25  just -- you know, we are going to -- this discovery process is
```

1    going to be long.  I would like to make it as efficient as

2    possible for you all.  So if you think either -- you know, let

3    me know.  If you think the monthly conferences are just

4    creating more work, we don't have to do them.  If you like

5    them, but would like deadlines by when you have to meet and

6    confer or talk to each other, whatever the case may be, you

7    know, you have done this long enough, if there is another

8    process that you want that you think will be better, I am

9    happy to, you know, modify the process.

10              MR. BUTERMAN:  So --

11              MR. SINGER:  Your Honor --

12              MR. BUTERMAN:  -- your Honor, on behalf of Fanatics,

13    first of all, thank you, your Honor, and we appreciate that.

14              What we would like to do is meet and confer with

15    Panini to see if we can agree on a process.  I will say that,

16    from Fanatics' perspective──as much as we enjoy these

17    conferences, as much as we enjoy talking with each other──I do

18    believe that this process has unfortunately created a

19    situation where we are running into disputes that are being

20    brought up just so that there are disputes to be brought up,

21    and that is counterproductive.

22              As Mr. Singer indicated, Panini now has to respond to

23    some document requests that we have served.  We have 154

24    disputes -- documents, excuse me, 154 requests that we

25    recently got from Panini that we need to respond to.  And so

```
1   we think that, at a minimum, the cadence of these should be
2   changed.
3            I also think that it might make more sense if they
4   are done on a basis without a specific conference date but,
5   rather, when disputes arise I think that that is actually
6   going to temper the parties to make sure that we have a
7   sufficient number of issues to raise with the Court and that
8   we are only raising issues that need to be raised.
9            But we all have a lot of work to do, regardless of
10  what discovery schedule gets put in.  And even if this Court
11  adopts the dates that Fanatics had suggested, we are going to
12  be working very, very hard to try to meet those deadlines, and
13  it is on both sides.
14           And so, therefore, what our preference would be,
15  would be to take these conferences, these scheduled
16  conferences, off calendar and to do this as the disputes
17  arise.
18           But, again, I am happy to meet with Mr. Singer,
19  Mr. Boies, and the rest of their team to discuss this.  But
20  the situation that we have now, where we feel like we are just
21  being jammed right before these conferences with
22  meet-and-confer requests or disputes, we think is
23  counterproductive.
24           MR. SINGER:  Your Honor, Stuart Singer, on behalf of
25  Panini.
```

1          We appreciate the time that the Court has provided on

2     a monthly basis, and we think that it is more important now

3     than ever before that that continue so that disputes can be

4     promptly raised and resolved by the Court.  Now that we are

5     moving into full scale discovery, it is even more important

6     than it has been over the prior months.  And we are fine with

7     the Court setting interim deadlines so that a certain dispute

8     has to be identified by a certain date in order to come up at

9     that monthly conference.

10          I resist completely the suggestion that disputes are

11    being brought up just so that they can be brought up when we

12    are talking about a couple of document requests which were

13    raised in December of 2024, which have been on the agenda for

14    several meetings, where we were first told to put in writing

15    that request and then get the same objection as we had when it

16    was in the letter form, and then told that somehow to deal

17    with a singular request, the days, even as of April 23, are

18    not sufficient time to have a substantive position on it.

19          So I think that a monthly schedule makes sense,

20    interim deadlines make sense, because the more structure there

21    is, the quicker this process will go.

22          (Pause)

23          THE COURT:  Okay.  So to --

24          MR. BUTERMAN:  Sorry, your Honor.

25          MR. SINGER:  Oh, we didn't hear you if your Honor was

```
 1    speaking.

 2              THE COURT:  Oh, yes.

 3              MR. BUTERMAN:  Your Honor --

 4              THE COURT:  Go ahead, Mr. Buterman.

 5              MR. BUTERMAN:  Thank you, your Honor.

 6         I don't know why Mr. Singer keeps coming back to this

 7    issue of our request for formal document demands.  It is

 8    within our right to request those.  There is nothing wrong

 9    with us doing that.  And I am sorry that Mr. Singer thought

10    that he could get away with having us be ordered to produce

11    documents without going through a formal process, but that is

12    not the way this proceeds, and we are entitled to ask that we

13    go through an appropriate process.

14         I do believe that what Mr. Singer is suggesting with

15    respect to these interim deadlines, your Honor, is only going

16    to cause more work for the parties and more of these

17    conferences where we have disputes that are not appropriate

18    and not ripe taking up our time.  We all have a lot to do.

19         By the way, your Honor, one of the things that we

20    propose in our schedule——which they don't have, for reasons

21    that I don't understand——is a deadline for substantial

22    completion of discovery.  And I think that that in and of

23    itself would obviate the need for a number of these interim

24    conferences.

25         But I really am concerned that, while we are trying
```

1    to move this case forward and get through discovery, what

2    Panini is going to continue to do is jam us and take up time

3    with all of these disputes about different topics as we are

4    going through, as we are making rolling productions, because

5    they have decided they want this document now and this

6    document later.  It is going to be such a burdensome,

7    piecemeal, inefficient process that is going to actually

8    operate to keep the parties from completing discovery.  It is

9    not going to move us any closer to actually getting this done

10    on the timetable that we all hope.

11          And one other point I do want to make——because I have

12    heard it now a couple of times, both from Mr. Boies and

13    Mr. Singer——the idea that we are trying to delay things here

14    because we are the defendant, that is just flatly wrong, both

15    factually as well as from a strategic standpoint.

16          What we are looking for is for ample opportunity to

17    defend ourselves against these claims.  And obviously, the

18    plaintiff in this matter, Panini, believes that there is a lot

19    of material that needs to be produced in order for them to

20    meet their burden.  And all we want is an opportunity to build

21    our defense so that we can make appropriate motions for

22    summary judgment and hopefully dispose of this case.

23          But they are also factually incorrect because we,

24    Fanatics, are also the plaintiffs in the case against Panini,

25    and we have claims against them that we want to be litigated

1    and we want to be moving forward.  But we want to do this all

2    in a consistent and efficient manner, and that is all we are

3    asking for.  And these interim deadlines that they are

4    advocating for now, these monthly conferences, and this short

5    period for completing all fact discovery is just inconsistent

6    with allowing the parties sufficient time to prepare this case

7    for the next steps.

8            THE COURT:  Either Mr. Singer or Mr. Boies, do you

9    have a proposed deadline by which you would like the

10   substantial completion of document production?

11           MR. BOIES:  I think --

12           MR. SINGER:  Your Honor -- go ahead.

13           MR. BOIES:  No, no.  Go ahead, Stuart.  Go ahead,

14   Stuart.

15           MR. SINGER:  Yes.  I think that, if we are talking

16   about substantial completion of document discovery, you know,

17   we have suggested March 10, 2026 as the deadline for fact

18   discovery.  I think if we go out to the end of August of this

19   year, say the end of September, that would be a kind of an

20   appropriate time for the document discovery to be made.

21           Each side has exchanged requests.  We are at the very

22   beginning of May.  The responses are due in June.  Parties can

23   then raise objections.  So I think that, certainly, a period

24   of four or five months is sufficient to get to a substantial

25   completion deadline, if that would be helpful.

1          The most important thing to us, we think, is for the

2     parties to have a firm date for completion of fact discovery,

3     so both sides know what they have to work toward.  We proposed

4     March 10, 2026.  They proposed October 28, '26.  We think that

5     March 10 is more appropriate.  That is a lot of time between

6     now and then, and it doesn't mean third parties are going to

7     be doing this over the holidays.  Each side can start putting

8     out third-party subpoenas right away so that this is not

9     something that, as Mr. Buterman feared, would be done over the

10    holidays.

11          So I think that --

12          MR. BUTERMAN:  Your --

13          MR. SINGER:  -- substantial completion can be done

14    within four to five months.

15          MR. BUTERMAN:  Your Honor, Mr. Singer just suggested,

16    after serving us two days ago with 154 separate requests that

17    encompass literally hundreds of other requests, that we should

18    substantially complete all document discovery in 120 days?

19    That is -- with all respect, that is preposterous.  That is

20    not feasible.  With these third parties, that we are going to

21    complete all documents, substantially complete all document

22    discovery in 120 days?  Your Honor, that is wholly unrealistic.

23          Your Honor, before -- as I have mentioned in the

24    past, before coming to Latham, I spent several years as a

25    chief trial attorney at the Department of Justice, where we

1    often would do merger litigations that involved seeking

2    injunctive relief, preliminary injunctions, and we didn't have

3    120-day discovery periods in a number of those.  So the idea

4    that we would do this massive litigation that they believe

5    they need all of this information for and substantially

6    complete document production in 120 days?  I am sorry.  I

7    don't see how they can serve the document request that they

8    just served on us and claim with a straight face that that can

9    all be completed in 120 days, that they are going to get all

10   the documents that they claim that they are going to need from

11   third parties in 120 days?  It is not workable, your Honor,

12   and it is not even -- it doesn't even pass a plausibility

13   test.

14        MR. BOIES:  Your Honor, this is David Boies.  Can I

15   just respond to that, just briefly?

16        I just ask the Court to use its common sense in

17   listening to what you have just heard.  The Court knows that

18   lots of cases move fast.  I mean, he talks about the

19   Department of Justice.  The most complicated case the

20   Department of Justice did in the last 30 years was the

21   *Microsoft* case.  We did all of that, all of the pretrial

22   discovery, in five months.

23        MR. BUTERMAN:  Yes, your Honor.  The *Microsoft* case

24   was 30 years ago.  Mr. Boies did that case 30 years ago before

25   there was electronic discovery.  I don't think this is

1    actually a good example of the timetable that courts use today

2    for antitrust cases.

3        We provided your Honor not with cases from 30 years

4    ago, but with cases from last year, and others, where

5    schedules have been put in that have discovery, fact

6    discovery, going for between 18 months and two years.  We have

7    provided those, your Honor.  We can provide more.

8        Boies Schiller is involved in many, many antitrust

9    litigations today, and I think they know that what Microsoft

10   and the Department of Justice did 30 years ago is not an

11   exactly good example of the way that litigation proceeds in

12   the modern age.

13       MR. BOIES:  Just to correct the record, your Honor,

14   there was a lot of electronic discovery in the *Microsoft* case,

15   as Bill Gates's e-mails demonstrate.  And I suspect that a

16   number of documents produced in that case are going to

17   substantially exceed the number of documents we are going to

18   end up producing in this case.

19       THE COURT:  Okay.  So why don't we do this.

20       MR. SINGER:  And --

21       THE COURT:  I --

22       MR. SINGER:  Your Honor, I just wanted to --

23       THE COURT:  Sure.  Go ahead.

24       MR. SINGER:  Your Honor, if it would be helpful to

25   the Court, we can submit a number of scheduling orders from

```
 1    other antitrust cases in this district that have deadlines
 2    consistent with Panini's proposal.  There is *FuboTV v. Walt*
 3    *Disney Company*, which provided for a fact discovery period of
 4    six months, there is *BCBSM v. Vyera Pharmaceuticals*, a fact
 5    discovery period of just over five months, and a number of
 6    others.  We propose schedules considerably longer than that.
 7              MR. BUTERMAN:  Yes, your Honor --
 8              THE COURT:  Okay --
 9              MR. BUTERMAN:  Your Honor -- thank you, Mr. Stuart,
10    for bringing that up.  This is Mr. Buterman.
11              The Fubo case was a preliminary injunction hearing.
12    Mr. Stuart Singer just made my point.
13              THE COURT:  So I think we -- on the schedule, we
14    don't need to provide -- we don't need to make this into,
15    like, a major issue, so I think I will give you a proposed
16    schedule in the order.
17              It sounds like with regards to Document Request No. 3
18    that there is no issue, and any responsive documents will be
19    produced by May 13.
20              It sounds like with regards to Request No. 4 that
21    Fanatics is not, you know, standing on general objections,
22    that they are going to produce what is responsive, but with,
23    perhaps, some, you know, discussion about what is a far less
24    broad request.
25              So I am going to modify our monthly conferences, but
```

1    I want to give some thought as to how to do that since, you

2    know, both sides have different views.  We do already have the

3    conference for I think it is June 5.  And since I -- I am

4    going to keep that one, but then after that, the schedule will

5    change.  I am just not sure yet how it will change.

6          But for the June 5 conference, before then, if the

7    parties can meet and confer and actually come to a -- if you

8    do come to an impasse on Document Request No. 4, then we can

9    take that up at the conference along with what I had indicated

10   earlier if there is any ripe dispute over redactions.

11         MR. BUTERMAN:  Thank you, your Honor.

12         MR. BOIES:  Thank you, your Honor.

13         MR. BUTERMAN:  For Fanatics, your Honor, just one

14   small thing.

15         We do have a conflict on June 5, and so we would,

16   with the Court's permission, like to reach out to Panini and

17   see if there is another day.  We can do it the same week, if

18   it works for your Honor.  But we just have a conflict on

19   June 5 itself in the morning, and so we would --

20         THE COURT:  Yes.  I am happy to reschedule if you

21   guys want to propose some dates.  The only thing I will say is

22   I am not available the 3rd and 4th, because I am on criminal

23   duty.  But if you could do the 2nd in the afternoon, I have

24   availability, or if that week doesn't work, you can propose

25   other dates, just not the 3rd or the 4th.

```
1             MR. BUTERMAN:  Thank you, your Honor.

2             MR. BOIES:  Thank you.  We will work that out.  We

3   will work that out.

4             THE COURT:  Okay.

5             And then I just want to flag one thing, because I

6   know, Mr. Buterman, you had sort of, in your proposals, thrown

7   out the idea that the parties would raise disputes as they

8   come up, and then we would get a conference and discuss them.

9   And I just wanted to explain if -- I don't know that I will go

10  that route, fully that route.  And the reason is because it

11  usually -- we are scheduling out now, I think, end of August,

12  early September.  Between the settlement conferences and other

13  things that come up, it is quite hard to get you in on any

14  type of -- you know, get you in quickly once you raise a

15  dispute.

16            And so I just wanted to flag why I may not go fully

17  the route of just letting letters come in, because I think, by

18  the time I get you in, it would be, like, you know, a three-

19  or four-month turnaround, which doesn't seem efficient.

20            MR. BUTERMAN:  Understood, your Honor, and we

21  appreciate that.

22            I mean, I do note that, in Panini's schedule that

23  they proposed, they had a date for -- the March date that they

24  had proposed was the deadline for filing any motion to compel

25  fact discovery.  So I really don't know why we have to have
```

1   all these interim dates.  But obviously, your Honor's schedule

2   is what is most important here.

3            And so if we, at a minimum, change the cadence, we

4   believe that that will be productive, but we will obviously

5   defer to your Honor's guidance and orders.

6            THE COURT:  Yes, and I am totally amenable to

7   changing the cadence.  I just wanted to give it some thought.

8   But I just didn't -- you know, I wanted to explain why no set

9   conferences might not be in everyone's best interest, because

10  it does take a while to get you in on the calendar.

11           MR. BUTERMAN:  Understood, your Honor.  Thank you.

12           THE COURT:  Are there any other issues?

13           MR. BUTERMAN:  None for --

14           MR. SINGER:  None from Panini.

15           MR. BUTERMAN:  -- Fanatics, your Honor.

16           MR. BOIES:  No, your Honor.

17           THE COURT:  Okay.  So then I will just wait -- I will

18  issue an order today addressing the things we discussed and I

19  will wait to hear from you on a new date for our June

20  conference.

21           MR. BOIES:  Thank you, your Honor.

22           MR. BUTERMAN:  Thank you, your Honor.

23           MR. SINGER:  Thank you, your Honor.

24           (Adjourned)

25

1

2                    C E R T I F I C A T E

3

4        I, Kristen J. Carannante, certify that the

5    transcript of the digital audio recording of the

6    proceedings in the above-entitled matter is a true

7    and accurate transcription.

8

9

10   Signature   /s/ *Kristen J. Carannante*
                 KRISTEN J. CARANNANTE, RPR, RMR, FCRR
11               (848) 459-3124
                 kjcarannante@gmail.com
12

13   Date:       May 2, 2025

14

15

16

17

18

19

20

21

22

23

24

25