# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

FANATICS COLLECTIBLES TOPCO, INC.,

      Plaintiff,

v.

                                        Case No. 1:23-cv-06895-JHR
                                        [rel: Case No. 1:23-cv-09714-JHR]

PANINI S.P.A.,

      Defendant.

_____/


## DEFENDANT PANINI S.P.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................ 1

THE SECOND AMENDED COMPLAINT'S ALLEGATIONS ................................. 3

PROCEDURAL HISTORY................................................................................. 5

LEGAL STANDARD........................................................................................ 6

ARGUMENT ................................................................................................. 7

    I.    Fanatics' repackaged bad-faith-negotiation and unfair-competition claims—which it now calls a tortious-interference-with-prospective-business-relations claim (Count 2)—should be dismissed. ................................... 7

        A.    The Complaint's allegations of wrongful conduct directed at *Fanatics* do not establish the direct interference with a *third party* required by New York law......................................................................... 8

        B.    Fanatics' conclusory allegations of unspecified lost opportunities are insufficient to state a claim for specific, prospective business with which Panini S.p.A. allegedly interfered. ................................... 11

    II.    Fanatics' conclusory allegations of tortious interference with unidentified contracts with unnamed athletes (Count 3) fail to state a claim. ........................ 13

        A.    Fanatics fails to identify the specific contracts with which Panini allegedly interfered. ..................................................... 14

        B.    Because it does not identify any specific contracts at issue, Fanatics also fails to plead details sufficient to show Panini S.p.A. knew about any relevant Fanatics contracts. ................................... 15

        C.    Fanatics concedes that none of Panini S.p.A.'s alleged conduct resulted in an actual breach of contract....................................................... 15

    III.    The Court should dismiss Fanatics' third attempt to plead Counts 2 and 3 with prejudice................................................................................ 17

CONCLUSION............................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Abbas v. Orrick, Herrington & Sutcliffe, LLP*,
  2016 WL 1071033 (S.D.N.Y. Mar. 16, 2016) .................................................... 8, 9

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*,
  2021 WL 1177532 (S.D.N.Y. Mar. 29, 2021) ...................................................... 16

*Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*,
  515 F. Supp. 2d 298 (N.D.N.Y. 2007) ................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 6, 7

*Baylis v. Marriott Corp.*,
  906 F.2d 874 (2d Cir. 1990) ................................................................................ 16

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................. 16

*Black Radio Network, Inc. v. NYNEX Corp.*,
  2000 WL 64874 (S.D.N.Y. Jan. 25, 2000) .......................................................... 10

*Cambridge Cap. LLC v. Ruby Has LLC*,
  565 F. Supp. 3d 420 (S.D.N.Y. 2021) ................................................................. 11

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ............................................................................................. 8

*Catskill Dev., LLC v. Park Place Ent. Corp.*,
  547 F.3d 115 (2d Cir. 2008) .................................................................................. 8

*Citizens United v. Schneiderman*,
  882 F.3d 37 (2d Cir. 2018) .................................................................................. 13

*Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*,
  166 F. Supp. 2d 891 (S.D.N.Y. 2001) ................................................................. 11

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
  546 F. Supp. 3d 204 (W.D.N.Y. 2021) ................................................................ 16

*Diario El Pais, S.L. v. Nielsen Co.*,
  2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) .......................................................... 8

*Envirosource, Inc. v. Horsehead Res. Dev. Co.*,
  1996 WL 363091 (S.D.N.Y. July 1, 1996) ................................................................ 12

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
  2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) .................................................. 6, 11, 12

*Five Star Dev. Resort Cmtys., LLC v. iStar RC Paradise Valley LLC*,
  2010 WL 2697137 (S.D.N.Y. July 6, 2010) ....................................................... 10, 11

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
  957 F. Supp. 477 (S.D.N.Y. 1997) ................................................................ 9, 10, 11

*Hennings v. Adams*,
  2023 WL 5530595 (S.D.N.Y. Aug. 28, 2023) ......................................................... 15

*In re Facebook Initial Pub. Offering Derivative Litig.*,
  797 F.3d 148 (2d Cir. 2015)............................................................................ 7

*In re Interest Rate Swaps Antitrust Litig.*,
  351 F. Supp. 3d 698 (S.D.N.Y. 2018)................................................................. 12

*Katz v. Travelers*,
  241 F. Supp. 3d 397 (E.D.N.Y. 2017) ............................................................... 14

*Kid Car NY, LLC v. Kidmoto Techs. LLC*,
  518 F. Supp. 3d 740 (S.D.N.Y. 2021).................................................................. 12

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006).......................................................................... 16

*Kohler Co. v. Signature Plumbing Specialties LLC*,
  2024 WL 4880069 (S.D.N.Y. Nov. 25, 2024) ....................................................... 12

*Kramer v. Pollock-Krasner Found.*,
  890 F. Supp. 250 (S.D.N.Y. 1995) ................................................................. 11

*Lama Holding Co. v. Smith Barney Inc.*,
  88 N.Y.2d 413 (1996) .............................................................................. 13

*Lesesne v. Brimecome*,
  918 F. Supp. 2d 221 (S.D.N.Y. 2013)........................................................... 14, 15

*Levine v. F.D.I.C.*,
  2 F.3d 476 (2d Cir. 1993)............................................................................ 2

*McGill v. Parker*,
  179 A.D.2d 98 (1st Dep't 1992) .................................................................... 12

*MMS Trading Co. v. Hutton Toys, LLC,*
    2021 WL 1193947 (E.D.N.Y. Mar. 29, 2021) ................................................................... 14

*Mohegan Lake Motors, Inc. v. Maoli,*
    2018 WL 11579757 (S.D.N.Y. Oct. 1, 2018) .......................................................... 10, 11

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.,*
    87 N.Y.2d 614 (1996) ............................................................................................... 15

*Nirvana, Inc. v. Nestle Waters N. Am. Inc.,*
    123 F. Supp. 3d 357 (N.D.N.Y. 2015) ........................................................................ 11

*Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.,*
    2017 WL 6459464 (E.D.N.Y. Dec. 15, 2017) ............................................................ 12

*Panini Am., Inc. v. Fanatics, Inc.,*
    2025 WL 753954 (S.D.N.Y. Mar. 10, 2025) ....................................................... 1, 6, 15

*Piccoli A/S v. Calvin Klein Jeanswear Co.,*
    19 F. Supp. 2d 157 (S.D.N.Y. 1998) ...................................................................... 10, 11

*Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP,*
    80 A.D.3d 453 (1st Dep't 2011) ................................................................................ 15

*Plasticware, LLC v. Flint Hills Res., LP,*
    852 F. Supp. 2d 398 (S.D.N.Y. 2012) .................................................................... 10, 12

*Randolph Equities, LLC v. Carbon Cap., Inc.,*
    648 F. Supp. 2d 507 (S.D.N.Y. 2009) ......................................................................... 8

*Red Fort Cap., Inc. v. Guardhouse Prods. LLC,*
    2020 WL 5819549 (S.D.N.Y. Sept. 30, 2020) ........................................................... 14

*RSM Prod. Corp. v. Fridman,*
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ....................................................................... 15

*Skyline Travel, Inc. v. Emirates,*
    2011 WL 1239783 (S.D.N.Y. Mar. 28, 2011) ........................................................... 16

*Treppel v. Biovail Corp.,*
    2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ........................................................... 17

*Tyler v. Liz Claiborne, Inc.,*
    814 F. Supp. 2d 323 (S.D.N.Y. 2011) ....................................................................... 17

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC,*
    455 F. App'x 102 (2d Cir. 2012) ........................................................................... 9, 15

*YCF Trading Inc. v. Skullcandy, Inc.*,
    2025 WL 929714 (E.D.N.Y. Mar. 27, 2025) .......................................................................... 15

## INTRODUCTION

Panini S.p.A.'s subsidiary, Panini America, sued Fanatics for monopolizing the markets for sports trading cards through exclusive deals of unprecedented length and scope with the MLB Players Association, the NFL Players Association, the NBA Players Association, and their respective leagues. Fanatics moved to dismiss. This Court denied that motion. It held that Panini America plausibly pleaded conspiracies between the MLB Players Association, the NFL Players Association, the NBA Players Association, and Fanatics in violation of the antitrust laws. *Panini Am., Inc. v. Fanatics, Inc.*, 2025 WL 753954, at *9-10 (S.D.N.Y. Mar. 10, 2025).

Fanatics retaliated against Panini's claims by filing this lawsuit. Its initial Complaint and the First Amended Complaint asserted claims for unfair competition, tortious interference with prospective business relations, and breach of the obligation to negotiate in good faith. Nearly all the allegations in these prolix documents consisted of inappropriate commentary, argument, overheated rhetoric, and defamatory statements about Panini S.p.A. and Panini America. Moreover, the few allegations pertinent to Fanatics' actual claims offered only an incoherent narrative largely centered on the implausible assertion that Panini S.p.A. devoted enormous amounts of time and resources to negotiating a multibillion-dollar transaction in bad faith.

This Court dismissed Fanatics' claims based on the failed deal negotiations. ECF No. 107. It left only Count II of the Amended Complaint (now Count 1 in the Second Amended Complaint), which alleged that Panini S.p.A. wrongfully interfered in Fanatics' efforts to recruit away Panini employees and obtain Panini's confidential information. *Id.* The Court also gave Fanatics leave to amend "its deficient Unfair Competition and Breach of the Obligation to Negotiate in Good Faith claims, Counts I and III of the Amended Complaint." *Id.* at 21.

Fanatics has done neither. Its Second Amended Complaint—besides using nearly 100 pages to take more overheated (and false) potshots at Panini S.p.A.—adds two entirely ***new*** claims:

1

Counts 2 and 3.  Both rest on conclusory and implausible allegations that do not come close to satisfying the governing New York standards.

Count 2 is titled "tortious interference with prospective business relations."  But Fanatics concedes this claim is "predicated" on "the same allegations" of supposed bad-faith negotiations by Panini S.p.A. that failed to state a claim last time around.  ECF No. 114 at 9-10.  Repackaging these allegations does not change the result.  Indeed, Count 2 is inconsistent with blackletter New York law that any alleged conduct constituting tortious interference with business relations must be conduct directed at the party or parties with which Fanatics has or seeks to have a relationship, *not at Fanatics itself*.  Yet Fanatics' misguided theory of supposed interference rests solely on allegations that Panini S.p.A. wrongfully "bait-and-switched" and "sidetrack[ed]" Fanatics by "*induc[ing] Fanatics* to enter sham negotiations."  ¶¶ 199, 200, 202 (emphasis added).[1]  These allegations are quintessentially insufficient.  The makeweight nature of Count 2 is also clear based on the fact Fanatics does not even identify a single *specific* prospective business relationship that it claims was prejudiced.  At most, Fanatics cites an actual *agreement* with the NBA Players Association, ¶ 129, which, by definition, cannot give rise to a claim based on interference with *prospective business relations* (and, in any event, predates the preliminary deal between Panini S.p.A and Fanatics that was allegedly a sham).[2]  Beyond that, Fanatics offers only generalized references to the possibility of "thousands" of potential "deals" with unidentified athletes.  ¶ 40;

---

[1] All citations to "¶ __" are to the Second Amended Complaint, ECF No. 120.  Many of these allegations "transcend the facts."  *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993).  Still, Panini S.p.A. treats them as true for this briefing.  But it reserves all rights to seek fees or other relief as appropriate.

[2] For many reasons, the allegations regarding the NBA Players Association agreement also could not support a claim for tortious interference with contract.  Rightly, Count 3 does not even seek to claim tortious interference with the NBA Players Association agreement.

*see* ¶¶ 129-31. These conclusory allegations are also clearly insufficient under New York law and are an independently sufficient basis to dismiss this claim.

Fanatics' second new claim, Count 3 for "tortious interference with contractual business relations," is both entirely conclusory and based solely on "information and belief" speculation about how Panini S.p.A. supposedly interfered with contracts Fanatics secured with football prospects over the last couple of years. As a matter of rhetoric, Fanatics suggests "thousands" of potential deals with college athletes could be implicated. But the Second Amended Complaint does not identify a single athlete with a relevant contract, let alone any relevant contract's major terms or that Panini S.p.A. knew about the terms of the unidentified contracts with the unnamed athletes. Equally egregiously, the Second Amended Complaint does not even allege that any (unidentified) athlete breached any of the (unidentified) contracts supposedly at issue. For all these reasons, this claim too does not come close to stating a claim under blackletter New York law standards.

In sum, Panini S.p.A. respectfully submits that the Court should reject Fanatics' continued efforts to hijack this case with press releases dressed up as conclusory legal claims that fail for multiple independent reasons. Having now tried three times to state a claim against Panini S.p.A., each of Fanatics' new claims should be dismissed with prejudice.

### THE SECOND AMENDED COMPLAINT'S ALLEGATIONS

Panini S.p.A. built its business "through a series of long-term exclusive contracts" with the "players' associations and leagues" for basketball and football, which are set to expire in 2025 and 2026, respectively. ¶¶ 23, 42. Panini S.p.A. pairs these "long-term exclusive privileges with the players associations and leagues," ¶ 3, with other deals with individual players for their autograph rights, ¶ 66. Rookie players are important on this front. They are "sought after for the same reason

first editions of novels are valuable—a player only has one rookie year, never to repeat it." ¶ 130; *see also* ¶ 162.  Panini S.p.A. has operated this business for "16 years."  ¶ 3.

Everything changed in 2021.  At that time, Fanatics leveraged its "established relationships with leagues and players' associations through its sports merchandise business" to enter the sports trading card business.  ¶ 2.  It obtained 10- or 20-year, exclusive, trading-card licenses with MLB, the NBA, the NFL, and their respective players associations for "after licenses held by Panini were set to expire in 2025-2026."  ¶¶ 41, 89, 116.  So Panini S.p.A. "lost its key licenses"—football and basketball—to Fanatics for the coming decades.  ¶ 164.

Another trading-card company did, too—Topps, which held MLB and MLB Players Association licenses at the time.  ¶¶ 164, 180.  Fanatics' exclusive baseball deals "ended Topps' 70-year run as the licensee for baseball cards."  ¶ 89.  With no more future, Topps immediately sold itself to Fanatics in late 2021.  ¶¶ 89, 103.  That deal allowed Fanatics to sell "baseball cards immediately, instead of having to wait until its own deals with MLB (in 2026) and the MLBPA (in 2023) began."  ¶ 89.

Fanatics wanted the same outcome with Panini S.p.A.  Only weeks after the Topps deal, in February 2022, the two companies began discussing a deal for "the exclusive licenses currently held by Panini."  ¶¶ 22, 116.

Around this same time—"spring 2022"—Fanatics "was in the process of negotiating various deals" with "NBA prospects" and "NFL prospects."  ¶ 197.  Consistent with its historical business practices, Panini S.p.A. was, too.  *See* ¶ 130.  The "top three 2022 NFL and NBA draft picks" went Panini's way.  ¶ 130.  Fanatics was also negotiating yet another licensing agreement with the NBA Players Association—this time for the "present-day."  ¶ 129.  And "prior to and during the negotiations with Panini," Fanatics "agreed to" that deal.  ¶ 129.

A few months later, in "June 2022," Fanatics "reached a preliminary agreement" with Panini S.p.A.  ¶ 119.  "Panini would terminate the remaining years on its licenses with the NFL, the NBA," and "their respective players' associations."  ¶ 119.  Like the Topps baseball deal, this deal would "allow[] Fanatics Collectibles to accelerate the start date of the" football and basketball "licenses it had already been awarded."  ¶ 13.  For the next eight months after June 2022, "the early termination negotiations" "dragged out."  ¶ 14.  And the "talks fell apart" in "late March and early April 2023."  ¶ 145.

Around the same time, and even though Panini S.p.A. held exclusive licenses with the NBA and NFL for two and three more years, respectively, and was pursuing the same "football and basketball prospects" as it always had, Fanatics went ahead and "struck key," exclusive deals with those same prospects—precluding them from signing with Panini S.p.A.  ¶ 91.  And just a few months later, both the NFL Players Association "and WWE sought to exercise their early termination rights to end their contracts with Panini and accelerate the start of their licenses with Fanatics Collectibles."  ¶ 82.

"Acceleration" of Fanatics' licenses was thus attempted on four fronts:  (1) the baseball licenses through a deal with Topps, ¶ 89; (2) the football and basketball licenses through a deal with Panini, ¶¶ 13, 119; (3) the football license through the NFL Players Association's trying to terminate Panini, ¶ 82; and (4) the wrestling license through WWE's trying to terminate Panini, ¶ 82.

## PROCEDURAL HISTORY

Panini S.p.A. litigated against WWE, defeated its temporary-restraining-order attempt, and WWE thereafter agreed to settle.  *Panini S.p.A. v. World Wrestling Ent., Inc.*, Case No. 1:23-cv-08324 (S.D.N.Y.).  Panini America defeated the NFL Players Association's termination attempt.  *Panini Am., Inc. v. Nat'l Football League Players, Inc.*, Case No. 1:24-cv-06766 (S.D.N.Y.), ECF

No. 11.  Panini America also sued Fanatics and recently defeated Fanatics' motion to dismiss—prompting this Court to hold, among other things, that Panini had plausibly alleged conspiracies between the MLB Players Association, the NFL Players Association, the NBA Players Association, and Fanatics in violation of the antitrust laws.  *Panini Am.*, 2025 WL 753954, at \*9-10.

In response to that lawsuit against it, Fanatics filed this lawsuit against Panini S.p.A. Fanatics asserted claims for unfair competition based on Panini's allegedly distracting it through deal negotiations, breaching an obligation to negotiate that deal in good faith, and tortiously interfering with Fanatics' hiring Panini's employees.  ECF No. 1 at 63-66.

Panini moved to dismiss.  ECF No. 34.  Fanatics amended its complaint in response to that motion.  ECF No. 39.  After briefing, this Court dismissed Fanatics' claims for unfair competition and bad-faith deal negotiations.  ECF No. 107.  But the Court allowed Fanatics to move to amend "its deficient Unfair Competition and Breach of the Obligation to Negotiate in Good Faith claims, Counts I and III of the Amended Complaint."  *Id.* at 21.

Rather than amend the dismissed claims, Fanatics has repackaged those claims as a claim for tortious interference with prospective business relations and added a new claim for tortious interference with contract.  *See* ECF Nos. 114, 120.  Both should be dismissed.

## LEGAL STANDARD

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining" that is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at \*2 (S.D.N.Y. Dec. 30, 2020).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678.  The Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  *In re Facebook Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015) (cleaned up).

## ARGUMENT

I.    **Fanatics' repackaged bad-faith-negotiation and unfair-competition claims—which it now calls a tortious-interference-with-prospective-business-relations claim (Count 2)—should be dismissed.**

Fanatics' First Amended Complaint alleged that "Panini did not intend to finalize a deal [with Fanatics] in good faith and instead used the potential of a deal to 'stall' Fanatics, '[running] the clock' on Fanatics' ability to negotiate with potential licensors for rights it would be able to exercise during the interim period before its own licensing agreements became effective" such that, ultimately, "the window for Fanatics to make alternative deals with third parties had closed, and Fanatics, consequently, lost significant revenue opportunities."  Mem. Order, ECF No. 107 at 3 (second alteration in original).  The Court held these allegations did not state a claim for unfair competition or breach of the implied covenant of good faith and fair dealing.  *Id.* at 7, 13-14.

Fanatics' new pleading tells the same story, alleging that Panini S.p.A. supposedly "bait-and-switched Fanatics with a sham prospect of" a deal for Panini S.p.A.'s exclusive licenses to "sidetrack[]" Fanatics from pursuing "deals with the" NBA Players Association, "NBA prospects, and NFL prospects in the spring of 2022." ¶¶ 199, 200, 202.  Panini S.p.A. did this, Fanatics' story goes, so that Panini S.p.A.'s subsidiary in the United States, non-party Panini America, could sign "the same 2022 NBA and NFL prospects" and thus "directly benefit[]" Panini S.p.A. ¶¶ 130, 199-203.  "By misappropriating the time, effort, and attention of Fanatics' leadership," Fanatics asserts that "Fanatics had less time, opportunity, and incentive to pursue" those deals.  ¶ 204.

The Second Amended Complaint contends that these alleged facts give rise to a claim for tortious interference with prospective business relations that Fanatics never thought to include in

its initial Complaint or its First Amended Complaint.  There is no cognizable claim for these repackaged factual allegations.  Tortious-interference-with-prospective-business claims "have a limited scope and an extremely high pleading standard." *Diario El Pais, S.L. v. Nielsen Co.*, 2008 WL 4833012, at *7 (S.D.N.Y. Nov. 6, 2008).  Four "conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., LLC v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).  Here, Fanatics' attempt to plead tortious interference with prospective business relations suffers from two fatal flaws that require dismissal.[3]

**A.    The Complaint's allegations of wrongful conduct directed at *Fanatics* do not establish the direct interference with a *third party* required by New York law.**

A tortious-interference plaintiff must plead facts that plausibly establish "interference ***with a third party***." *Randolph Equities, LLC v. Carbon Cap., Inc.*, 648 F. Supp. 2d 507, 523 (S.D.N.Y. 2009) (emphasis added).  Such interference must be "direct." *Id.*  That is, to directly interfere with a third party, "the defendant must direct some activities ***towards the third party*** and ***convince the third party*** not to enter into a business relationship with the plaintiff." *Id.* (emphasis added).  In other words, "***conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship***." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004) (emphasis added).  And that conduct must be to "convince" the third party "not to enter into a business relationship"

---

[3] To be clear, while summary dismissal of Count 2 is required based solely on the inadequacies discussed below, this claim also fails to adequately plead the other required elements of a tortious-interference-with-business-relations claim.  For example, the Second Amended Complaint also does not establish wrongful means or even show injury.  While Panini S.p.A. does not burden the Court with additional argument on these points, it reserves all rights to the extent these issues later become relevant.

with the plaintiff.  *Abbas v. Orrick, Herrington & Sutcliffe, LLP*, 2016 WL 1071033, at *4 (S.D.N.Y. Mar. 16, 2016).

Ignoring this settled law, Fanatics grounds Count 2 on the premise that Panini S.p.A. directed allegedly wrongful activities ***towards Fanatics*** to distract ***Fanatics***.  Fanatics claims that Panini S.p.A. "engaged with Fanatics" about a potential deal for Panini S.p.A.'s licenses, ¶ 116, and then managed to dupe ***Fanatics*** and its "top-tier lawyers and other advisors," ¶ 122, into "a preliminary agreement," ¶ 130, in June 2022.  *See also* ¶¶ 1, 4, 13, 19, 119.  After reaching that agreement in June 2022, Fanatics says it "paused pursuing" other deals with third parties and that by the time deal talks with Panini S.p.A. failed, the "window to acquire" those deals "had closed." ¶¶ 130, 200.  Throughout, Fanatics blames its failure to obtain these deals entirely on Panini S.p.A.'s allegedly wrongly "induc[ing] ***Fanatics***" into entering negotiations with Panini S.p.A. and "stringing along ***Fanatics***" in those negotiations.  ¶¶ 201-02 (emphases added).

This focus on alleged conduct by Panini S.p.A. directed at ***Fanatics*** is dispositive, as shown by the Second Circuit's decision in *Valley Lane Industries Co. v. Victoria's Secret Direct Brand Management, LLC*, 455 F. App'x 102 (2d Cir. 2012).  There, although the plaintiff alleged the defendant committed a laundry list of business torts, that "conduct was directed at" the plaintiff "rather than" any third party.  *Id.* at 106-07.  Thus, the "allegations could not" support a tortious-interference-with-business-relations claim.  *Id.*  Likewise, here, Fanatics focuses entirely on "conduct" by Panini S.p.A. "directed at" Fanatics—"actions to induce Fanatics to enter sham negotiations," ¶¶ 201-02—"rather than" any third party.

This Court's decisions are similarly on point.  In *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477 (S.D.N.Y. 1997), for example, the plaintiff alleged that the defendant's "baseless litigation against" it meant that the plaintiff "was no longer able to divert its resources

towards the consummation of its business relationships." *Id.* at 482. This Court rejected this indirect, distraction, diversion-of-resources theory of tortious interference as "bizarre." *Id.* at 483.

Similarly in *Five Star Development Resort Communities, LLC v. iStar RC Paradise Valley LLC*, 2010 WL 2697137 (S.D.N.Y. July 6, 2010), the plaintiff alleged the defendant's conduct "compromised" the plaintiff's ability to fulfill its other obligations with third parties. *Id.* at *4. But the plaintiff did not allege the defendant "interfered directly with any such third party." *Id.* So this Court dismissed. *Id.*

And in *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157 (S.D.N.Y. 1998), the defendant sent surplus clothing to "lower-end stores" in another country, which the plaintiff claimed caused its "upper end" clients in that country not to buy similar clothing from it. *Id.* at 167. This Court rejected that "indirect relationship" theory. *Id.* The "defendants' alleged conduct concededly was not directed towards" the "third party" with whom the plaintiff claimed to have a prospective business relationship. *Id.* at 167-68. Other examples abound.[4]

Fanatics' theory is no different than the failed theories in these cases. It says Panini S.p.A. created "a diversion" with "sham negotiations" that tied "Fanatics' leadership" up "in dead-end negotiations," which "misappropriat[ed]" Fanatics' "time, opportunity, and incentive[s]" to pursue other business. ¶¶ 200, 202, 204. In other words, Fanatics "was no longer able to divert its resources towards the consummation of" the "business relationships" it now says it wanted, *Fonar*,

---

[4] *See, e.g.*, *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) ("Plaintiff only alleges conduct directed at itself, not any conduct Defendant directed at Plaintiff's customers or other businesses. This is also fatal to Plaintiff's cause of action here."); *Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 11579757, at *7 (S.D.N.Y. Oct. 1, 2018) (denying motion to amend for failure to plead the defendant "directed any activities toward any third parties to convince them not to enter into a business relationship with" the plaintiffs); *Black Radio Network, Inc. v. NYNEX Corp.*, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000) (dismissing for failure to plead the defendant "directed any conduct towards plaintiff's customers").

957 F. Supp. at 482, because its leadership's ability was "compromised," *Five Star*, 2010 WL 2697137, at *4. And the "sham negotiations" Panini S.p.A. allegedly instigated "concededly was not directed towards" any prospect. *Piccoli*, 19 F. Supp. 2d at 167. It was directed towards Fanatics, who thus fails to plead the required direct interference to state a claim here.

## B. Fanatics' conclusory allegations of unspecified lost opportunities are insufficient to state a claim for specific, prospective business with which Panini S.p.A. allegedly interfered.

Count 2 also fails because it does not "allege that [Fanatics] was actually and wrongfully prevented from entering into or continuing in a *specific* business relationship." *Evliyaoglu*, 2020 WL 7774377, at *2. "Failure to identify a specific business relationship with a third party is a 'fatal' deficiency to pleading tortious interference." *Id.* at *2. This Court and others in the Second Circuit routinely dismiss generalized allegations about potential business relations as insufficiently specific.

For example, this Court, other courts in this Circuit, and New York state courts have rejected tortious-interference claims that referred only generally to prospective business with:

- certain product resellers "without identifying any particular" reseller, *Com. Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 166 F. Supp. 2d 891, 898 (S.D.N.Y. 2001);

- "potential contracts with galleries and dealers" and "unnamed individuals and entities" without specifying a "particular, existing business relationship," *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995);

- "automobile dealerships, manufacturers, and brokers … without identifying any particular automobile dealerships, manufacturers, and brokers," *Mohegan Lake Motors*, 2018 WL 11579757, at *7;

- "several supermarkets" without identifying a specific one, *Nirvana, Inc. v. Nestle Waters N. Am. Inc.*, 123 F. Supp. 3d 357, 380 (N.D.N.Y. 2015);

- "six potential investors" without "providing some identifying information to determine that there were in fact such third parties," *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 474 (S.D.N.Y. 2021);

- "drivers" without identifying a "specific business relationship," *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 762 (S.D.N.Y. 2021);

- "customers" without "identify[ing] a single third-party," *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, 2017 WL 6459464, at *10 (E.D.N.Y. Dec. 15, 2017), or "*specific* business relationships," *Plasticware*, 852 F. Supp. 2d at 402, or "any sufficiently particular allegation ... with a specific" one, *McGill v. Parker*, 179 A.D.2d 98, 105 (1st Dep't 1992), or "a specific contract or business relationship," *Envirosource, Inc. v. Horsehead Res. Dev. Co.*, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996);

- "numerous buy-side customers," *In re Interest Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 709-10 (S.D.N.Y. 2018); and

- "Turkish manufacturers" without alleging "what the particular business opportunities were and whether they were with" specifically named Turkish manufacturers "or some other manufacturer," *Evliyaoglu*, 2020 WL 7774377, at *2.

Fanatics' claim here is just as generic as the failed ones in these cases and should suffer the same fate. Fanatics emphasizes that "the opportunity for" trading "card creators" like itself "to sign" "college athletes" has grown "dramatically" and that it can "now reach deals with thousands of individual college athletes before they join a professional players' association." ¶ 40. Then it says that "prior to and during the negotiations with Panini" S.p.A., it was "pursuing specific exclusive licenses" with some indeterminate, unnamed subset of those thousands of college athletes trying to make it to the NBA and NFL. ¶ 129.

Fanatics later grumbles over non-party Panini America's "sign[ing] the top three 2022 NFL and NBA draft picks." ¶ 130. But it never says those six players were who it had prospective business with. It merely alleges—without "connect[ing] the dots," *Kohler Co. v. Signature Plumbing Specialties LLC*, 2024 WL 4880069, at *6 (S.D.N.Y. Nov. 25, 2024)—that it was developing relationships with some unnamed set of prospects, that it stopped building those relationships, and that Panini America signed the top three picks in each of the NBA and NFL

drafts. ¶¶ 129-31. Just like this Court's many other cases rejecting claims for tortious interference with prospective business relations with generic third parties, Fanatics' claim here over the unnamed prospects should be rejected, too.[5]

## II. Fanatics' conclusory allegations of tortious interference with unidentified contracts with unnamed athletes (Count 3) fail to state a claim.

Fanatics alleges "[u]pon information and belief" that Panini S.p.A. tried to induce unnamed football players to breach their contracts with Fanatics by offering them—again "[u]pon information and belief"—"more money" and "legal and advisory aid." ¶ 210. For starters, a "litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). In any event, these allegations fail to state a claim because even setting aside their conclusory nature, they do not satisfy the elements of this claim.

Tortious interference with contract requires pleading (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of that contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). The Second Amended Complaint does not satisfy these elements, including because it fails to identify the specific contracts at issue, to plead facts showing that Panini knew about them and their terms, and to plead that any of them were actually breached.

---

[5] Separate from the unspecified prospects that are the target of Count 2, Fanatics does identify the NBA Players Association with specificity. ¶ 129. But Fanatics is express it "agreed" to a contract with the NBA Players Association, ¶ 129, which, by definition, brings it outside the scope of Fanatics' claim for tortious interference with prospective business relations. And, rightly, Fanatics does not even try to assert that Panini S.p.A. somehow interfered with this alleged contract in Count 3.

### A.    Fanatics fails to identify the specific contracts with which Panini allegedly interfered.

New York law requires "factual specificity in pleading claims of tortious interference with contract." *Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 315 (N.D.N.Y. 2007). A plaintiff must "single out a particular contract" it says was interfered with. *Id.* Or, put differently, to state a claim for tortious interference with contract, a "plaintiff must identify the *specific* third-party contract with which the defendant allegedly interfered." *MMS Trading Co. v. Hutton Toys, LLC*, 2021 WL 1193947, at *12 (E.D.N.Y. Mar. 29, 2021) (emphasis added).

"Courts in this District" therefore "have consistently dismissed tortious interference with contract claims where," as here, "no specific contract or parties to the alleged contract have been plead[ed]." *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 2020 WL 5819549, at *6 (S.D.N.Y. Sept. 30, 2020). For example, in *Red Fort*, the plaintiff sued over interference with financing a transaction. *Id.* The plaintiff merely pointed to alleged interference with "unnamed third parties who were going to" provide financing. *Id.* It did not "point to any particular contract with specific third-party financial institutions or individuals." *Id.* So this Court dismissed. *Id.*

Likewise, in *Katz v. Travelers*, 241 F. Supp. 3d 397 (E.D.N.Y. 2017), the plaintiff alleged interference with its contracts with certain "insurance carriers and third party ... medical companies." *Id.* at 408. Because the plaintiff did not cite to "specific instances," the court dismissed the claim. *Id.* Failing "to identify specific entities with which" the plaintiffs "had contracts" was "fatal to their tortious interference with a contract cause of action." *Id.*

So too here. On the one hand Fanatics touts its ability to "reach deals with thousands of" athletes "before they join a professional players' association." ¶ 40. But at the same time, Fanatics' pleading rests on "unspecified third parties," *Lesesne v. Brimecome*, 918 F. Supp. 2d

221, 227 (S.D.N.Y. 2013), without identifying which of these thousands of athletes were the "several" "college athletes" at issue in its claim.[6]  Count 3 fails for this reason alone.[7]

### B.  Because it does not identify any specific contracts at issue, Fanatics also fails to plead details sufficient to show Panini S.p.A. knew about any relevant Fanatics contracts.

Since Fanatics doesn't even specify the contracts at issue (let alone their terms), it naturally doesn't plead facts establishing that Panini S.p.A. "had specific knowledge of the terms of the contract[s]" with which it says Panini interfered.  *Panini Am.*, 2025 WL 753954, at *12.  Instead, it only recites formulaically that "exclusive deals between the athletes and Fanatics … were … known to Panini."  ¶ 141.  But conclusory "allegations" like these that "merely state without any support" that the defendant "knew" of a "contractual relationship" are insufficient.  *YCF Trading Inc. v. Skullcandy, Inc.*, --- F. Supp. 3d ---, 2025 WL 929714, at *16 (E.D.N.Y. Mar. 27, 2025).

### C.  Fanatics concedes that none of Panini S.p.A.'s alleged conduct resulted in an actual breach of contract.

"Ever since tortious interference with contractual relations made its first cautious appearance in the New York Reports," the New York Court of Appeals "has repeatedly linked" its "availability" with "a breach of contract."  *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 620 (1996).  The Second Circuit, in turn, "has adopted a formalistic approach to determining whether a plaintiff has properly alleged breach of a contract in a tortious interference claim."  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 409 (S.D.N.Y. 2009).  It and the New

---

[6] These allegations also do not give Panini S.p.A. "fair notice" of the claim against it under Federal Rule of Civil Procedure 8.  *See Hennings v. Adams*, 2023 WL 5530595, at *2 (S.D.N.Y. Aug. 28, 2023).

[7] Given that Fanatics does not even identify the athlete counterparties that form the basis for this claim, it also has not alleged the details that this claim would require.  That is, Fanatics does not include, with "nonconclusory language," *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453, 454 (1st Dep't 2011), "factual allegations regarding, *inter alia,* the formation of the contract, the date it took place," "the contract's major terms," *Valley Lane*, 455 F. App'x at 104, and "the specific provisions upon which liability is predicated," *Pitcock*, 80 A.D.3d at 454.

York Court of Appeals "have consistently emphasized the necessity of an *actual breach* by the third party." *ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, 2021 WL 1177532, at *19 (S.D.N.Y. Mar. 29, 2021) (collecting cases). And they have consistently shut down attempts by litigants to wiggle out of this requirement. A plaintiff must "literally allege that the identified contract was breached." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 213 (W.D.N.Y. 2021). Alleging a third party "walked away" or "abandoned" a contract, for example, is not sufficient. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006). The plaintiff must allege that the "terms of a contract" were actually "violated," *id.*, and that "the underlying contract has been breached," *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990).[8]

Fanatics does the opposite. It says that no one accepted Panini S.p.A.'s offers and that Fanatics "preserve[d]" all "contracts," but that (1) a further, unnamed subset out of the initial set of unnamed athletes asked Fanatics for more money; (2) Fanatics obliged; and (3) had Fanatics not done so, an even further sub-subset of "certain" of the unnamed athletes "would have breached" their contracts. ¶¶ 142, 211-12. In other words, according to the Second Amended Complaint itself, ***none of the unidentified athletes supposedly at issue breached any contract with Fanatics***. Fanatics just ***speculates*** that they "would have" breached in an alternative universe. This speculation does not satisfy the essential requirement of New York law that the plaintiff allege "actual breach."

---

[8] And even then the plaintiff must do more than state "in a conclusory manner that an agreement was breached." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008); *see also Skyline Travel, Inc. v. Emirates*, 2011 WL 1239783, at *5 (S.D.N.Y. Mar. 28, 2011) (allegations "there were breaches, interferences ... [and] total failures of performance of contractual duties" are "insufficient to plead" actual breach). Fanatics does not even get that far, though.

III.    **The Court should dismiss Fanatics' third attempt to plead Counts 2 and 3 with prejudice.**

Where, as here, a "plaintiff has already amended" its "complaint twice, dismissal with prejudice is appropriate." *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 344 (S.D.N.Y. 2011). Fanatics has already tried three times to state a claim against Panini S.p.A. in what was always a public-relations stunt in response to Panini America's lawsuit against it. *See* ECF Nos. 1, 39, 120. "[T]wo bites" is usually enough. *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005). Three certainly is. Counts 2 and 3 for tortious interference with prospective business and tortious interference with contract, respectively, should be dismissed with prejudice.

## CONCLUSION

For the above reasons, Panini S.p.A. requests that the Court dismiss Counts 2 and 3 of Fanatics' Second Amended Complaint—with prejudice.

June 6, 2025                                   Respectfully submitted,


                                              /s/ David Boies
                                              David Boies
                                              Eric Brenner
                                              **BOIES SCHILLER FLEXNER LLP**
                                              55 Hudson Yards
                                              New York, NY 10001
                                              Telephone: (212) 446-2300
                                              dboies@bsfllp.com
                                              ebrenner@bsfllp.com

                                              Stuart H. Singer*
                                              Sabria A. McElroy*
                                              Jason Hilborn*
                                              **BOIES SCHILLER FLEXNER LLP**
                                              401 E. Las Olas Blvd., Suite 1200
                                              Fort Lauderdale, FL 33301
                                              Telephone: (954) 356-0011
                                              ssinger@bsfllp.com
                                              smcelroy@bsfllp.com
                                              jhilborn@bsfllp.com

                                              Ursula Ungaro*
                                              **BOIES SCHILLER FLEXNER LLP**
                                              100 SE 2nd Street Suite 2800
                                              Miami, FL 33131
                                              Telephone: (305) 539-8400
                                              uungaro@bsfllp.com

                                              James P. Denvir*
                                              Richard A. Feinstein*
                                              **BOIES SCHILLER FLEXNER LLP**
                                              1401 New York Ave, NW
                                              Washington, DC 20005
                                              Telephone: (202) 237-2727
                                              jdenvir@bsfllp.com
                                              rfeinstein@bsfllp.com

                                              *Counsel for Panini S.p.A.*

                                              **pro hac vice*

## CERTIFICATE OF COMPLIANCE

I certify that the number of words in the foregoing memorandum of law complies with Local Rule 7.1(c).  The memorandum of law contains 5,451 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certification exempted by Local Rule 7.1(c), as counted by Microsoft Word.

Dated:  June 6, 2025                              */s/ David Boies*
                                                                    David Boies