# EXHIBIT C



July 18, 2025

**<u>VIA ELECTRONIC MAIL</u>**

Alicia Jovais
Lawrence Buterman
Latham & Watkins, LLP
1271 Avenue of the Americas
New York, NY 10020
alicia.jovais@lw.com
lawrence.buterman@lw.com

Kathryn Bonacorsi
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
kathrynbonacorsi@quinnemanuel.com

> **Re:** ***Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS –**
> **Panini's Second Requests for Production**

Counsel:

We write regarding Defendants' June 6, 2025 Responses and Objections to Panini's Second Set of Requests for Production ("Responses") to follow-up on issues raised in our June 24, 2025 letter and discussed during the July 10, 2025 meet and confer.

Fanatics responded to a large portion of Panini's requests by asserting generic relevance, overbreadth, and burden objections, and then either stating that it would not produce documents or that it was willing to "meet and confer." As you are aware, in our June 24 letter, we proposed a chart process for resolving disputes over these Requests. Fanatics did not agree to this proposal and requested that Panini attempt to group the areas of dispute by issue. In an effort to accommodate that request, streamline the meet and confer process, and efficiently identify any issues for which we are at an impasse, we are providing this letter.[1]

We are available to meet and confer regarding some or all of the items discussed below during our 2 p.m. call on Monday. We are in receipt of your email from this evening, July 18, suggesting that we move next week's meet and confer to Tuesday or Wednesday. We think we should keep the meet and confer on the calendar for Monday to continue our discussions and avoid

---

[1] While we have endeavored to identify the key remaining areas of dispute, we reserve the right to raise deficiencies with Fanatics' responses and objections to Requests not discussed in this letter or our prior correspondence.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



additional delays. Please also confirm your availability later in the week to discuss the existing issues and the issues in this letter during the times below:

- **July 22 between 10 a.m. – 12:30p.m. and 1:30 – 5 p.m.**
- **July 23 between 10 a.m. – 12:30 p.m. and 1:30 – 5 p.m.**
- **July 24 between 10 a.m. – 12 p.m. and 1 – 5 p.m.**
- **July 25 between 10 a.m. and 4 p.m.**

We are providing our positions in writing so that you can be prepared to discuss the issues during whatever time we set for the meet and confer. To facilitate the conversation, we ask that you provide your position on each of the bolded, italicized requests below prior to the meet and confer, and, in any event, no later than Friday (7/25) so that both sides are clear as to which issues remain in dispute and need to be briefed in advance of the discovery conference.

## I.    <u>Improper Confidentiality Objections</u>

Fanatics has raised general and specific objections to Panini's Requests based on "confidentiality agreements with third parties," Fanatics' claim that "they seek confidential, proprietary, or trade secret information of Fanatics or third parties," and its claim that the Requests seek "information that is subject to other protective orders, privacy laws and regulations, non-disclosure agreements, or other confidentiality undertakings." Fanatics cannot withhold discoverable documents on these grounds. The law is clear that confidentiality agreements with third parties do not excuse a litigant from producing discoverable materials. *See Hicks v. Leslie Feely Fine Art, LLC*, 2021 WL 3617208, at *4 (S.D.N.Y. Aug. 13, 2021) ("Even documents that are subject to third-party confidentiality agreements or understandings may be discoverable under Rule 26."); *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2004 WL 848171, at *1 (S.D.N.Y. Apr. 21, 2004) ("American Express' concern that production of the subpoenaed documents would compromise its trade secrets and other confidential information is obviated by the presence of the confidentiality agreement and protective order in this action.").

*Please confirm that you are not relying on confidentiality objections to withhold responsive documents.*

## II.    <u>Objections That Can Be Addressed Through Search Terms</u>

Below, we have identified groups of Requests that Fanatics has resisted on relevance, overbreadth, vagueness, and/or duplication grounds and explained why those objections are unfounded or, at the very least, can be addressed through the application of reasonable search protocols. In some instances, we have also narrowed or clarified Requests.

### A. Overbroad and Duplication Objections That Can Be Addressed Through Search Terms

- **Requests 40-42, 44, and 47 (documents relating to the expected financial performance, value, and financial terms of the Exclusive Licenses):** Fanatics has agreed to produce documents responsive to Request 39, which seeks "All Documents concerning financial



projections, business plans, or forecasts related to Your expected sales, revenues, profits, or returns on investment under the Exclusive License Agreements." However, it has asserted that Requests 40-42, 44, and 47 are duplicative of Request 39 and agreed to produce documents responsive to those separate Requests "solely to the extent it has agreed to produce those Documents in response to other Requests." While we included each of these Requests to be clear as to the scope of information requested, we note that Request 47, in particular, is distinct from 39—that Request is not limited to forecast documents or financial models, and includes documents discussing or analyzing the financial terms of the Exclusive License Agreements. In any event, Fanatics' overbreadth and duplication objections can be resolved with search terms if Fanatics agrees to produce all documents responsive to Requests 39-42, 44, and 47 and confirms that it is not relying on its response to Requests 40-42, 44, or 47 to withhold documents it deems responsive to those Requests but not responsive to Request 39.

- **Request 48 (documents concerning use of customer data):** These documents are relevant to the issues of market power, competitive effects, market definition, and Fanatics' purported procompetitive justifications. Any overbreadth and burden concerns can be resolved with reasonable search terms.

- **Requests 49, 50, 54, 56, 62, and 63 (documents concerning NIL and Autograph agreements with football and basketball players):** Fanatics' offer to produce only "documents sufficient to show" the agreements requested by Requests 54 and 56 and Fanatics' actual use on NFL cards of NFL Player NIL or Autographs in response to Request 49 is inadequate. Limiting production to "documents sufficient to show" for Request 49 would deprive Panini of the full scope of discovery relevant to the allegations in paragraphs 163-169 of the Amended Complaint. As to the agreements, the actual agreements are necessary to evaluate the terms of the rights Fanatics has obtained. Fanatics does not have the right to unilaterally decide which terms to disclose. Fanatics' refusal to produce documents responsive to Request 50 and its agreement to "produce Documents … solely to the extent it has agreed to produce those Documents in response to other Requests" in response to Requests 62 and 63 is also improper. The requested documents are clearly relevant, *see, e.g.* Am. Compl. ¶¶ 163-169 and Dkt. 164 at 32, and Fanatics' overbreadth and burden objections can be resolved with reasonable search terms.

- **Requests 83, 89, 90, and 92 (documents concerning Fanatics Live, Retailer, and Card Shops):** The documents sought by these Requests bear directly on Panini's Section 2 claims and its allegations that part of Fanatics' anticompetitive strategy is to control and restrict access to key distribution channels and market participants, including by forcing Case Breakers to migrate to Fanatics Live, Am. Compl. ¶¶ 205, 207, and renegotiating the terms of agreements with retailers and local card shops, *id.* ¶¶ 195, 200-204, 228. Any concerns that these Requests are overly broad or unduly burdensome can be resolved with reasonable search terms.

- **Requests 112-116 (documents concerning equity and governance rights):** Fanatics has improperly refused to produce documents responsive to Requests 113-115 and limited its agreement to produce documents responsive to Requests 112 and 116 "solely to the extent



it has agreed to produce those Documents in response to other Requests." These Requests are distinct from other requests concerning equity and governance rights in that they are not limited to the receipt or provision of such rights in connection with the Exclusive Licenses. The information sought by these Requests is critical to, among other things, understanding the competitive dynamics, potential conflicts of interest, and the motivations, inducements, and incentives that led to the Exclusive License agreements.  As noted in our July 17 email, as a compromise, and while reserving all rights, for Requests 112-116, Panini is willing to accept "documents sufficient to show" the requested information for the period prior to when Fanatics first began considering entering the market for the collectibles products Fanatics contends may be relevant, subject to Fanatics providing confirmation of that date with a declaration.

- **Requests 118, 121, 124, 125 (documents concerning GCP):** The documents sought by these Requests are directly relevant to Panini's Section 2 claims, tortious interference claim, and Clayton Act claim, including Panini's allegations that Fanatics intentionally induced an unjustified breach of GCP's manufacturing obligations to Panini and that Fanatics' interference with the Panini-GCP relationship was part of Fanatics' anticompetitive strategy.  As to Request 118 specifically, the Membership Interest Purchase Agreements that Fanatics has produced are insufficient to provide the full picture of the current ownership percentage and control rights. To fully respond to the Request, Fanatics must produce documents that identify and quantify the ownership interests (such as shares, membership interests, or other equity stakes) that any Fanatics entity holds in GC Packaging LLC or its corporate structure. For Request 121, Panini will accept documents sufficient to show the structure of Fanatics' transaction to acquire a stake in GCP. However, Fanatics must produce *all* documents concerning the strategic rationale of the acquisition, as those documents are relevant to Panini's claim that Fanatics acquired a controlling stake in GCP not to meet any current economic need, but rather to hasten Panini's exit from the Relevant Market. *See, e.g.*, Am. Compl. ¶¶ 138, 207. Fanatics' objection to Request 125 on the grounds that it references "provisions in a contract to which Fanatics is not a party" is not a proper basis for withholding responsive documents. If Fanatics has documents or communications concerning Panini's contract, including the specific provisions mentioned in Request 125, they must be produced. Any other concerns that these Requests are overly broad or unduly burdensome can be resolved with reasonable search terms.

- **Requests 129-132 (documents concerning former Panini Employees hired by Fanatics):** These Requests seek documents relevant to Panini's allegations that Fanatics engaged in a campaign to undermine Panini's business by soliciting and hiring away key employees, misappropriating confidential information, and making disparaging statements about Panini's viability and future in the industry.  For Requests 129-131, any legitimate overbreadth or burden objections can be addressed with reasonable search terms. There is no basis for Fanatics' overbreadth and burden objections to Request 132, which seeks only documents sufficient to show "the roles, uses, and compensation" of a discrete and readily identifiable group of employees. To address Fanatics' vagueness and ambiguity objections concerning the term "uses", Panini clarifies that it is seeking documents sufficient to show the roles, titles, job responsibilities, and compensation of these employees.

4



- **Request 141 (documents regarding KPMG investigation):** This Request is relevant to Panini's Section 1 and 2 claims, including allegations of the "reduced product quality" that has resulted and will continue to result from Fanatics' anticompetitive conduct. *See, e.g.*, Am. Compl. ¶¶ 208, 217, 227, 228. "High-value" should be interpreted according to its plain meaning as it is commonly used in the trading card industry and includes rare or scarce cards that can be sold for high dollar amounts. As with the Requests listed above, Fanatics' overbreadth and burden concerns can be addressed through search terms.

*For the sets of Requests listed above, please confirm that Fanatics will withdraw its objections and produce all responsive documents located with reasonable search terms or through a reasonable search.*

## B. Additional Requests that Panini Agrees to Narrow

In addition to the Requests discussed above, Panini agrees to narrow the following Requests as set forth below to address Fanatics' objections:

- **Request 51:** All Documents relating to or concerning the use of six or more active NFL players in the 2025 Topps Football Releases and any additional NFL Cards products that You intend to release in 2025, including all Your Athlete Player Agreements with current NFL player Athletes included in such products.

- **Request 84:** Your Communications with Case Breakers concerning Panini or the Fanatics Live platform.

- **Request 94:** All Documents reflecting Fanatics' rationale or discussing the anticipated competitive impact of Fanatics' decision to open retail stores that sell Fanatics Sports Trading Cards.

*Please confirm that Fanatics will produce documents responsive to the modified Requests above.*

## III.    Requests Concerning OneTeam (Requests 74-75, 82)

In response to these Requests concerning Fanatics' relationship with OneTeam, Fanatics has refused to produce any additional documents beyond "any agreements with OneTeam related to sports trading cards." This is insufficient. Panini alleges that OneTeam "reveals that the decision of at least the NFL Players Association and MLB Players Association to go with Fanatics was not one made independently. Rather, both the NFL Players Association and the MLB Players Association worked together to agree jointly on deals with Fanatics through OneTeam." Am. Compl. ¶¶ 112-113.  Chief Judge Swain agreed that Panini's "OneTeam allegations suffice to show that there was a conspiracy between the NFLPA, the MLBPA, and Fanatics to license both players associations' intellectual property on an exclusive basis for twenty years each."  Dkt. 164 at 20-21. Thus, discovery into Fanatics' relationship with OneTeam is plainly relevant and all documents responsive to Requests 74-75 and 82 must be produced. For Request 74, this includes not only Fanatics' trading card agreements with OneTeam, but also all documents relating to such agreements.



As with the Requests discussed above in Section II, Fanatics' overbreadth and burden objections can be addressed through search terms.

***Please confirm that Fanatics will withdraw its objections to Requests 74-75 and 82 and agree to produce all responsive documents located based on a reasonable search.***

### IV.    Requests Concerning Complaints and Quality (Requests 134-136, 139)

These Requests seek documents relevant to establishing whether Fanatics' market power and anticompetitive conduct has resulted in diminished quality and other consumer harms. These documents are also relevant to Fanatics' purported defenses, including its claims of innovation, competition on the merits, and "quality enhancements … across the board[.]" Dkt. 173 at 3.

Fanatics' agreement to produce documents in response to Requests 134-136 and 139 only concerning MLB trading card products is improper, particularly given Fanatics' contention that the relevant market is broader than that alleged in the Complaint. Fanatics should produce documents responsive to these Requests concerning all the "Collectibles" products that Fanatics contends may be relevant, including all sports trading cards that Fanatics has already begun producing (*e.g.* collegiate cards, NBPA licensed cards). Further, Fanatics must supplement its production prior to the close of discovery with responsive documents on fully licensed cards featuring NFL players and NBA players once it begins manufacturing and distributing such cards. In response to Requests 134 and 135, Fanatics should also produce documents relating to complaints about sports merchandise and uniforms for professional athletes, which are relevant to Panini's allegations that a decline in quality is likely to follow from Fanatics' monopolization of the sports trading card market. *See, e.g.,* Am. Compl. ¶ 11.

As with the Requests discussed above in Section II, Fanatics' overbreadth and burden objections can be addressed through search terms.

***Please confirm that: (1) Fanatics will produce all documents responsive to Requests 134 and 135 identified with reasonable search terms concerning complaints about all "Collectibles" which Fanatics contends may be part of the relevant market, as well as apparel; (2) Fanatics will produce all documents responsive to Requests 135 and 139 identified with reasonable search terms concerning all sports trading cards it has manufactured or will manufacture before the end of discovery; and (3) Fanatics will supplement its production to these Requests and include documents concerning fully licensed cards featuring NBA and NFL players prior to the close of discovery.***

### V.    Requests Concerning Other Litigation (Requests 143-150)

Fanatics has not agreed to produce documents in response to Panini's Requests that seek documents from related litigation. The requested documents are relevant and should be produced:

- **Documents produced by you and the testimony of your corporate representative, in the American Arbitration Association matter between Panini and NFLPA, Case No. 01-23-0003-7163 (Requests 143-144):** These documents are plainly relevant to Panini's



claim that Fanatics tortiously interfered with Panini's NFLPA contract, Am. Compl. ¶¶ 179-187, as well as to allegations that support Panini's Section 1 and Section 2 claims. As Fanatics is aware, NFLPA's purported termination of Panini was the subject of the arbitration proceeding.

- **Documents produced and all deposition and hearing transcripts, including exhibits in *Panini America, Inc. v. Eli Nicholas Matijevich, Jr., et al.*, Case No. DC-23-04798 (Tex. Dist. Ct., Dallas Cnty., April 14, 2023) (Requests 145-146):** The Amended Complaint alleges that Fanatics' anticompetitive and tortious conduct includes the raid of Panini's employees and the employees' theft of Panini's trade secrets with the encouragement of Fanatics. This and related conduct is also at issue in the Texas litigation.

- **Documents produced, pleading, legal briefs, correspondence, and deposition and hearing transcripts, including exhibits, in *National Football League Players Ass'n, et al. v. Fanatics SPV, LLC, et al.*, JAMS Ref. No. 5425003449 (Requests 147-149):** The conduct at issue in this arbitration is probative of Fanatics' ongoing efforts to leverage its long-term monopoly to secure a short-term monopoly of the Relevant Markets before all of its exclusive licenses go into effect and harm Panini.

- **Documents produced in *Fanatics Collectibles AC, Inc. v. Harrison*, Index No. 652540 (N.Y. Sup. Ct., N.Y. Cnty., June 27, 2024) (Request 50):** Panini alleges that Fanatics signed star, rookie players to exclusive deals for autographs, not to produce high-quality cards using these rights, but to deprive Panini of using their original, handwritten autographs as part of its anticompetitive strategy. Am. Compl. ¶¶ 207. Documents produced in the litigation concerning Fanatics' attempt to enforce one such agreement with Harrison are relevant to these allegations.

Fanatics' burden and overbreadth objections are also meritless. These Requests seek documents from readily identifiable litigation files which can easily be produced on a "go-get" basis. And, as discussed above, Fanatics' confidentiality objections are improper and do not excuse Fanatics from producing these documents.

***Please state whether you will withdraw your objections to Requests 143-150 and agree to produce all documents responsive to these Requests.***

### VI.  <u>Fanatics' Ownership and Corporate Structure (Requests 1-7)</u>

#### A.  Documents relating to ownership and control (Requests 4, 5, and 8)

Fanatics has not agreed to produce documents responsive to Requests 4 or 8, and in response to Request 5, Fanatics has agreed to produce documents "solely to the extent it has agreed to produce those Documents in response to other Requests." These responses are insufficient. The information sought by Requests 4, 5, and 8 is relevant to critical elements of the anticompetitive conduct detailed in the Amended Complaint, including the structure of ownership and control within Fanatics and its affiliates, the financial interests of key market participants, and the history of acquisitions and changes in control. Moreover, contrary to Fanatics' assertion, Request 5 is not duplicative of the other requests Fanatics identifies. Request 5 seeks information about "all

7



individuals or entities that own equity or other financial interests" in the relevant Fanatics entities and is not limited to equity and financial interests awarded to the leagues and players associations in connection with the Exclusive License Agreements.

Fanatics' burden and overbreadth objections to Requests 4 and 5 lack merit. Both Requests only seek "documents sufficient to show" certain readily available information about Fanatics' corporate structure and ownership.

To address Fanatics' overbreadth and vagueness objections to Request 8, Panini will limit the Request as follows: *All Documents relating to any planned, pending, or executed purchases, sales, acquisitions, mergers, joint ventures, divestitures, transfers, spinoffs, or any other change in ownership of any subsidiaries, departments, business units, or other subdivisions of Your Sports Trading Card business to any Person or entity, including any seller, producer, or manufacturer of Sports Trading Cards.*

Any remaining burden or overbreadth objections can be resolved with reasonable search terms.

***Please confirm that Fanatics will produce documents responsive to Requests 4, 5, and 8 (as modified above).***

### B. Clarification Regarding Past Production of Organizational Charts (RFPs 1, 2, 6, and 7)

In response to Requests 1, 2, 6, and 7, Fanatics stated that it "has already produced organizational charts reflecting its relevant corporate structure and personnel during the Relevant Period" but that it "is willing to meet and confer regarding what, if any, additional Documents Panini seeks through" these Requests. Regarding Fanatics' past production of organizational charts, the parties met and conferred on January 2 and January 30, 2025. On January 2, Panini asked Fanatics for clarification as to what dates its produced charts covered, and counsel for Fanatics agreed to seek clarification from its client. On January 30, counsel for Fanatics provided some dates for the charts. Panini asked counsel to confirm (1) the time periods covered by the documents, and (2) whether any charts existed for any other years of the relevant time period, specifically 2019, 2020, 2024, and 2025. Counsel agreed to follow up on these items. Counsel for Fanatics sent Panini an email on January 31, 2025, that elaborated on the redactions applied to the organizational charts; however, the email did not include elaboration on the charts' timing, and Panini has never received the information agreed-upon at the January 30 conference.

***Please confirm in writing: (1) the time periods covered by the organizational charts already produced, and (2) whether any charts exist for any other years of the relevant time period, specifically 2017-2020, 2024, and 2025.***

We are still waiting to receive the list of products that Fanatics contends may be relevant and we reserve the right to demand further production of documents responsive to Requests 1, 2, 6, and 7 if responsive information pertaining to that list is not reflected in what Fanatics has already produced or if we determine that production is otherwise deficient.



### C.  Unredacted Production of FAN-PAN-SDNY00000015

Additionally, in its January 31 email, counsel for Fanatics agreed to "reproduce the org chart produced at FAN-PAN-SDNY00000015 without any redactions." Fanatics later reproduced this chart. However, the reproduction of FAN-PAN-SDNY00000015 still contains redactions.

*Please reproduce FAN-PAN-SDNY00000015 in full without any redactions, as agreed in your email.*

### D.  Articles of Incorporation (Request 3)

Fanatics has not agreed to produce articles of incorporation responsive to Request 3.

*Panini is willing to withdraw its Request for Fanatics' articles of incorporation if Fanatics also withdraws its Request for Panini's articles of incorporation. Please confirm your agreement.*

## VII.    Documents Fanatics Intends to Rely On (Request 154)

Fanatics' agreement to "produce Documents responsive to this Request solely to the extent it has agreed to produce the same Documents in response to other Requests" is improper. Fanatics has an obligation to supplement its production during discovery with any documents in its possession, custody, or control that it intends to rely on in this case, even if such documents are not responsive to Panini's other Requests. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) and (e); *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 245 (S.D.N.Y. 2010) ("The Bank cannot be permitted to obstruct production of the very documents that it would use to support its case and then unveil those documents at trial or in response to a dispositive motion."); *see also ABKCO Music & Recs., Inc. v. Coda Publ'g, Ltd.*, No. 19 CIV. 11892 (KPF), 2022 WL 4536820, at *4-*8 (S.D.N.Y. Sept. 28, 2022).

*Please confirm that you will not withhold relevant and discoverable documents that you intend to rely on in this matter based on your objections and response to Request 154.*

## VIII.    Topps Acquisition Requests (Requests 46, 64-67)

These Requests are the issue of certain of Fanatics' "dismissed claim" objections in its Responses, to which Panini responded in writing in its June 24 letter and Fanatics replied in writing on July 9. Panini explained its position on the issue at the July 10 meet and confer, and it responded via email with caselaw supporting its position on this same day. We asked Fanatics to confirm whether it will produce documents in response to these Requests by today. This evening, Fanatics advised that it expected to have a response to us concerning this and other issues by Monday, July 21. If we do not hear from you on this issue by Monday, we will assume the parties have reached an impasse.



Regards,

*/s/ Sabria McElroy*

Sabria McElroy
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
smcelroy@bsfllp.com

Ursula Ungaro
Boies Schiller Flexner LLP
100 SE 2nd Street, Suite 2800
(305) 539-8400
Miami, FL 33131
uungaro@bsfllp.com